## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

SONATE CORPORATION D/B/A
VEGADELPHIA FOODS,

                    Plaintiff,

    vs.

DUNKIN' BRANDS GROUP, INC., a
Massachusetts corporation; DUNKIN BRANDS,
INC., a Delaware Corporation and BEYOND
MEAT, INC., a Delaware corporation,

               Defendants.

Civil Action No. 1:23-cv-10690-IT

## SONATE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES AND THE PRODUCTION OF DOCUMENTS

171855488

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     RELEVANT FACTUAL HISTORY ............................................................... 2

III.    ARGUMENT .................................................................................................... 4

        A.      Applicable Standard ............................................................................. 4

        B.      Discovery Sought from Dunkin .......................................................... 5

                1.      Sonate is Entitled to Discovery Concerning Dunkin's Licensing
                        Agreements. ............................................................................. 5

                2.      Sonate is Entitled to Discovery Concerning Dunkin's Intent and
                        Willfulness in Adopting the Accused Mark ........................... 12

        C.      DISCOVERY SOUGHT FROM BEYOND ....................................... 16

                1.      Sonate is Entitled to Discovery Concerning Beyond's Licensing
                        Agreements. ............................................................................. 16

                2.      Sonate is Entitled to Discovery Concerning Beyond's  Willfulness
                        and Intent in adopting the Mark .............................................. 18

                3.      Sonate is Entitled to Discovery Concerning Beyond's Basis for
                        Denials and Contentions .......................................................... 19

IV.     CONCLUSION ................................................................................................ 20

171855488

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Skechers United States*,
  2017 U.S. Dist. LEXIS 122459 (D. Or. Aug. 3, 2017) ......................................................7, 8

*Attrezzi, LLC v. Maytag Corp.*,
  436 F.3d 32 (1st Cir. 2006) .......................................................................................................13

*Banhazl v. Am. Ceramic Soc'y*,
  602 F. Supp. 3d 198 (D. Mass. 2015) .......................................................................................9

*Bassett v. Jensen*,
  459 F. Supp. 3d 293 (D. Mass. 2020) ......................................................................................8

*Boston Beer Co., Ltd. P'ship v. Slesar Bros. Brewing Co.*,
  9 F.3d 175 (1st Cir. 1993) .........................................................................................................17

*Bruce v. Weekly World News*,
  310 F.3d 25 (1st Cir. 2002) .......................................................................................................8

*Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*,
  606 F. Supp. 2d 571 (M.D.N.C. 2009) .....................................................................................7

*CardiAQ Valve Techs., Inc. v. Neovasc Inc.*,
  2016 U.S. Dist. LEXIS 54835 (D. Mass. Apr. 25, 2016) .........................................................9

*Chun Lin Jiang v. Shogun Japanese Steak House, Inc.*,
  2023 U.S. Dist. LEXIS 235656 (D. Mass. June 20, 2023) .......................................................4

*Clear Blue, Inc. v. Clear!Blue, Inc.*,
  2008 U.S. Dist. LEXIS 103437 (W.D.N.C. Dec. 12, 2008) .....................................................7

*Coryn Group II, LLC v. O.C. Seacrets, Inc.*,
  2010 U.S. Dist. LEXIS 30719 (D. Md. Mar. 30, 2010) ............................................................7

*Cynthia Gratton LLC v. Original Green Acres Cafe LLC*,
  2023 U.S. Dist. LEXIS 14274 (N.D. Al. Jan. 27, 2023) ...........................................................7

*Deering, Milliken & Co. v. Gilbert*,
  269 F.2d 191 (2d Cir. 1959) .......................................................................................................8

*Epistar Corp. v. Lowes Co., Inc.*,
  2023 U.S. Dist. LEXIS 230404 (C.D. Cal. Nov. 20, 2023) ......................................................9

171855488

*F.A.C., Inc. v. Cooperativa De Seguros De Vida*,
    188 F.R.D. 181 (D.P.R. 1999) ........................................................................15

*Fisons Horticulture v. Vigoro Indus.*,
    30 F.3d 466 (3d Cir. 1994)..............................................................................13

*Focus Prods. v. Kartri Sales*,
    647 F. Supp. 3d 145 (S.D.N.Y. 2022)..............................................................7

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)..............................................................8, 9

*Go Med. Indus. Pty, LTD. v. Inmed Corp.*,
    471 F.3d 1264 (Fed. Cir. 2006)........................................................................7

*Gucci Am., Inc. v. Gucci*,
    2009 U.S. Dist. LEXIS 124888 (S.D.N.Y. Aug. 5, 2009) ...........................7, 14

*Hawkins v. Stables*,
    148 F.3d 379 (4th Cir. 1998) ..........................................................................14

*HealthEdge Software, Inc. v. Sharp Health Plan*,
    2021 U.S. Dist. LEXIS 88061 (D. Mass. May 6, 2021) ..................................15

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2014) ......................................................................10, 17

*Hickman v. Taylor*,
    329 U.S. 495 ....................................................................................................4

*Howard Johnson Co. v. Khimani*,
    892 F.2d 1512 (11th Cir. 1990) ........................................................................6

*In re Intuniv Antitrust Litig.*,
    2021 U.S. Dist. LEXIS 264213 (D. Mass. Mar. 3, 2021)................................14

*KB Home v. Smith*,
    2014 U.S. Dist. LEXIS 66347 (M.D. Fl. May 13, 2014)..................................16

*La Quinta Corp. v. Heartland Props. LLC*,
    603 F.3d 327 (6th Cir. 2010) ............................................................................7

*Lizotte v. NY City Health*,
    1990 U.S. Dist. LEXIS 4312 (S.D.N.Y. Apr. 16, 1990)..................................15

*United States ex rel. Long v. Janssen Biotech, Inc.*,
    No. 16-CV-12182-FDS, 2022 U.S. Dist. LEXIS 162782 (D. Mass. Sept. 9,
    2022) ..............................................................................................................19

171855488

*Lontex Corp. v. Nike, Inc.*,
  2022 U.S. Dist. LEXIS 37334 (E.D. Penn. Mar. 3, 2022) ........................................7

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ..............................................................................9

*Merchia v. Kautter*,
  336 F.R.D. 396 (D. Mass. 2020) .........................................................................6, 16

*Metris U.S.A., Inc. v. Faro Techs., Inc.*,
  2012 U.S. Dist. LEXIS 190734 (D. Mass. Jun. 29, 2012) .......................................9

*Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.*,
  2006 U.S. Dist. LEXIS 14360 (D. Mass. Mar. 29, 2006) ......................................7, 8

*In re New Eng. Compounding Pharmacy Prods. Liab. Litig.*,
  No. MDL No. 13-2419-RWZ, 2015 U.S. Dist. LEXIS 195156 (D. Mass. Sep.
  8, 2015) ..............................................................................................................19, 20

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .................................................................................................4

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
  575 F.2d 1152 (6th Cir. 1978) ..............................................................................10

*QS Wholesale, Inc. v. World Mktg., Inc., No.*
  2013 U.S. Dist. LEXIS 67211 (C.D. Cal. May 9, 2013) ........................................7

*Real View, LLC v. 20-20 Techs., Inc.*,
  878 F. Supp. 2d 282 (D. Mass. 2012) ......................................................................8

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) .............................................................................6, 16

*Romag Fasteners, Inc. v. Fossil Grp., Inc.*,
  140 S. Ct. 1492 (2020) (Sotomayor, concurring) .................................................13

*Rosati's Franchise v. Rosati*,
  2006 U.S. Dist. LEXIS 1837 (M.D. Ill. Jan. 17, 2006) .........................................16

*Sands, Taylor & Wood v. Quaker Oats Co.*,
  34 F.3d 1340 (7th Cir. 1994) ...............................................................................7, 8

*Sportvision v. MLB Advanced Media*,
  2022 U.S. Dist. LEXIS 4779 (S.D.N.Y. Jan. 10, 2022) ........................................10

*Sterngold Dental, LLC v. HDI Global Ins. Co.*,
  929 F.3d 1 (1st Cir. 2019) ......................................................................................17

171855488

*Technologies, S.A. v. Cyrano, Inc.*,
   460 F. Supp. 2d 197, 2006 U.S. Dist. LEXIS 74293 (D. Mass. 2006) .................................7

*Ting Ji v. Bose Corp.*,
   626 F.3d 116 (1st Cir. 2012) ...........................................................................................9

*Toffoloni v. LFB Publ'g Group*,
   572 F.3d 1201 (11th Cir. 2009) ..............................................................................11, 17

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
   2007 U.S. Dist. LEXIS 39637 (N.D. Ill. Mar. 1, 2007)...........................................8, 10

*U.S. v. Pinho*,
   2003 U.S. Dist. LEXIS 12244 (E.D. Penn. Jul. 8, 2003)............................................14

*U.S. v. Zolin*,
   491 U.S. 554 (1989)....................................................................................................15

*Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*,
   2016 U.S. Dist. LEXIS 109564 (E.D. Mich. Aug. 18, 2016) ....................................14

*Weems Indus. v. Teknor Apex.*,
   2023 U.S.P.Q.2d (BN) 263 (N.D. Tex. 2019) .............................................................7

**Statutes**

15 U.S.C. § 1127.................................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 26(b)(1).......................................................................................................4

FRCP 30(b)(6) .....................................................................................................................6

Fed. R. Civ. P. 33(a)(2).....................................................................................................20

Fed. R. Civ. P. 37................................................................................................................1

Fed. R. Civ. P. 37(a)...........................................................................................................4

Fed. R. Civ. P. 37(a)(4).......................................................................................................4

FRCP 26 ...............................................................................................................................4

L.R. 26.5 ............................................................................................................................20

L.R. 26.5(c)(8) ...................................................................................................................20

L.R. 34.1 ...................................................................................................................5, 6, 16

171855488

L. R. 37.1 ..................................................................................................................1

L. R. 37.1(b)....................................................................................................... *passim*

171855488

Pursuant to FRCP 37 and L. R. 37.1, Plaintiff Sonate Corporation d/b/a Vegadelphia Foods ( "Vegadelphia") respectfully submits this Memorandum of Law in Support of its Motion to Compel Defendants Dunkin' Brands Group and Dunkin' Brands (collectively, "Dunkin'") to respond to Request for Admission (RFA) No. 11 and Request for Production (RFP) No. 67 and Beyond Meat ("Beyond") to respond to Interrogatory Nos. 16 and 22, revise their response to Sonate's RFA No. 8, and produce pursuant to Vegadelphia's RFP No. 67.

## I.    **INTRODUCTION**

Plaintiff Vegadelphia, which owns the federally registered trademark "Where Great Taste is Plant-Based," asserts trademark infringement claims against Defendants Dunkin' and Beyond for their 2019-2022 use of the confusingly similar "Great Taste, Plant-Based," and "Plant-Based Great Taste" slogans in their own product marketing. While discovery in this matter has generally progressed smoothly, the May 15 close of fact discovery and May depositions, discovery responses and developments brought to light a handful of key discovery disputes (*see* Ex. 7 [Doc. No. 134-7]), namely:

(1) Defendants have declined to produce licenses for purposes of comparable license proof relating to reasonable royalty damages – for which no meaningful objections were stated – even though discovery this merely seeks the norm of industry-related licenses.

(2) Defendants refuse to admit the *failure* to obtain an opinion of counsel as to likelihood of confusion on the basis of "privilege" –the law says no privilege attached to the *failure* to communicate with counsel on the relevant topic, and the *en camera* remedy is Defendants' only way to assert *actual* privilege as opposed to mere *possibilities*; nor does their disclaiming an intent to rely on an opinion of counsel render a failure to obtain such opinion irrelevant; and

(3) Beyond's refuses to provide interrogatory responses stating the bases for its affirmative defenses and RFA denials (which have been narrowed in meet and confer to just RFAs 13, 14, 18,

23, 24, 25), despite this being standard and important discovery.

Despite the parties' good faith attempts to resolve the dispute described herein through multiple email and phone calls, Defendants have failed to cure several deficiencies. Each of these requests seeks highly relevant, nonprivileged information, and as such, are the subject of this timely motion to compel limited discovery.

## II.     RELEVANT FACTUAL HISTORY

Since at least 2012, Vegadelphia has sold its vegan meat substitutes both directly and through food distributors to customers in food service establishments, delis, and restaurants to be used in sandwiches, burgers, and anywhere else ground meat can be found. By 2013, Vegadelphia adopted a slogan – WHERE GREAT TASTE IS PLANT-BASED – to set it apart from other vegan substitutes in the marketplace. Amended Complaint, Doc. No. 17 at ¶1. Vegadelphia owns a federal, incontestable trademark registration for WHERE GREAT TASTE IS PLANT-BASED as it pertains to vegan food, specifically meat and poultry substitutes. *Id.* at Ex. A. This protected slogan is prominently displayed, *inter alia*, on the packaging used to ship Vegadelphia products, sales sheets that food establishments share with inquiring consumers and affix to their counter space, roll-up signage at events, and Vegadelphia's website, where its end-consumers are regularly referred to obtain information on its products. *Id.* ¶40.

