UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| SONATE CORPORATION D/B/A Vegadelphia FOODS,<br><br>     Plaintiff,<br><br>vs.<br><br>BEYOND MEAT, INC., a Delaware corporation,<br><br>     Defendant. | Civil Action No. 1:23-cv-10690 |

## DEFENDANT BEYOND MEAT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE PORTIONS OF EXPERT OPINION OF SIDNEY P. BLUM

Defendant Beyond Meat, Inc. ("Beyond Meat") hereby submits this Memorandum of Law in support of its Motion to Strike and Exclude portions of the opinions of Plaintiff's expert witness Sidney P. Blum. In support of this Motion, Beyond Meat relies on the concurrently filed Memorandum of Points and Authorities and concurrently filed Declaration of Matthew Seror and exhibits. For the reasons set forth herein, Beyond Meat respectfully requests that the Court strike and exclude Mr. Blum's expert report and opinions relating to: (1) Plaintiff's requested corrective advertising damages; (2) Plaintiff's requested reasonable royalty damages; and (3) Plaintiff's requested lost profits from lost value damages.

309054712v1

## I.   INTRODUCTION

Plaintiff has designated Sidney P. Blum as its damage expert in this case. In his expert report, Mr. Blum proffers five categories of damages Plaintiff is entitled to: (1) unjust enrichment damages; (2) reasonable royalty damages; (3) corrective advertising damages; (4) recovery of Plaintiff's lost sales; and (5) recovery of Plaintiff's lost profits from lost revenue. By its motion, Beyond Meat seeks to strike and exclude Mr. Blum's expert report and testimony as to his second, third and fifth damage categories of damages.

## II.   *DAUBERT* STANDARD

The admissibility of expert testimony is governed principally by Rules 702 and 703 of the Federal Rules of Evidence, which codified the standard by which courts evaluate the admissibility of proffered expert testimony as articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).

Under Rule 702, district courts must act as "gatekeepers, ensuring that an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012) (quoting *Daubert*, 509 U.S. at 597). The party seeking to introduce expert testimony bears the burden of establishing that the proffered opinions are both reliable and have relevance to the determinations to be made by the trier of fact. *Id.*, *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473 (1st Cir. 2016). In its gatekeeper role, the court must consider three distinct issues in connection with the offered expert testimony: (1) whether the proposed expert is qualified by "knowledge, skill, experience, training or education;" (2) whether the proposed subject matter of the expert opinion properly

concerns "scientific, technical or other specialized knowledge;" and (3) "whether the testimony is helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case." *Bogosian v. Mercedes-Benz of N. Am., Inc*., 104 F.3d 472, 476 (1st Cir. 1996).

The requirement that an expert's testimony must be premised on reliable scientific foundation is often the "central focus of a *Daubert* inquiry." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998). By ensuring that any offered opinion is based on a reliable scientific foundation, the court can ensure that "the reasoning or methodology underlying the testimony is scientifically valid and . . . that [the] reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The existence of analytical gaps between the relevant data and the opinions proffered by an expert may undermine the reliability of an expert's testimony, thereby mandating its exclusion. See *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997). Moreover, expert opinions based on "conjecture or speculation from an insufficient evidentiary foundation" can be excluded. *Damon v. Sun Co.*, 87 F.3d 1467, 1474 (1st Cir. 1996) (internal quotation marks omitted).

### III. BLUM'S CORRECTIVE ADVERTING DAMAGE OPINIONS SHOULD BE STRUCK AND EXCLUDED

A trademark infringement plaintiff is only entitled to an award of corrective advertising damages to correct the actual harm suffered as a result of the alleged infringement. *Monahan Prod. LLC v. Sam's East, Inc.*, 463 F.Supp. 3d 128, 146 (D. Mass. 2020), *citing Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992 (rejecting corrective advertising award that was "unrelated to plaintiff's injury."). Even though Plaintiff spent less than ▓▓▓▓ advertising between 2018 and 2022, Mr. Blum opines that Plaintiff is entitled to a corrective advertising award of ▓▓▓▓▓▓▓. Blum Expert Report, Doc. No. 200-1 at 24-25.