Beyond Meat is a direct competitor of Vegadelphia, selling its vegan products and meat substitutes through food distributors across the U.S. – broadly available at grocery stores, many restaurants, and meat and deli aisles. *Id.* ¶4. In fact, they have competed for the same distribution channels – which discovery revealed included WaWa in 2020. In early 2019, Beyond adopted the infringing PLANT-BASED, GREAT TASTE slogan and over the next two years prominently displayed it as its "primary" tagline in restaurants, grocery stores, food trucks, on the web – essentially everywhere and anywhere its products were sold nationwide.

Dunkin' is a nationwide quick service restaurant with approximately 10,000 locations. It launched its first vegan sandwich, the Beyond Breakfast Sandwich, in the New York City test market during Summer 2019. That November, Dunkin launched nationwide. Its advertising campaign's main slogan was GREAT TASTE, PLANT-BASED, generating what its deponent admitted were *billions* of impressions, including by nationwide television ads, store signage, radio ads, social media, food delivery apps, billboards, NASDAQ sign, etc. *E.g,* Doc. No. 17 at ¶5, 8, 50-52.

Defendants utilized these slogans with complete abandon, paying no heed to Vegadelphia's ownership of the trademark. Beyond admits it knew of Vegadelphia's mark and federal registration *since July 2019*, which it again re-discovered in *January 2020. See* Ex. 1 (Doc. No. 134-1) at Nos. 2 (Beyond's April 5 Interrogatory Responses) to the Declaration of Ben Wagner (the "Wagner Decl."), Doc. No. 134. Dunkin' also found the trademark – in October 2020 – then went national with its infringing ad campaign the next month. Ex. 2 (Doc. No. 134-2) at Nos. 3 (Dunkin's February 23 Interrogatory Responses)  to Wagner Decl. Neither Defendant investigated or made a test purchase, contacted Vegadelphia or its agents, reviewed Vegadelphia's marketing materials, etc., or ever mentioned its existence to one another. Ex. 3 (Doc. No. 134-3) at RFAs 9-10 (Dunkin' May 6 RFA Responses) to Wagner Decl.; Exhibit 4 (Doc. No. 134-4) at RFAs 6-7 (Beyond's May 17 RFA Responses) to Wagner Decl.

Nor did Defendants end their infringement in response to Vegadelphia's May 2020 formal cease-and-desist request. D.I. 17 ¶68. While Dunkin' maintains that it had already moved on to other ad campaigns by this time, store employees still wore shirts containing the infringing slogan, signage remained on display, and social media usage abounded, among other usage.[1] *Id.* ¶69.

---

[1] Many of the online uses continued even as of this suit's filing in April 2022.

171855488

Beyond was no different; in fact, Beyond did not end its usage of the slogan until at least April 2021, despite internal plans to end its infringing campaign by the close of 2020.

### III.   ARGUMENT

#### A.   Applicable Standard

FRCP 26 entitles parties to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The federal rules afford parties liberal discovery, as the purpose "is to permit 'the parties to obtain the fullest possible knowledge of the issues and facts before trial.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 1947)). The information sought need not be admissible in court to be relevant; rather, the relevancy burden is met if the party can show that the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1)). Therefore, Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 351.

When a party fails to respond appropriately to a discovery request, the party seeking discovery may move for an order compelling production pursuant to Fed. R. Civ. P. 37(a). *Chun Lin Jiang v. Shogun Japanese Steak House*, 2023 U.S. Dist. LEXIS 235656, at *3 (D. Mass. June 20, 2023). Evasive or incomplete discovery responses must be treated as a failure to disclose, answer, or respond. Fed. R. Civ. P. 37(a)(4). The party resisting discovery then bears the burden of showing some sufficient reason why discovery should not be allowed. *AMAG Pharm,* 2022 U.S. Dist. LEXIS 206838, at *5 (citations omitted).

171855488

### B.   Discovery Sought from Dunkin

### 1.   Sonate is Entitled to Discovery Concerning Dunkin's Licensing Agreements.

Request for Production No. 67 seeks information concerning other Dunkin trademark, slogan and publicity licenses. Per L. R. 37.1(b), this request and response is reproduced below:

> **Request for Production No. 67:** Licenses in which YOU were or are a licensee of trademark, slogan or right of publicity rights, at any time from 2018 through the present.
>
> **Answer**: Dunkin' objects to this request as irrelevant to any Parties' claims or defense to the extent it seeks information regarding licenses of publicity rights, as publicity rights are not at issue in this action. Subject to the foregoing objection, Dunkin' will produce non-privileged copies of any license agreements it entered into between January 1, 2018 and the filing of this action regarding use of a slogan or tagline in connection with a menu item, to the extent such documents exist.

The Court should compel Dunkin' to produce the full span of licenses requested in RFP No. 67 because not only did Dunkin' fail to object to the first two thirds of this request, but each requested license relates to Vegadelphia's alleged reasonable royalty item calculations, and ***discovery of industry licenses is the norm***. Doc. No. 1 ¶¶ 11, 74, 81, 90, 96, 102 (seeking reasonable royalty damages); Doc. No. 17 at ¶¶ 11, 75, 88, 105, 118, 131, 143 (same); Sonate's August 12, 2022 Initial Disclosures, Wagner Decl. <u>Ex. 5</u> (Doc. No. 134-5), at 9; Sonate's July 10, 2023 Responses and Objections to Dunkin's First Set of Interrogatories, Wagner Decl. <u>Ex. 6</u> (Doc. No. 134-6), at 9-10.

*First,* Dunkin' raised no objection – relevancy or otherwise – to the production of "trademark" or "slogan" licenses identified by RFP 67. Thus, Dunkin has waived any objection to its full production of any responsive record *except* right of publicity licenses, which therefore must be produced.[2] Under L.R. 34.1, "any ground not stated in an objection within the time provided by

---

[2] While it would have been insufficient, Dunkin' also did not include general objections to RFPs.