3

Mr. Blum's opinion regarding corrective advertising should be struck and excluded in the first instance because Mr. Blum fails to address whether Plaintiff has even suffered any actual harm that a corrective advertising award is needed to remedy. Tellingly, Mr. Blum advocates for over ▮▮▮▮▮ in corrective advertising damages without first determining the harm sustained by Plaintiff or the amount of corrective advertising needed to remedy that harm. Instead, Mr. Blum bases his corrective advertising damage award only on *Defendant's* advertising expenses. *Id.,* Doc No. 200-1 at 88. As a result, the proffered opinion is not the product of any scientific, technical or other specialized knowledge, but rather amounts to little more that Mr. Blum's unsupported assumptions as to amount of corrective advertising needed to remedy Plaintiff's (unidentified) injury.

At deposition, Mr. Blum not only admitted that he did not base his corrective advertising opinions on Plaintiff's injury, but he also acknowledged that he has not even considered the types of corrective advertising that would be needed by Plaintiff to address the harm allegedly sustained.[1] Blum Depo. Test., Doc. No. 200-2 at 30-34. (Mr. Blum confirms he has not developed a marketing plan to address the alleged harm to Plaintiff, has not considered when the anticipated corrective advertising campaign would start or end, how long it would last, the costs of such a campaign or even the types of media to be employed). *Id.* Indeed, Mr. Blum goes so far as to say that it would have been "inappropriate" for him to consider any of these items, and rather, that Plaintiff will develop a marketing plan once it is determined the corrective

---

[1] At deposition, Mr. Blum also acknowledged that Plaintiff's ▮▮▮▮▮ ▮▮▮▮▮ is not indicative of low consumer awareness of Plaintiff's brand and mark, but rather supports a higher corrective advertising award because Plaintiff is unlikely to be able to fund a corrective advertising absence an award from Defendant. Blum Depo. Test., Doc. No. 200-2 at 13-14. Here again Mr. Blum strays from the accepted metrics for determining a corrective advertising award by focusing not on the injury to be remedied, but rather on who the alleged infringer is and its resources.

4

advertising damage award they receive. *Id*., Doc. No. 200-2 at 34. But Mr. Blum's analysis is backwards. Plaintiff is not entitled to an award of corrective advertising dollars and only then decide how to use that recovery. A corrective advertising award must address an "identifiable harm to its reputation." *First Act, Inc. v. Brook Mays Music Co.,* 429 F. Supp. 2d 429, 438-9 (D. Mass. 2006). Because Mr. Blum fails to tether his proffered corrective advertising award to any specific harm, Mr. Blum's opinions are not supported by accepted principles and methodologies for determining such awards. On this basis alone, Mr. Blum's opinion should be excluded.

Mr. Blum's opinion on Plaintiff's requested corrective advertising award should also be excluded because Mr. Blum has failed to establish that he has the specialized knowledge or expertise needed to offer such opinions. Mr. Blum's concedes that he has very limited experience in connection with the development of marketing plans which may have given him a basis for determining the costs of such a plan. At deposition, Mr. Blum acknowledged that his work in connection with marketing and marketing plans is almost exclusively related to the auditing of marketing plans. *Id*. Doc. No., 200-2 at 23-29. When asked if he has ever developed a marketing plan, the only ones he could identify were marketing plans he was involved in for his accounting firm. *Id*. Doc. No. 200-2 at 24-27. Mr. Blum failed to identify any experience in connection with the development or implementation of marketing plans for companies in the food industry. *Id*. Doc. No. 200-2 at 28. As a result, Mr. Blum lacks the knowledge and experience needed to offer opinions as to the costs of any corrective advertising campaign. Finally, it should be stricken because in light of the above, it fails to assist the trier of fact.

5

## IV. BLUM'S REASONABLE ROYALTY DAMAGE OPINIONS SHOULD BE STRUCK AND EXCLUDED

In his expert report, Mr. Blum opines that Plaintiff is entitled to reasonable royalty damages in the amount of ▓▓▓▓▓▓▓. Doc. No. 200-1 at 24-25. Mr. Blum contends that that his reasonable royalty damage award reflects royalty income lost by Plaintiff as a result of the alleged infringement. *Id.,* Doc. No. 200-1 at 31. Mr. Blum's reasonable royalty opinion should be excluded for two reasons. First, because Plaintiff is not entitled to reasonable royalty damages as a matter of law, Mr. Blum's reasonable royalty opinion is irrelevant and does not assist the trier of fact. Second, Mr. Blum's reasonable royalty opinion should be excluded because it is premised on fatally flawed methodologies, namely (a) Mr. Blum relies on an unexecuted agreement, partially negotiated by Plaintiff and two third-parties, which alleged "royalty" actually does not cover WHERE GREAT TASTE IS PLANT BASED; and (b) Mr. Blum relies on royalty rates associated with the licensing of well-known house marks, which have no relevance here. *Id.*, Doc. No. 200-1 at 52-54; 59-61.