171855488

the Federal Rules of Civil Procedure, or any extension therefore, shall be deemed waived." L.R. 34.1. Massachusetts courts have an obligation to enforce such a waiver under this rule. *See Merchia v. Kautter*, 336 F.R.D. 396, 398 (D. Mass. 2020) (compelling production); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."). This alone is enough to require Dunkin's production of these relevant documents; by preserving only their objection to the relevancy of "publicity" licenses, they have otherwise agreed to produce "[l]icenses in which YOU were or are a licensee of trademark, slogan ~~or right of publicity rights~~, at any time from 2018 through the present." They have not done so.

*Second*, Dunkin' improperly narrowed their response to produce only those "license agreements…*regarding use of a slogan or tagline in connection with a menu item, to the extent such documents exist.*" Response to RFP 67 (emphasis added). As a direct result, no part of Dunkin's more than 30,000 document production included licenses. *See* May 20, 2024 10:54 PM Email from Sarah Parker (the "Sonate-Dunkin Meet and Confer Email"), Wagner Decl. Exhibit 7. Such unsupported narrowing cannot be justified on the argument that Sonate got enough to make its peace (it received nothing). Nor was Sonate able to discover the terms of any trademark or slogan licenses through good faith effort at deposition; Dunkin's Rule 30(b)(6) deponent knew nothing of the details of these licenses, despite testifying to collaborations with the likes of Twix and Hershey, Oreo, Chips Ahoy, and other food-related trademarks. *See* March 5, 2024 Deposition Transcript of Beth Turenne, Wagner Decl. Exhibit 8 (Doc No. 134-8), at 101:1-103:18.

*Third*, even if Dunkin *had* objected to the production of trademark and slogan licenses, which it did not, Dunkin's prior licensing terms are undoubtedly relevant to Sonate's calculation of reasonable royalties calculation. "The use of lost royalties to determine the actual damages incurred by a victim of trademark misuse is well established." *Howard Johnson Co. v. Khimani*,

- 6 -

892 F.2d 1512, 1519-20 (11th Cir. 1990); *see also Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1343 (7th Cir. 1994) (same; reverse confusion); *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 341 n.10 (6th Cir. 2010) (same). A plaintiff in a trademark action may recover a "reasonable royalty" under the heading of actual damages. *Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 253-254 (S.D.N.Y. 2012); *Technologies, S.A. v. Cyrano, Inc.*, 460 F. Supp. 2d 197, 204, 2006 U.S. Dist. LEXIS 74293, *17 (D. Mass. 2006) (awarding royalty, as license represented "minimal estimate of the value of the intellectual property" in trademark infringement judgment); *see also* 4 Gilson on Trademarks § 14.03[3][d] (trademark plaintiff's damages can also be shown by establishing a reasonable royalty). Courts across the country agree that a lack of "prior licensing agreements between the parties" or even "absence of licensing history" by a plaintiff is no bar to the computation of reasonable royalties.[3] Nor is proof needed that the parties would have "chosen to bargain with each other on a voluntary basis"; rather, the trier of fact engages in a "hypothetical bargaining" or "hypothetical negotiation" to determine the "reasonable royalty." *Sands, Taylor*, 34 F.3d at 1351; *Go Med. Indus.*, 471 F.3d at 1274 (Fed. Cir. 2006).

To the extent Defendants may rely on *Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.*, 2006 U.S. Dist. LEXIS 14360, *92-95 (D. Mass. Mar. 29, 2006) to cast doubt, it would not work.

---

[3] *Adidas Am., Inc. v. Skechers United States*, 2017 U.S. Dist. LEXIS 122459, *88-89 (D. Or. Aug. 3, 2017); *Gucci Am.*, 858 F. Supp. 2d at 253-254 (same); *Focus Prods. v. Kartri Sales*, 647 F. Supp. 3d 145, 233, 259 (S.D.N.Y. 2022) (same); *Weems Indus. v. Teknor Apex.*, 2023 U.S.P.Q.2d (BN) 263 *26-27 (N.D. Tex. 2019) (same); *QS Wholesale, Inc. v. World Mktg., Inc., No.* 2013 U.S. Dist. LEXIS 67211, at *4 (C.D. Cal. May 9, 2013) (same); *see also Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1343 (7th Cir. 1994); *Go Med. Indus. Pty, LTD. v. Inmed Corp.*, 471 F.3d 1264, 1274 (Fed. Cir. 2006); *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 2010 U.S. Dist. LEXIS 30719, at *8 (D. Md. Mar. 30, 2010); *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 585 (M.D.N.C. 2009); *Adidas Am.*, 2008 U.S. Dist. LEXIS 69260, at *12; *Clear Blue, Inc. v. Clear!Blue, Inc.*, 2008 U.S. Dist. LEXIS 103437, at *4-5 (W.D.N.C. Dec. 12, 2008); *Lontex Corp. v. Nike, Inc.*, 2022 U.S. Dist. LEXIS 37334, *16 (E.D. Penn. Mar. 3, 2022); *Cynthia Gratton LLC v. Original Green Acres Cafe LLC*, 2023 U.S. Dist. LEXIS 14274, *9-10 (N.D. Al. Jan. 27, 2023).

The caselaw in this area has vastly developed since the *Nat'l Fire* plaintiff apparently struggled to find cases recognizing reasonable royalties absent "evidence of a prior licensing relationship or when the parties had not shown a willingness to license the mark," back in 2006. Eighteen years later, nationwide jurisprudence recognizing this application is legion (*see* FN 3, *infra*). Furthermore, the facts at bar are clearly distinguishable*; whereas Nat'l Fire* convinced the Court not to award royalties as overly speculative where there was no "evidence that plaintiff this case would have licensed the rights to the mark" and the expert's unusual theory was that royalties simply equaled profit, Vegadelphia can point to direct evidence they sought out a licensee at or near that time and was willing to negotiate a license with Dunkin' and Beyond on the right terms. *Id.*; *See* Ex. 9 (Doc No. 134-9), Deposition of Matthew Shipon at 82:5-86:11; 124:12-125:18. Nor would such possibility of resolution at trial undermine discovery relevance at this stage, or the adducing of the usual proof (*see* discussion of relevance standard, *supra* at p. 9-10).