As to Plaintiff's entitlement to reasonable royalty damages, courts in this circuit have never awarded a plaintiff in a trademark infringement case reasonable royalty damages when the parties did not have a prior licensing history. In this case, there is no dispute that the parties have no such licensing history, thereby foreclosing Plaintiff's recovery of reasonable royalty damages.[2] As a result, Mr. Blum's opinion on reasonable royalty damages, should be excluded because Plaintiff is not entitled to such an award as a matter of law. *Id.*, Doc. No. 200-1 at 31, *et seq.*; See *National Fire Prot. Ass'n. v. Int'l Code Council, Inc.,* 2006 U.S. Dist. LEXIS 14360,

---

[2] Plaintiff also concedes that other than the unexecuted agreement discussed above, it has never engaged in any discussions with third parties for the licensing of its WHERE GREAT TASTE IS PLANT BASED. S. Shipon Depo. Test., Doc. No. 200-3 at 27-28; M. Shipon Depo. Test., Doc. No. 200-4 at 28.

6

*93-94 (D. Mass. 2006) (granting summary judgment in favor of defendant on plaintiff's reasonable royalty damage claim given the absence of a prior licensing history). Given the absence of any licensing history between the parties, Plaintiff is not entitled to reasonable royalty damages as a matter of law and Mr. Blum's opinions thereon are irrelevant and do not assist the trier of fact.

Additionally, the opinions offered by Mr. Blum are premised on his use of unreliable data points. First, Mr. Blum relies on an unexecuted joint venture agreement he claims supports an ▮▮▮▮▮▮▮▮▮▮ for Plaintiff's slogan. Doc. No. 200-1 at 59-61; Unexecuted License Agreement, Doc. No. 200-5. As this was not a license negotiation between Vegadelphia and Defendants to use the slogan, it is not a meaningful data point. Moreover, the payment due pursuant to the terms ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Doc. No. 200-5 at 10. Mr. Oberholzer confirmed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Oberholzer Depo. Test., Doc. No. 200-6 at 19-20. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

To support his proposed ▮▮▮▮▮▮▮▮▮▮, Mr. Blum also relies on license agreements related to the licensing of famous house marks, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Doc. No. 200-1 at 52-54. Mr. Blum fails to articulate any cogent explanation for why these primary marks of well-known companies are comparable to Plaintiff's largely unknown slogan, which is a secondary mark, in that it is typically adjacent to VEGADELPHIA. *Id.* Such analysis is also unreliable and inapplicable because Defendants' used Great Taste Plant Based as a descriptive

7

309054712v1

tagline, in connection with its primary marks (e.g., BEYOND and DUNKIN') and therefore lacked any value as a source-identifier, which is the foundation of a royalty payment required by a license agreement.

As a result of Plaintiff is not be entitled to reasonable royalty damages as a matter of law, and due to Mr. Blum's use of inapplicable marks and agreements to support his reasonable royalty analysis, his opinions should be struck and excluded.

## V. MR. BLUM'S LOST PROFITS FROM LOST VALUE OPINIONS SHOULD BE STRUCK AND EXCLUDED

In 2019, after Plaintiff first became aware of the alleged acts of infringement which form the basis for this action, Plaintiff was in discussions to form a joint venture with two individuals, Erik Oberholzer and Paul Litten. Doc. No. 200-3 at 18-25. The proposed product of the proposed joint venture (which never came to fruition) would have been a new Vegadelphia venture which Plaintiff would own ▮▮▮▮. Email Describing Venture, Doc. No. 200-7 at 2; Doc. No. 200-1 at 120. In the course of the discussions surrounding this proposed joint venture, Erik Oberholzer believed that there was a possibility of the new venture being ▮▮▮▮▮▮▮▮ in the future. Doc. No. 200-6 at 18-19. Plaintiff's principals echoed Mr. Oberholzer's opinion that they were "hopeful" that the business could be worth ▮▮▮▮▮ at some point in the future. Doc. No. 200-4 at 25-26. Ultimately, the joint venture never happened and the proposed joint venture agreement was never signed. *Id*. at 11-17.