The ultimate reasonable royalty determination may follow the familiar *Georgia-Pacific* factors, long-applied in the analogous space of patent infringement,[4] which includes licenses and "rates paid by the [defendant] licensee for the use" of other comparable intellectual property.[5] As should be apparent from the comparable license discussion, *supra* at p. 7, in trademark cases "courts can look to royalty rates *from either party* to support such an award" even where "the plaintiff produced no record of a licensing regime with the defendant or any third party."[6]

---

[4] *Sands, Taylor*, 34 F.3d at 1352.
[5] *Real View, LLC v. 20-20 Techs., Inc.*, 878 F. Supp. 2d 282, 285-286 (D. Mass. 2012) quoting *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).
[6] *Adidas Am., Inc. v. Skechers United States*, 2017 U.S. Dist. LEXIS 122459, at *87-89 (trademark case); *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 193 (2d Cir. 1959) (license with plaintiff and third party for trademark infringement); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2007 U.S. Dist. LEXIS 39637, *5-6 (N.D. Ill. Mar. 1, 2007) (defendants' licenses for other patents in industry discoverable under at least *Georgia-Pacific* Factors 2, 12 and 15).

The First Circuit has not had opportunity to address reasonable royalties under federal trademark infringement claims, but has repeatedly permitted them as actual damages in other intellectual property cases, including federal copyright infringement and right of publicity violations. *See, e.g., Bruce v. Weekly World News*, 310 F.3d 25, 29 (1st Cir. 2002); *Bassett v. Jensen*, 459 F. Supp. 3d 293, 308 (D. Mass. 2020) (same; "hypothetical licensing fee" or "reasonable licensing fee"); *Ting Ji v. Bose Corp.*, 626 F.3d 116, 123-124 (1st Cir. 2012). Courts in this District regularly apply the *Georgia-Pacific* factors to intellectual property cases including consideration of past and subsequent transactions as a methodology to calculate sufficiently reliable calculations). *See, e.g. Banhazl v. Am. Ceramic Soc'y*, 602 F. Supp. 3d 198, 228 (D. Mass. 2015) (past and future); *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, 2016 U.S. Dist. LEXIS 54835, *5-6 (D. Mass. Apr. 25, 2016) (*Georgia-Pacific* applies); *Banhazl v. Am. Ceramic Soc'y*, 602 F. Supp. 3d 198, 228 (D. Mass. 2022) (same); *Metris U.S.A., Inc. v. Faro Techs., Inc.*, 2012 U.S. Dist. LEXIS 190734, *1 (D. Mass. Jun. 29, 2012) (it is "established law").

*Finally*, for the reasons highlighted above, Dunkin's objection to the production of publicity licenses is similarly improper, since these licenses are equally relevant to Dunkin's reasonable royalty determination. Comparable licenses for reasonable royalty calculations need not directly concern the intellectual property at issue; as is the case here, in the absence of a prior party licensing relationship or a deep history of licensing by the plaintiff, licenses of analogous rights are used by the trier of fact and experts to calculate a non-speculative reasonable royalty. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329-1330 (Fed. Cir. 2009) (noting "rates paid by the licensee for the use of" comparable intellectual property rights to those "in suit" is a key step in the reasonable royalty analysis under Factor 2 (also Factors 12 and 15) of the familiar *Georgia-Pacific* factors (discussed *infra* at p. 11), requiring *at the time of trial* "analysis of those license agreements" and showing at that time they are "sufficiently comparable.").

- 9 -

"In the context of approximating reasonable royalty using comparable but not identical licenses, the degree of comparability of the license agreements is usually considered a factual issue best addressed by cross examination and not by exclusion." *Epistar Corp. v. Lowes Co., Inc.*, 2023 U.S. Dist. LEXIS 230404, *19 (C.D. Cal. Nov. 20, 2023). It is precisely because the comparability of licenses cannot be predetermined that discovery is necessarily broad. *See Sportvision v. MLB Advanced Media*, 2022 U.S. Dist. LEXIS 4779 **8-9 (S.D.N.Y. Jan. 10, 2022) (collecting cases) (while "[rights] the court may look to determine a reasonable royalty must be 'comparable,' courts have often interpreted this factor broadly with respect to parties' production in discovery…Under these standards, if there is any reasonable possibility that the [rights] underlying [defendant's] licenses could be considered 'comparable'…the [defendant] should product, in discovery, information relating to those particular licenses."). Thus, that the agreements *concern the defendant licensing in the same "industry"* is enough for Courts to compel their production, as they "may be of assistance in determining a reasonable royalty rate." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2007 U.S. Dist. LEXIS 39637, *5-6 (N.D. Ill. Mar. 1, 2007) (granting motion to compel defendant's licenses to other IP rights as relevant to Georgia-Pacific Factors 2, 12 and 15) citing both 7 Chisum on Patents § 20.03[3][b][ii] (courts will look to the licensing customs in the industry to determine reasonable royalty rates) and *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 (6th Cir. 1978) (customary profit allowed licensees in the electrical duct industry appropriate for determination of a reasonable royalty).

Here, this industry test is met. Vegadelphia seeks only licenses where Defendants are the *licensees*, which by definition limits the responsive licenses to those surrounding the quick food restaurant and vegan meat substitute markets, since this is the nature of Defendants' business. These are the industries related to any hypothetical license created for determination of damages where Dunkin' and/or Beyond would be the licensee.

171855488

In any event, it is well-established that "trademark [rights] and the right of publicity are analogous," with both falling under the term "intellectual property." *Hepp v. Facebook*, 14 F.4th 204, 213-214 (3d Cir. 2014). It is an individual's "right to the exclusive use of his or her name and likeness." *Toffoloni v. LFB Publ'g Group*, 572 F.3d 1201, 1205 (11th Cir. 2009). Both represent goodwill of the company or person they tap into. *Id.* Here, both Dunkin' and Beyond use (and maintain agreements ensuring compensation for) rights of publicity, often at the campaign level – making them particularly good sources of comparable licenses here.[7]  Dunkin' utilizes influencers, professional athletes, and others to promote its products, tapping into a broad array of rights of publicity from mega-stars like Snoop Dogg all the way to micro-influencers (social media personalities with 50k or fewer followers). Similarly, when it began infringing on Vegadelphia's trademark in 2019, Beyond was elsewhere tapping into rights of publicity regularly, signing "brand ambassadors" like Shaun White, Maya Moore, Liza Koshy and others.[8]

Because the restaurant selling the product is already "Dunkin'" branded, and because the sandwich at issue has the name "Beyond" baked into it, Dunkin's right of publicity licenses will aid the comparability analysis when Dunkin' pays for the use of intellectual property that triggers goodwill through a means *other* than the restaurant or product name. This is likely to lead to the discovery of admissible evidence to respond to arguments by Dunkin' that significant comparability adjustments are needed to licenses of restaurant names, product names, or food manufacturer names to account for use alongside the Dunkin' and Beyond names. Thus, Dunkin

---

[7] *See* "Dunkin Runs on Social Media," Platform Magazine, July 26, 2021. Available at: https://platformmagazine.org/2021/07/26/dunkin-runs-on-social-media/#:~:text=Through%20authentic%20content%2C%20Dunkin%27s%20influencers,star%2C%20and%20produced%20The%20Charli.