Against this backdrop, Mr. Blum offers an expert opinion, characterized as a "Lost Profits from Lost Valuation" opinion wherein he opines that Plaintiff is entitled to ▮▮▮▮▮ in lost value damages representing ▮▮▮▮▮ of the joint venture that never materialized with Erik Oberholzer and Paul Litten. Doc. No. 200-1 at 120.

309054712v1

There are several fatal flaws which render Mr. Blum's opinion in this regard wholly speculative, not tied to the facts of the case and entirely unreliable. "Actual damages, whether they be for violation of trademark rights… must be rationally based on evidence and not mere speculation." *Fishman Transducers, Inc. v. Paul*, 684 F.3d 1878, 195 (1st Cir. 2012).

First, and as Mr. Blum readily admits, he never conducted any valuation of Plaintiff or the proposed joint venture. Doc. No. 200-2 at 35-36. Instead, he simply adopted the ▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ believed was possible without providing any data or analysis. *Id.* Mr. Blum confirms that he never conducted a valuation of his own, never spoke to Mr. Oberholzer about his valuation, and didn't even know all of the data points and facts Mr. Oberholzer used to arrive at the ▄▄▄▄▄▄▄▄ value. Doc. No. 200-2 at 42, 44-47. Mr. Blum similarly doesn't know what training or experience Mr. Oberholzer has in valuing companies. Doc. No. 200-2 at 42-44. For that reason alone, Mr. Blum's opinion on this topic should be excluded.

Separately, Mr. Blum's opinion as to what the value of the Vegadelphia joint venture would be but for the alleged infringement is unreliable and nothing more than conjecture. Essentially, Mr. Blum assumes (without any factual support) that the Vegadelphia venture would have succeeded, and the only reason it didn't was because of the alleged infringement. But here too Mr. Blum's opinions do not comport to the facts. As discussed above, the joint venture agreement specifically allowed ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄ Doc. No. 200-6 at 19-20; Doc. 200-5 at 10. The negotiations relating to the potential joint venture occurred after Plaintiff learned of the alleged infringement. Doc. No. 200-3 at 18-25. The fact that the parties continued to discuss the joint venture for years after becoming aware of the infringement belies any connection by Mr. Blum that the alleged

9

infringement was the reason the joint venture didn't happen. [cite] Furthermore, at deposition the other two parties to the joint venture (Messrs. Oberholzer and Litten) confirm that it was not the alleged infringement that killed the joint venture, but concerns about the licensing fee, the uncertainty that comes with Plaintiff's initiation of litigation and the distraction that the lawsuit caused for the Plaintiff. Doc. No. 200-6 at 9-12; Litten Depo. Test., Doc. No. 200-8 at 6-7.

For the foregoing reasons, Mr. Blum's opinion as to the lost value associated with the new Vegadelphia venture is not supported by the facts, not based on any specialized knowledge or expertise and is nothing more than Mr. Blum's unsupported conjecture as to the value of a venture agreement that was never executed. As such, Mr. Blum's opinions should be struck and excluded.

## VI. CONCLUSION

For the reasons set forth herein, Mr. Blum's opinion and testimony as to the second, third and fifth categories of damages be struck and excluded.

309054712v1

Dated: March 11, 2025                 Respectfully Submitted,

                                             BUCHALTER
                                             A Professional Corporation

                                             By: */s/Willmore F. Holbrow*
                                             WILLMORE F. HOLBROW III *(Pro Hac Vice)*
                                             BUCHALTER
                                             A Professional Corporation
                                             1000 Wilshire Boulevard, Suite 1500
                                             Los Angeles, CA  90017-1730
                                             Telephone: 213.891.0700
                                             Fax: 213.896.0400
                                             Email:  wholbrow@buchalter.com

                                             *Attorneys for Defendant Beyond Meat, Inc.*