[8] *See* "Putting Their Money Where Their Mouth Is: Growing List of All-Star Athletes Invest in Beyond Meat," BusinessWire, February 20, 2019. Available at: https://www.businesswire.com/news/home/20190220005368/en/Putting-Their-Money-Where-Their-Mouth-Is-Growing-List-of-All-Star-Athletes-Invest-in-Beyond-Meat%2C%AE.

should be ordered to produce all responsive licenses concerning trademark, slogans and rights of publicity, and its unilateral limitation ordered withdrawn.

Thus, Dunkin should be ordered to produce all responsive licenses concerning trademarks, slogans or rights of publicity in which it is a licensee from 2018 onward, all limits overruled.

### 2.   Sonate is Entitled to Discovery Concerning Dunkin's Intent and Willfulness in Adopting the Accused Mark

Request for Admission No. 11 seeks information regarding whether Dunkin' consulted counsel regarding potential confusion between their mark and Sonate's prior to adoption. Dunkin' objected to this request on the basis that it is vague, irrelevant, and requests communications with counsel privileged under the work product and or attorney-client privilege doctrines. Each of these contentions is incorrect. Pursuant to L.R. 37.1(b), the discovery request and responses are reproduced below:

> **Request for Admission No. 11:** Admit that DUNKIN' did not obtain an opinion of counsel regarding the likelihood of confusion regarding the ACCUSED MARK prior to May 28, 2020.
>
> **Answer:** Dunkin' objects to this Request as vague as it does not specify a comparison for any alleged likelihood of confusion opinion. Dunkin' objects to this Request for Admission because the question of whether Dunkin' sought an opinion of counsel is protected by the attorney-client privilege and/or the attorney work product doctrine. Dunkin' further objects that the information requested herein is irrelevant to the instant action. Dunkin' is not relying on an opinion of counsel defense. Dunkin' further denies there was any likelihood of confusion between its use of the ACCUSED MARK and any third-party mark.
>
> **Amended Answer:** Dunkin' objects to this Request as vague as it does not specify a comparison for any alleged likelihood of confusion opinion. Dunkin' objects to this Request for Admission because the request goes beyond seeking whether Dunkin' in fact conferred with legal counsel but to the substance of those communications. As such, of whether Dunkin' sought an opinion of counsel is protected by the attorney-client privilege and/or the attorney work product doctrine. Dunkin' further objects that the information requested herein is irrelevant to the instant action because Dunkin' is not relying on an opinion of counsel defense. Subject to the foregoing objections, Dunkin' admits that Dunkin' learned that Sonate owned a federal registration for the WHERE GREAT TASTE IS PLANT-BASED mark from a review of records available through TESS. To the extent this

Request seeks further admissions, they are denied. Dunkin' further denies there was any likelihood of confusion between its use of the ACCUSED MARK and any third-party mark.

Relevance. First, the caliber of one's investigation – including how they proceeded vis-à-vis an opinion of counsel, is plainly relevant to determinations of good faith and willfulness, likelihood of confusion, enhancement damages, profit disgorgement, and (for state trademark infringement) punitive damages. *See, e.g., Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006) ("Although Maytag offered an innocent explanation for disregarding the initial advice of its in-house counsel, the jury seemingly concluded in its willfulness finding that Maytag was well aware of a substantial risk of confusion and nonetheless decided to gamble.").

In reverse confusion, questions relevant to the "intent inquiry" include: "[W]hether [defendant] conducted an adequate name search…[W]hether it followed through with its investigation when it found there were such companies…Did [it] consider the likelihood of confusion with other companies' marks and products…? Did it attempt to contact companies using a similar mark…? Was [it] careless in its evaluation of the likelihood of confusion?" *Fisons Horticulture v. Vigoro Indus.*, 30 F.3d 466, 480 (3d Cir. 1994). Similarly, the Supreme Court's opinion in *Romag Fasteners* emphasizes that willfulness for trademark infringement includes "a range of culpable mental states—including the equivalent of recklessness" and ranging from "from fraudulent and knowing to reckless and indifferent behavior." *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1498 (2020) (Sotomayor, concurring).

Clearly whether Dunkin' failed to even obtain an opinion of counsel to evaluate likelihood of confusion is relevant to its whether it "considered the likelihood of confusion," was "careless in its evaluation of the likelihood of confusion" or "followed through with its investigation." *Fisons*, 30 F.3d at 480 (3d Cir. 1994). A corporation that does not bother to solicit opinion of

counsel is another nail in the coffin of Dunkin's utter bad faith in its willingness to flood the mark as the lead slogan for with such a similar slogan is federally registered for those exact goods.

Courts have expressly so held. For example, a plaintiff is permitted "to submit evidence of [defendant's failure to provide an opinion of counsel at trial…[and] argue to the jury that [defendnat's] failure to produce such an opinion for trial can be considered as a factor in the jury's determination of willfulness." *Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*, 2016 U.S. Dist. LEXIS 109564, *20 (E.D. Mich. Aug. 18, 2016). Similarly, in *Gucci Am., Inc. v. Gucci*, 2009 U.S. Dist. LEXIS 124888, *72-73 (S.D.N.Y. Aug. 5, 2009), the Court held "Defendants' infringement in this case is willful because, among other reasons…Litwak failed to obtain a written trademark opinion of counsel…[showing] Defendants had knowledge that their conduct represented infringement or perhaps recklessly disregarded the possibility." *Id.* (cleaned up).

Privilege.  Vegadelphia concedes that if Dunkin' did seek an opinion of counsel, then an answer denying its failure to seek an opinion of counsel would constitute disclosure of privileged information. However, if Dunkin' failed to seek an opinion of counsel, this *failure to act* is not protected simply because the inverse affirmative action may be. As a principle of privilege, if a party "had had no conversation with her attorney on the subject" then "[w]ithout a communication, there is nothing to which the privilege can attach." *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998); *U.S. v. Pinho*, 2003 U.S. Dist. LEXIS 12244, *9-11 (E.D. Penn. Jul. 8, 2003) (same). These are basic facts about legal consultation not subject to privilege. *In re Intuniv Antitrust Litig.*, 2021 U.S. Dist. LEXIS 264213, *61 (D. Mass. Mar. 3, 2021) (fact of consultation not privileged).

The Court illustrated this application in *McCabe v. Ernst & Young,* where a party resisting discovery raised privilege to avoid testifying that "the amount of damages" had not been discussed with counsel. There, the Court held:

171855488

"the absence of a communication is not privileged… In other words: "If there was no communication between [the party] and his attorneys regarding the amount of damages asserted in the letters, then there is no communication to which the privilege can attach…the lack of such communication is not privileged and [the contrary] ruling is clearly erroneous."

2005 U.S. Dist. LEXIS 55796, *15-16 (D.N.J. Jul. 26, 2005).

Similarly, here Dunkin's answers about its lack of investigation all but guarantee it did not obtain an opinion of counsel on the likelihood of confusion. Dunkin and Beyond never discussed Vegadelphia's mark with each other prior to Vegadelphia's May 2020 demand letter, they did not make test purchases, they did not contact Vegadelphia or its agents – they took no normal investigative step. There is probative evidence that no meaningful investigation took place.

Given the conditional nature of privilege here, *en camera* review is the only method by which Defendants can sustain their burden – i.e. by confirming to the Court whether they obtained an opinion of counsel (which *would* trigger privilege), rather than the failure to do so (which would not). This format is also "First Circuit preference" in instances of conditional privilege. *F.A.C., Inc. v. Cooperativa De Seguros De Vida*, 188 F.R.D. 181, 186 (D.P.R. 1999); *Lizotte v. NY City Health*, 1990 U.S. Dist. LEXIS 4312 (S.D.N.Y. Apr. 16, 1990) (another rule for these situations would "obviously disable the court from assessing in any meaningful way" the privilege claim).

The solution in *no event* is to shield Dunkin' from answering simply because answering *might* be privileged. *HealthEdge Software, Inc. v. Sharp Health Plan*, 2021 U.S. Dist. LEXIS 88061, at *2 (D. Mass. May 6, 2021) (resisting party must establish privilege). As the Supreme Court explained, *en camera* review "for purposes of determining the merits of a claim of privilege" is not a waiver and the practice is "well established" of "requiring parties who seek to avoid disclosures" to make sufficient *en camera* production. *U.S. v. Zolin*, 491 U.S. 554, 569 (1989).

Thus, the Court should overrule the objections to RFA 11 and order Dunkin' to respond with an unequivocal, unqualified admission or denial. If Dunkin wishes to produce *en camera*

sufficient information to sustain its privilege – the first page of an opinion of counsel, a written representation that one exists, etc. – Vegadelphia is agreeable to this as a solution to the conditional nature of Dunkin's privilege assertion, as it advised Dunkin' in meet and confer.

### C.    Discovery Sought from Beyond

#### 1.    Sonate is Entitled to Discovery Concerning Beyond's Licensing Agreements.

Sonate disputes Beyond's refusal to respond to RFP No. 67. Beyond is attempting to shield Sonate from basic important discovery for its monetary recovery of royalties for the infringement. Pursuant to L.R. 37.1(b), the discovery request and responses are reproduced below:

> **Request For Production No. 67:** Licenses in which YOU were or are a licensee of trademark, slogan or right of publicity rights, at any time from 2018 through the present.

> **Response To Request For Production No. 67:** Beyond objects to this request on the grounds, it is vague and ambiguous. Subject to and without waiving the foregoing objections Beyond will produce responsive marketing documents relating to its collaboration with Dunkin' on the Accused Products.

Beyond's *only* objections are that the request is "vague and ambiguous" and it only agrees to produce documents concerning its infringing Dunkin' collaboration. Again, as with Dunkin', Beyond has waived all other objections than vagueness or ambiguity. D. Mass. L.R. 34.1; *Merchia v. Kautter*, 336 F.R.D. at 398; *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d at 1473.

The request is neither vague nor ambiguous, nor did Beyond provide any specificity as to this objection in meet and confer. Each term is clear.

"License" and "licensee": These are obvious and unambiguous terms. "Black's Law Dictionary defines 'license' as '[a] permission' and 'licensee' as '[o]ne to whom a license is granted.'" *KB Home v. Smith*, 2014 U.S. Dist. LEXIS 66347 *14 n.5 (M.D. Fl. May 13, 2014). Litigants have never struggled with the terms: "A trademark licensee's rights to use of a mark is

- 16 -

defined by the valid terms of the trademark license." *Rosati's Franchise v. Rosati*, 2006 U.S. Dist. LEXIS 1837 *16 (M.D. Ill. Jan. 17, 2006) quoting McCarthy on Trademarks § 25:30 (2004).

"Trademark": As just noted, a trademark license is a well-known term and no ambiguity is suggested. "A trademark is defined as 'any word, name, symbol, or device, or any combination thereof used by a person to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.' 15 U.S.C. § 1127." *Boston Beer Co., Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir. 1993). No IP or trademark litigator could be confused as to how to search.

"Slogan": Beyond understood this term when it was able to repeatedly deny allegations about use of "any slogan" in its Answer. Doc No. 39 at ¶¶ 31, 53. Indeed, the First Circuit characterized the term "slogan" as "unambiguous language" that is "typically defined as a phrase expressing the aims or nature of an enterprise…and/or a catch phrase used in advertising or promotion." *Sterngold Dental, LLC v. HDI Global Ins. Co.*, 929 F.3d 1, 10 (1st Cir. 2019) (internal citations omitted) (cleaned up).

"Right of publicity": Rights of publicity are similarly well-established rights under law, and "trademark [rights] and the right of publicity are analogous" with both falling under the term "intellectual property." *Hepp*, 14 F.4th at 213-214 (2014). It is an individual's "right to the exclusive use of his or her name and likeness." *Toffoloni*, 572 F.3d at 1205 (2009).

Timeframe: The timeframe includes any license that covers any portion of 2018 onward ("at any time from 2018 through the present").

Thus, if Beyond was a licensee of any trademark, slogan or right of publicity from 2018 to the present, it must produce each such license. The objection should be overruled and Beyond ordered to amend to both withdraw its limitation and make a complete production.

- 17 -

171855488

Finally, although relevancy objections were waived by the failure to assert them, they were rightly not asserted as discovery relevance is clearly present as already explained above for Dunkin' with the same RFP 67. *See supra* at III.B.1. Beyond will presumably critique Vegadelphia comparable 8% licensing negotiation history, and cannot refuse discovery of Beyond's own licenses, which as a vegan food brand sold throughout the United States including in food service, are clearly in the exact same industry as Vegadelphia.

### 2.     Sonate is Entitled to Discovery Concerning Beyond's Willfulness and Intent in adopting the Mark

Sonate disputes Beyond's refusal to respond to RFA 8 for the same reasons as outlined in Section III. A.1., *supra.* Pursuant to L. R. 37.1(b), the request and response is reproduced below:

> **Request For Admission No. 8**: Admit that BEYOND did not obtain the opinion of counsel regarding the likelihood of confusion regarding the ACCUSED MARK before July 2020.

> **Response to Request For Admission No. 8**: Defendant objects on the grounds the request is vague, ambiguous, seeks information protected by the attorney-work product and attorney-client privileges, improperly presumes likelihood of confusion, which is not the case, and is not relevant as Defendant is not relying on an opinion of counsel defense in this matter. To the extent this Request seeks further admissions, they are denied.

This is the same RFA directed at Beyond as the RFA 11 directed at Dunkin and addressed *supra,* at Section III.B.2. There are just three dates included here, which is because Beyond had multiple dates it admits Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED registration were found by Beyond (in addition to Dunkin's discovery date). Thus, to the extent there were a privileged opinion of counsel after any later "re"-discovery dates (*highly unlikely*), such privilege could not shield Beyond from admitting the failure to obtain one at the earlier discovery date. There would be no communication for any privilege to attach to. Thus, all three RFAs should be compelled for the same reasons and on the same terms as those urged for Dunkin RFA 11 above.

### 3. Sonate is Entitled to Discovery Concerning Beyond's Basis for Denials and Contentions

Interrogatory Nos. 16 and 22 request that Beyond provide the facts supporting the full or partial denial of Sonate's Requests for admission. Beyond has objected to both interrogatories on the basis that they are compound or overbroad. Pursuant to L.R. 37.1(b), the discovery request and responses are reproduced below:

**Interrogatory No. 16:** For each Request for Admission that BEYOND's response is not a full admission, state all facts supporting each full or partial denial of PLAINTIFF'S Requests for Admission Set One served concurrently herewith.

**Response to Interrogatory No. 16:** Defendant objects on the ground that the request is compound as it seeks a response relating to twenty-five Requests for Admission, which would necessarily cause Plaintiff to exceed the maximum allowed number of interrogatories

**Interrogatory No. 22**: Identify all bases for each of your affirmative defenses.

**Response to Interrogatory No. 22**: Defendant objects on the grounds this request is overbroad, unduly burdensome and compound as it seeks a response relating to numerous affirmative defenses, which would necessarily cause Plaintiff to exceed the maximum allowed number of interrogatories.

This is an improper basis for objection; Massachusetts courts commonly uphold and compel responses to similarly phrased interrogatories where these bases are not otherwise included in a response, both in separate and allegedly compound form. *See, e.g. In re New Eng. Compounding Pharmacy Prods. Liab. Litig.,* No. MDL No. 13-2419-RWZ, 2015 U.S. Dist. LEXIS 195156, at *43 (D. Mass. Sep. 8, 2015) (compelling defendant's response to interrogatory requesting defendant "to provide the factual basis for any denials or qualifications of admissions to [listed] RFAs); *see also United States ex rel. Long v. Janssen Biotech, Inc.*, No. 16-CV-12182-FDS, 2022 U.S. Dist. LEXIS 162782, at *6 (D. Mass. Sept. 9, 2022) (ordering further response to interrogatories requesting "all facts you believe support your contention" to an affirmative defense). Furthermore, contention interrogatories, which ask a party to state its contentions or

provide the factual basis for their claims, "are a perfectly permissible form of discovery and a response is required." *In re New Eng.,* 2015 U.S. Dist. LEXIS 195156, at *47 (2015); *see also* Fed. R. Civ. P. 33(a)(2). In fact, L.R. 26.5 expressly requires that specific detail be provided in response to "state the basis" interrogatories, which courts also extend to those requests "of the same ilk." *AMAG Pharm., Inc.,* 2022 U.S. Dist. LEXIS 206838, at *23 (referring to a request for "a list of all losses that [plaintiff] asserts are covered by the policy and a description of [plaintiff's] loss mitigation efforts"); L.R. 26.5(c)(8). At bottom, "a major purpose of contention interrogatories is to narrow and define the issues in a case, however much litigants might otherwise prefer to 'keep their options open' indefinitely." *AMAG Pharm., Inc.*, at *23.

Further, Sonate was not required to guess at how many RFAs Beyond would deny. In denying or refusing to admit all but five of Sonate's 25 RFAs – the majority of which Sonate maintains are of an undisputable nature given the development of discovery in this matter – Beyond is impermissibly seeking to keep their options open indefinitely. Having Beyond state its supporting facts is the natural solution to such overaggressive denials. However, for Interrogatory No. 16, Vegadelphia is willing to limit it to the denials at RFAs 13, 14, 18, 23, 24, 25.

Discovery is closed, so it is time to summate what if any bases it has for its affirmative defenses and denials of even basic facts. Interrogatories 16 and 22 are standard interrogatories requesting basic information to which Sonate is entitled to under the rules of civil procedure. Beyond cannot now refuse to provide the details of its affirmative defenses or denied RFAs.

## IV.   <u>CONCLUSION</u>

For the forgoing reasons, Vegadelphia respectfully requests the Court grant its Motion to Compel Discovery.

171855488

Dated:  May 29, 2024

*/s/ Ben L. Wagner*
L. Andrew Tseng
Mass. Bar No. 689192
TROUTMAN PEPPER HAMILTON
SANDERS LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
Tel: (617) 204-5100
Email: andrew.tseng@troutman.com

Ben L. Wagner (*Lead Counsel)
Cal. Bar No. 243594 (*pro hac vice*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
858.509.6010
ben.wagner@troutman.com

*Attorneys for Plaintiff Sonate Corporation, d/b/a Vegadelphia Foods*

171855488

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>May 29, 2024</u>, SONATE CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES AND THE PRODUCTION OF DOCUMENTS was served by electronic mail on counsel of record using the email addresses registered on the CM/ECF system.

s/ *Ben L. Wagner*
Ben L. Wagner

171855488