**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | |
|---|---|
| SONATE CORPORATION D/B/A Vegadelphia FOODS,<br><br>                    Plaintiff,<br><br>    vs.<br><br>BEYOND MEAT, INC., a Delaware corporation,<br><br>                    Defendant. | Civil Action No. 1:23-cv-10690 |

## DEFENDANT BEYOND MEAT, INC.'S  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### *[REDACTED VERSION]*

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ....................................................................................................1

  A.    Beyond Meat ...............................................................................................1

  B.    Sonate ..........................................................................................................3

  C.    This Dispute .................................................................................................4

  D.    Beyond Meat's Unsuccessful Trademark Application ...............................5

III.   ARGUMENT ........................................................................................................6

  A.    No Likelihood of Confusion Exists. ...........................................................6

    1.    The test for trademark infringement at summary judgment .......................6

    2.    The Likelihood of Confusion Factors analyzed ...........................................7

    3.    No likelihood of confusion exists ...............................................................12

  B.    Beyond's use of Product Messaging constitutes "Fair Use" ................12

    1.    Defendants' Use of Its Messaging Is Not-Trademark Use .......................13

      a.    The Selection Process Denotes Non-Trademark Use. ..................13

      b.    Defendants' Use of Housemark Reflects Non-Trademark Use .....13

      c.    Third Parties Use of Terms Reflects Non-Trademark Use ............14

      d.    The USPTO confirmed the Product Messaging does not
            Function as a Trademark ...............................................................14

    2.    Beyond Meat used the Product Messaging to fairly and accurately
          describe its products ....................................................................................15

    3.    Defendants' Used "Great Taste Plant-Based" Fairly and in Good Faith ...16

IV.   Several of Plaintiff's Damage Theories Fail as a Matter of Law .......................17

  A.    Plaintiff's Lost Value Claim is Baseless ..................................................17

  B.    Sonate is not Entitled to Royalty Damages ..............................................18

  C.    Sonate is not entitled to corrective advertising damages .........................19

BN 87650646v1

V.    CONCLUSION.............................................................................................................20

BN 87650646v1

## TABLE OF AUTHORITIES

PAGE(S)

**Federal Cases**

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*,
    999 F.2d 1 (1st Cir. 1993) ............................................................................16

*Anderson* v. *Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................6

*Astra Pharm. Prods. v. Beckman Instruments, Inc.*,
    718 F.2d 1201 (1st Cir. 1983) .......................................................................6

*Barrette Outdoor Living, Inc. v. Integrity Composites*,
    666 F. Supp. 3d. 18 (D. Maine 2023) ..........................................................17

*Beacon Mutual Ins. Co. v. OneBeacon Ins. Group*,
    376 F.3d 8 (1st Cir. 2004) ............................................................................11

*BigStar Entm't, Inc. v. Next Big Star, Inc.*,
    105 F. Supp. 2d 185 (S.D.N.Y. 2000) .........................................................19

*Bose Corp. v. Linear Design Labs, Inc.*,
    467 F.2d 304 (2d Cir. 1972) ..........................................................................6

*In re Boston Beer Co. L.P.*,
    198 F.3d 1370 (Fed. Cir. 1999) ...................................................................14

*In re Boston Beer Co.*
    L.P., 47 U.S.P.Q.2d 1914 (T.T.A.B. 1998), aff'd, 198 F.3d 1370
    (Fed. Cir. 1999) .............................................................................................8

*Boston Duck Tours, LP v. Super Duck Tours*,
    531 F.3d 1 (1st Cir. 2008) ...............................................................5, 7, 9, 11

*Car-Freshener Corp. v. S.C. Johnson & Co. Inc.*,
    70 F.3d 267 (2d Cir. 1995) ..........................................................................12

*Colt Def. LLC v. Bushmaster Firearms, Inc.*,
    486 F.3d 701 (1st Cir. 2007) ......................................................................7, 8

*Copy Cop, Inc. v. Task Printing, Inc.*,
    908 F.Supp. 37 (1st Cir.1995) .......................................................................5

*Cosmetically Sealed Indus. Inc. v. Chesebrough-Pond's USA Co.*,
    125 F.3d 28(2d Cir. 1997) ......................................................................13, 15

*Cosmetically Sealed Indus. V. Chesebrough-Pond's USA Co.*,
    125 F.3d 38 (2d Cir. 1997)........................................................................12

*Dessert Beauty, Inc. v. Fox*,
    568 F. Supp.2d 416 (S.D.N.Y. 2008)...............................................11, 13

*In re Dos Padres Inc.*,
    49 USPQ2d 1860 (TTAB 1998) ...........................................................14

*Duopross Meditech Corp. v. Inviro Medical Devices, Ltd.*,
    695 F.3d 1247, 103 USPQ2d 1753 (Fed. Cir. 2012) .............................14

*EMI Catalogue P'Ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
    228 F.3d 56 (2d Cir. 2000)..............................................................12, 15

*Equine Technologies, Inc. v. Equitechnology, Inc.*,
    68 F.3d 542 (1st Cir. 1995)...................................................................10

*Especias Montero, Inc. v. Best Seasoning Grp., Inc.*,
    2022 U.S. Dist. LEXIS 172938 (D.P.R. 2002) ......................................8

*Keebler Co. v. Rovira Biscuit Corp.*,
    624 F.2d 366 (1st Cir. 1980) ..................................................................6

*Kelly-Brown v. Winfrey*,
    95 F. Supp.3d 350 (S.D.N.Y. 2015).....................................................13

*KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc.*,
    543 U.S. 111 (2004)......................................................................11, 13

*Monahan Prods. LLC v. Sam's East, Inc.*,
    463 F. Supp. 3d 128 (D. Mass. 2020) ...................................................18

*National Fire Prot. Ass'n. v. Int'l Code Council, Inc.*,
    2006 U.S. Dist. LEXIS 14360 (D. Mass. 2006) ..............................17, 18

*Pignons Mecanique de Precision Corp. v. Polaroid Corp.*,
    498 F.Supp. 805 (D. Mass. 1980), *aff'd* 657 F.2d ...................................6

*Pignons S. A. de Mecanique de Precision Corp. v. Polaroid Corp.*,
    657 F.2d 482 (1st Cir. 1981)......................................................5, 6, 10

*Pump, Inc. v. Collins Mgmt.*
    746 F.Supp. 1159 (D. MA 1990) ..........................................................10

*R. G. Barry Corp. v. A. Sandler Co.*,
    406 F.2d 114 (1st Cir. 1969)...................................................................7

iv

*Solmetex, LLC v. Dentalez, Inc.*,
   150 F. Supp. 3d 100 (D. Mass. 2015) ............................................................................9

*The Int'l Assoc., Machinists v. Winship Green*,
   103 F.3d 196 (1st Cir. 1996) ......................................................................................10

*US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*,
   121 F.4th 339 (1st Cir. 2024) .....................................................................................11

*Volkswagenwerk Aktiengesellschaft v. Wheeler*,
   814 F.2d 812 (1st Cir.1987) ...................................................................................5, 10

*Wonder Labs, Inc. v. Procter & Gamble Co*.,
   728 F. Supp. 1058, 14 U.S.P.Q.2d 1645 (S.D.N.Y. 1990) .....................................15

**Federal Statutes**

15 U.S.C. § 1125(a) ..........................................................................................................5

**Rules**

Rule 56 ...............................................................................................................................1

**Other Authorities**

Lanham Act § 43(a) ...........................................................................................................5

Los Angeles Times ............................................................................................................2

New York Times .................................................................................................................2

*Plant-based,* Merriam Webster Dictionary (2025), www.merriam-
   webster.com/dictionary/plant-based; ............................................................................7

Wall Street Journal ............................................................................................................2

BN 87650646v1

Defendant Beyond Meat, Inc. ("Beyond Meat") hereby moves for summary judgment under Rule 56 as to all claims in the present action filed by Sonate Corporation d/b/a Vegadelphia ("Sonate).

## I.    INTRODUCTION

In 2022 Sonate was selling three plant-based meat products to four wholesale customers under the mark "Vegadelphia" and the tagline "Where Great Taste is Plant Based," a composite mark comprised of widely-used unprotectable phrasing, and primarily sold on wholesale cardboard box packaging that was discarded by the restaurants that bought them. During the relevant time period, consumers never saw these marks, and never even knew they were eating a Sonate product. Sonate spent less than twenty dollars on marketing in the prior five years.

Sonate now seeks in excess of ████████ in damages in a lawsuit it filed against market leader Beyond Meat based on an assertion that Sonate has exclusive rights in the terms "plant based" and "tastes great," unprotectable terms that are widely used in the plant-based meat industry. Despite the fact that Beyond Meat had long ceased use of this wording before the lawsuit was filed, despite the fact that Beyond Meat only used the wording descriptively, and despite the fact that no consumer of Beyond Meat has any reason to know of the existence of Sonate, Sonate asks this Court to award it hundreds of millions of dollars – exponentially more than its lifelong revenues. This is not a legitimate trademark dispute, or one deserving of a jury's attention. There is no probability of confusion, no actual trademark use, and no damages.

## II.    FACTS

### A.    Beyond Meat

Beyond Meat is a market leader in the plant-based meat industry. (Doc. 207, Statement of Undisputed Facts ("SUF") ¶ 1; Doc. 203-1 at 8). It employs 700 people, including more than 170 scientists, engineers, researchers, technicians, and chefs in 2020. (SUF ¶¶ 2–3; Doc. 203-1 at 4, 7). By 2020, Beyond's products were available at 122,000 retail and foodservice outlets in more than 80 countries worldwide. (SUF ¶ 4; Doc. 203-1 at 3). Beyond primarily drives consumer interest via social media, public relations, ambassadors and influencers, customer media, and

1

strategic partnerships, as well as television and radio. (SUF ¶ 5; Doc. 203-1). Beyond is backed by major celebrities, including Kevin Hart, Snoop Dogg, Leonardo DiCaprio, Chris Paul, Kyrie Irving, and Shaquille O'Neal. (SUF ¶ 6; Doc. 203-2 at 33). Over a 12-week period in 2018, the Beyond Burger was the No. 1 selling packaged burger in a major U.S. retailer, beating out even traditional meat-based burgers. (SUF ¶ 7; Doc. 203-3 at 30). In 2018 alone, Beyond received more than 10 billion media impressions, including those from well-known outlets such as the New York Times, the Wall Street Journal, the Los Angeles Times, Buzzfeed, and the Today show. (SUF ¶ 8; Doc. 203-2 at 32).

In 2019, Beyond Meat began using "plant based" and "great taste" in its product messaging ("Product Messaging") to identify the two most important qualities of its plant-based meat substitute: its vegan nature and its excellent taste. (SUF ¶ 9; Docs. 203-4 at 5 203-5 at 3, 8, 10, 15-18, 203-6 at 14, 18-19). The product messaging was not based on any third-party use of similar terms. (SUF ¶¶ 10–11; Doc. 203-5 at 11-12). This Product Messaging was used primarily on plant-based sausage, but also was used on point-of-sale displays in grocery stores in connection with the sale of burgers, meatballs, popcorn chicken, steak, pepperoni, beef crumbles, and other meat substitutes. (SUF ¶ 12; Doc. 203-7 at 1). The Product Messaging always appeared in close proximity to the "Beyond Meat" house mark or logo. (SUF ¶ 25; Doc. 17).

Beyond Meat entered into a collaboration with Dunkin' to use Beyond Meat's sausage in Dunkin's breakfast sandwiches. (SUF ¶¶ 14–15; Docs. 203-2 at 3, 203-10 at 2, 203-11 at 2). In the lead up to the launch, the Defendants shared ideas on product messaging to determine how best to introduce and describe the new Sandwich to Dunkin's consumers. (SUF ¶ 16; Docs. 203-5 at 19, 203-12 at 2). Jamie Grass, Beyond's Brand Activation Manager, provided several messaging ideas to convey the key qualities of the Sandwich, including, *inter alia*, "Same Great Taste. Plant-Based," "Great Taste. Plant-Based," "Breakfast with Benefits," "Same Same. But Plant-Based," "Good Eats. New Meats," More pros in your protein," and "On-the-go Is now better-for-you." (SUF ¶ 17; Doc. 203-12 at 2). Sonate and Dunkin selected "Great Taste. Plant-Based." as the

2

approved product messaging for the collaboration. (SUF ¶¶ 17–19; Docs. 203-4 at 4, 203-5 at 3, 8, 10, 15-18, 203-6 at 14, 18-19, 203-12 at 2, 204-1 at 14, 204-2 at 3-7).

In the following days, Dunkin's marketing agency prepared advertising materials to be used with the launch and circulated the proposed art to the Defendants for approval. (SUF ¶ 20; Doc. 204-1 at 2-41). During this process, the Defendants' respective brand managers reviewed all proposed materials for trademark hygiene and compliance. (SUF ¶ 21; Docs. 204-1, at 26-29, 204-3 at 3-4, 204-4 at 2, 204-5 at 2). No attention was given to "Great Taste. Plant-Based," as it was not considered to be a trademark. (SUF ¶ 70; Doc. 206-7 at 2). Thereafter, throughout Defendants' collaboration, grammatical phrasing of the Product Messaging varied, including use of "Great Taste Plant-Based" and "Plant-Based Great Taste," with variations in punctuation and capitalization, as well as font. (SUF ¶¶ 22–24; Docs. 17, 204-1, 204-6 at 2, 204-7 at 2).

## B.   <u>Sonate</u>

Since 2019, Sonate, doing business as Vegadelphia, has been a business-to-business provider of plant-based shredded beef, shredded chicken, and crabcakes. (SUF ¶¶ 26, 34; Docs. 205-3, at 2-3, 205-4, at 2-3, 205-5, at 2-3, 204-8 at 2-5). It is operated on a part-time basis by brothers Matt and Seth Shipon. (SUF ¶ 27; Doc. 204-9, at 3-5). It has had the same four customers since 2018: three restaurants and a restaurant distributor. (SUF ¶ 26; Doc. 204-8, at 2-5). Its average annual gross profit from 2018 to 2022 was about ███████████████████████████ ████████████████████ (SUF ¶ 29; Doc. 205-2 at 2-3). ████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████ from January 2018 to October 31, 2022. (SUF ¶ 31; Doc. 204-8, at 2-5). ████████████████████████████████████████████████████████████████ (SUF ¶ 32; Doc. 204-8, at 2-5). During that same time period, Sonate spent ██████ on advertising. (SUF ¶ 33; Docs. 205-1 at 6-7, 205-2 at 2-3). Sonate uses the slogan "WHERE GREAT TASTE IS PLANT BASED" on its plant-based meat products, which are shredded beef, shredded chicken, and crab cakes. (SUF ¶ 34; Docs. 205-3, at 2-3, 205-4, at 2-3, 205-5, at 2-3). The slogan appears on wholesale cardboard boxes that are shipped to restaurant and then discarded. (SUF ¶ 35; Doc. 205-

3

6, at 57-60. In all uses of Sonate's slogan, each appears in close visual proximity to its house mark, "Vegadelphia Foods." (SUF ¶ 36; Docs. 205-3, at 2-3, 205-4, at 2-3, 205-5, at 2-3). There is no evidence that any customers actually saw the slogan. (SUF ¶ 37; Docs. 59, 59-1, 59-2, 59-3, 204-9 at 6-8, 13-14, 205-1 at 18-20). To the contrary, an investigator visited one of the restaurants as a customer and confirmed that consumers did not see the slogan. (*Id.*)

Sonate filed a trademark application for WHERE GREAT TASTE IS PLANT BASED in 2014, which registered on March 10, 2015, under Reg. No. 4,698,499 ("the '499 Registration"). (SUF ¶ 39; Doc. 205-7 at 2).

**C.    This Dispute**

In May 2020, an attorney representing Sonate sent Beyond and Dunkin' a demand letter alleging trademark infringement in connection with the collaboration. (SUF ¶ 40; Docs. 204-9, at 9, 205-8, at 2-6). Defendants' attorney responded confirming that they had already transitioned away from the Product Messaging, and any residual materials were out of market shortly thereafter. (SUF ¶¶ 41–42; Docs. 204-9, at 28-29, 205-1, at 11, 205-9, at 2-4). Nonetheless, in April of 2022, two years after sending the original letter and well after Defendants had ceased using the slogan, Sonate filed the present lawsuit, alleging that the use of "Plant Based Tastes Great" infringed upon its trademark rights in the slogan and the '499 Registration. (SUF ¶ 43; Doc. 1). Sonate asserts that it is due in excess of ████████ in damages. (SUF ¶ 44; Doc. 205-10, at 25).

Discovery in this case has underscored the market prevalence of the terms "plant based" and "great taste," both separately and together. Dr. Richard George, a marketing expert, identified numerous uses of "great taste" in product messaging and consumer commentary in association with McDonald's, Pepsi, Kellogs, Hershey's, Lipton, Reese's, Gatorade, Heinz, and Sprite. (SUF ¶ 45; Doc. 203-6, at 19-23, 25-31, 145-154). Similarly, he identified similar uses of "plant based," including by Walmart, Kroger, Trader Joe's, BJ's Wholesale Club, Costco, Food Lion, and Whole Foods. (SUF ¶ 46; Doc. 203-6, at 38-50). Similar evidence of third-party use can be identified from a search of USPTO trademark registrations records, which confirm at least 60 uses of "plant

based" in Class 29 (covering food products), all with the generic portion disclaimed. (SUF ¶ 49; SUF, Appendix C).

Notably, Dr. George also identified third-party use of "plant based" and "great taste" used jointly, including Hellman's, Harris Teeter, V Burger, Impossible Foods, Arley's, the Mighty Kitchen, the Philly Vegan, Ambronite, and Sunwarrior, who each used *both* terms, *together,* in connection with vegan foods. (SUF ¶ 47; Doc. 203-6, at 60-81). Dr. George also located 18 social media messages, totally unrelated to the foregoing uses that made reference to both terms together, often as hashtags. (SUF ¶ 48; Doc. 203-6, at 82-88). Dictionary definitions even further underscore the generic nature of these terms. (SUF ¶¶ 50–52). Finally, Sonate itself has used these terms generically, including in this litigation, (SUF ¶ 63; Docs. 17, 205-1, at 14), and in its sales sheets asserting that its products are "A Great Tasting Plant-Based . . . Alternative," "A Great Tasting Plant-Based Chicken Alternative," and similar. (SUF ¶ 64; Docs. 205-3, at 2-3, 205-4, at 2-3, 206-1, at 2-3, 206-2, at 2-3, 206-3, at 2-3, 206-4, at 2-3, 206-5, at 2-16).

As could be expected, there has been no actual confusion.

D.    **Beyond Meat's Unsuccessful Trademark Application**

In January of 2020, Beyond Meat's counsel performed a trademark search because a competitor, Impossible Foods, was using "great taste" and "plant-based" in relation to its plant-based foods, and Beyond was worried that Impossible Foods would try to claim the messaging as their own. (SUF ¶ 54; Docs. 203-5, at 13-14, 205-11, at 7-8). As part of this process, Beyond's counsel, came across Sonate's trademark registration, however, she was unable to find any evidence that Sonate was actually using the mark. (SUF ¶ 55; Doc. 203-5, at 14). Out of concern that Impossible Foods may try to preclude Beyond Meat from utilizing the product messaging that it believed best described their product, Beyond filed a trademark application for PLANT-BASED GREAT TASTE on March 16, 2020. (SUF ¶¶ 56–57; Docs. 205-8, at 2-6, 205-11, at 7-8). The USPTO confirmed the proposed mark was descriptive and therefore failed to function as a trademark in an Office Action, noting " . . .the goods are PLANT-BASED GREAT TASTE substitutes for meat." (SUF ¶¶ 58–59; Doc. 205-12, at 4-5).

## III.    ARGUMENT

**A.    No Likelihood of Confusion Exists.**

### 1.    The test for trademark infringement at summary judgment

Section 43(a) of the Lanham Act establishes a cause of action for trademark infringement. 15 U.S.C. §1125(a). "To succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." *Boston Duck Tours, LP v. Super Duck Tours*, 531 F.3d 1, 12 (1st Cir. 2008). Under First Circuit law, likelihood of confusion requires "more than the theoretical possibility of confusion." *Id.* at 12 (citation omitted). That is, "the allegedly infringing conduct must create 'a likelihood of confounding an *appreciable number of reasonably prudent purchasers* exercising ordinary care." *Id.* (citation omitted) (emphasis original). Demonstrating a likelihood of confusion is essential for a plaintiff to demonstrate a plausible claim for relief. *Pignons S. A. de Mecanique de Precision Corp. v. Polaroid Corp*., 657 F.2d 482, 487 (1st Cir. 1981).

Even though infringement cases "often present factual issues that render summary judgement inappropriate, this is not invariably so." *Copy Cop, Inc. v. Task Printing, Inc*., 908 F.Supp. 37, 43 (1st Cir.1995); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 814 (1st Cir.1987)). In some infringement cases, "the Court may determine that the facts have been fully developed through pleadings, affidavits, documents and exhibits and that the legal issues are squarely presented." *Pignons Mecanique de Precision Corp. v. Polaroid Corp*., 498 F.Supp. 805, 809-810 (D. Mass. 1980), *aff'd* 657 F.2d at 487.

Applying these principles, Sonate bears the burden here of adducing "significantly probative" evidence tending to show that an appreciable number of prospective consumers were in fact likely to be confused or misled into believing that Beyond Meat's products were produced, authorized, or affiliated with Sonate. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (nonmovant cannot "get to a jury without significantly probative evidence" opposing summary judgment). Sonate has not reached this plateau.

6

**2.     The Likelihood of Confusion Factors analyzed**

Pursuant to *Pignons*, the First Circuit evaluates eight factors discussed below to determine whether there is a likelihood of confusion between two marks. *Pignons*, 657 F.2d at 487.

**(1)     Similarity of the marks and designs**

"[S]imilarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *Pignons*, 657 F.2d 482, 487. For example, differences in mark presentation, and the presence of other source-identifying information used in close proximity to the mark at issue, must all be considered when determining the similarity of marks. *Astra Pharm. Prods. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1203 (1st Cir. 1983) ("otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer.")

Here, Defendants always uses the Product Messaging in conjunction with their house mark: "DUNKIN'", "BEYOND MEAT," or logo. Similarly, Sonate always uses its tagline in connection with its house mark, "VEGADELPHIA." On this basis alone, the parties' marks are not likely to be confused with each other. *See Keebler Co. v. Rovira Biscuit Corp*., 624 F.2d 366, 378-79 (1st Cir. 1980) (because defendant "prominently display[ed] its logo and "adopt[ed] a differently colored and decorated can," it did not infringe plaintiff's trade dress"); *Bose Corp. v. Linear Design Labs, Inc*., 467 F.2d 304, 310 (2d Cir. 1972) ("The presence of [defendant's] name on the product goes far to eliminate confusion of origin."); *R. G. Barry Corp. v. A. Sandler Co*., 406 F.2d 114, 116 (1st Cir. 1969) (finding conjunction of house mark with contested trademark to be of "exceptional significance").

Not only does Beyond Meat *always* use its house mark or logo in connection with its Product Messaging, but the words themselves cannot be deemed similar because they are so highly descriptive. When evaluating a composite mark, the Court affords less weight to those portions of a mark that are generic. *Boston Duck Tours*, 531 F.3d at 24 (citing McCarthy § 23:49) ("[I]f a common portion of the two conflicting marks is a public domain generic name, the emphasis of

enquiry should be upon the confusing similarity of the non-generic portion, with the ultimate issue determined by the confusing similarity of the total impression of both marks"). In its analysis of the total impression of the marks, the Court thus focuses on the non-generic portions of each mark. *Boston Duck Tours*, 531 F.3d at 24 (citing *Am. Cyanamid Corp. v. Connaught Labs., Inc*., 800 F.2d 306, 309 (2nd Cir. 1986); *Beacon Mutual Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8,18-19 (1st Cir. 2004)).

Thus, the Court should determine what portion of "WHERE GREAT TASTE IS PLANT BASED" is generic. "A generic term is one that does not distinguish the goods of one producer from the goods of others […] it refer[s] to the genus of which the particular product is a species." *Colt Def. LLC v. Bushmaster Firearms, Inc.,* 486 F.3d 701, 705 (1st Cir. 2007) (citing *Keebler*, 624 F.2d at 373-74).

Here, the phrase "plant based" is generic. Most obviously, the term "plant based" is a dictionary-defined term, defined as "made or derived from plants." *Plant-based,* Merriam Webster Dictionary (2025), www.merriam-webster.com/dictionary/plant-based; s*ee Boston Duck Tours,* 531 F.3d at 18 ("While not determinative, dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public, the ultimate test of whether a trademark is generic.") (quoting *Surgicenters of Am., Inc.* v. *Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1015 n.11 (9th Cir. 1979)).

Genericness may also be evaluated by use of the term by competitors. *Colt Defense,* 486 F.3d at 706. Dr. George detailed numerous third-party uses of "plant-based" in his expert report, including uses by grocery stores as a product category and uses by food producers. (SUF ¶¶ 46–47; Doc. 203-6).[1] Trademark registration records from the USPTO also confirm at least 60 uses of "plant based," used generically in trademarks for vegetarian foods, with "plant based" disclaimed.

---

[1] For example, Dr. George identified generic use of "plant based" by Walmart, Kroger, Trader Joe's, BJ's Wholesale Club, Costco, Food Lion, and Whole Foods. (SUF ¶ 46; Doc. 203-6, at 38-50).

(SUF ¶ 49; SUF, Appendix C). It is an anomaly that Sonate was able to register its tagline without such a disclaimer.

The plaintiff's own use is also evidence of genericness. *Colt Defense*, 486 F.3d at 706 (citations omitted). Indeed, when the party claiming infringement uses the term to describe the product in a generic manner, this suggests that the term is generic. *Id.* at 707 (citing *Pilates, Inc. v. Current Concepts, In*c., 120 F. Supp. 2d 286, 299 (S.D.N.Y. 2000)). Here, Sonate has used the term "plant-based" generically in a variety of contexts, including in its pleadings (Dkt. 17 ¶¶ 28, 62) and in its own marketing. (SUF ¶ 64; Docs. 203-24, 203-25, 203-34, 203-35, 203-36, 203-37, 203-38). There can be no argument that "plant-based" is not generic.

The phrase "great taste" fares no better. "Great taste" is a textbook example of "so highly descriptive" self-laudatory "trade puffery." As explained in the leading trademark treatise, "[t]he 'so highly descriptive' category of designations posits that a term may be so highly descriptive that there is no reason to waste resources in attempting to prove secondary meaning." McCarthy § 12:22. In declining to register "BEST BEER IN AMERICA," even with evidence of secondary meaning, the Trademark Board explained that highly descriptive trade puffery "should be freely available to all competitors in any given field to refer to their products or services. ..." *In re Boston Beer Co*. L.P., 47 U.S.P.Q.2d 1914 (T.T.A.B. 1998), aff'd, 198 F.3d 1370 (Fed. Cir. 1999) ("[A]ny brewer should be free to make the same claim or boast about his own beer."). No evidence exists that Sonate has established secondary meaning in the "great taste" phrase. Moreover, Dr. George identified seemingly endless examples of the use of "great taste" by food companies. (SUF ¶ 45; Doc. 203-6).

Here, Sonate's mark is comprised of "plant-based," which is generic, and "great taste" which is also unprotectable because it is "so highly descriptive" without evidence of secondary meaning. In such a case, the Court "evaluates the total impression of the two marks without comparing their individual features and affording less weight to generic terms." *Especias Montero, Inc. v. Best Seasoning Grp., Inc*., 2022 U.S. Dist. LEXIS 172938, *16 (D.P.R. 2002). Doing so here is nearly impossible, given that Sonate's mark is comprised of the words "where" and "is,"

with the remainder of the mark consisting of unprotectable terms. In other words, Beyond Meat's uses of the phrases "great taste" and "plant based" overlap only with wholly unprotectable elements of Sonate's mark.

Under circumstances like these, even close similarity does not weigh in favor of Sonate. "Even if elements of each party's mark overlap, or are visually similar, the marks as a whole may still create a distinct commercial impression, especially if the similarities are limited to generic or descriptive elements." *Bos. Duck Tours,* 531 F.3d at 29. "When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks." *Id.* (citation omitted); *see also Solmetex, LLC v. Dentalez, Inc.,* 150 F. Supp. 3d 100, 116 (D. Mass. 2015) ("If the common element of conflicting marks is a word that is 'weak' then this reduces the likelihood of confusion.") (quoting McCarthy § 23:48).

### (2) The similarity of goods or services

Here, the goods of the parties are admittedly similar in that both parties sell plant-based meat. However, viewing the issue from the lens of probability of confusion, the products are not practically similar. Beyond Meat used the Product Messaging on plant-based sausage products sold commercially to the general public, primarily in conjunction with an ad campaign for Dunkin breakfast sandwiches, and in grocery store point-of-sale displays on steak, hamburgers, popcorn chicken, and meatballs. (SUF ¶ 12; Doc. 203-7). Sonate uses its slogan on plant-based shredded beef, shredded chicken, and crab cakes that are sold directly to restaurants. (SUF ¶ 34; Docs. 203-24, 203-25, 203-26).

If a consumer wanted vegan burgers, steak, popcorn chicken, or meatballs, he *could not obtain them* from Sonate because (1) Sonate doesn't make them, and (2) Sonate does not sell anything to end consumers.

### (3) (4) and (5) The relationship between the parties' channel of trade, advertising, and prospective buyers

Courts in the First Circuit typically "address the next three factors in the ensemble." *The Int'l Assoc., Machinists v. Winship Green*, 103 F.3d 196, 204 (1st Cir. 1996); *see also Equine*

BN 87650646v1

*Technologies, Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 546 n. 5 (1st Cir. 1995); *Volkswagenwerk,* 814 F.2d at 818. The facts relating to these factors weigh against any real-world probability of confusion. Sonate sells wholesale products directly to three restaurants and to one distributor, which supplies restaurants. Typical sales to these customers are in the thousands of dollars; indeed its two main customers, CW Dunnet (the distributor) and El Meson (a restaurant), make average orders of $6,358.15 and $11,424.08, respectively. No evidence exists that any end consumer has seen Sonate's tagline, which appears on wholesale, cardboard-box packaging that is discarded by the restaurant. Sonate's advertising expenditures over nearly five years was less than $20. Beyond Meat, on the other hand, aggressively markets its products, including in significant consumers advertising. In short, any overlap or similarity in the parties' customers, channels of trade, or advertising is near zero.

### (6) Evidence of actual confusion

There is no evidence of actual confusion.

### (7) The defendant's intent in adopting the mark

Beyond Meat was unaware of Sonate's slogan or registration when Beyond Meat adopted its Product Messaging – this is not in dispute. Nor would it make sense for Beyond Meat to intend to unfairly ride the coattails of Sonate, an unknown company with no discernable goodwill. *See Pump, Inc. v. Collins Mgmt.* 746 F. Supp. 1159, 1170 (D. Mass. 1990) (analyzing Aerosmith's motivation to unfairly benefit from of the name of an obscure band: "This lack of evidence is consistent with common sense -- why would a world-famous band with proven market power rely on the name of an unknown group of bodybuilders to help promote its product?").

### (8)     Strength of the Trademark

Sonate's mark is *extraordinarily* weak. Strong marks enjoy a broader and greater protection against infringement. *Int'l Ass'n of Machinists,* 103 F.3d at 206; *Volkswagenwerk,* 814 F.2d at 819; *Pignons,* 657 F.2d at 492. To assess the strength of a mark, the Court "look[s] to 'the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's

actions to promote the mark."" *Beacon Mut. Ins. Co*., 376 F.3d at 19 (quoting *Star Fin. Servs. v. Aastar Mortg. Corp*., 89 F.3d 5, 11 (1st Cir. 1996)).

Sonate has not promoted its slogan in any appreciable way. No evidence whatsoever exists showing that the slogan is recognized by consumers; it could not be, as no consumer has had any reason to see the slogan in almost ten years. The slogan is used on a product sold to only four commercial customers in a business that generates almost no profit and minimal revenue.

In addition to its commercial weakness, the slogan is as weak as one could be while still being registrable. It is comprised of generic phrase and a "so highly descriptive" self-laudatory term that are wholly unprotectable individually, and for which no secondary meaning has been shown.[2] Such a composite mark is weak as a matter of law. *See Boston Duck Tours*, 531 F.3d at 23 (a composite mark consisting of a generic phrase and a weak descriptive term is weak).

### 3.    No likelihood of confusion exists

Considering all the likelihood of confusion factors, no probability of consumer confusion can exist here. Indeed, Sonate cannot show how any consumer in the real world has or could believe Beyond Meat's product messaging to be affiliated with Sonate in any way. Under such circumstances, no likelihood of confusion can be found.

## B.    <u>Beyond's use of Product Messaging constitutes "Fair Use"</u>

Beyond Meat's use of Plant Based and Great Taste is permissible because it is not used as a source identifier, but rather as descriptive messaging to fairly and accurately describe qualities of Defendants' plant-based products. *See, e.g., KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc.*, 543 U.S. 111, 124 (2004); *Dessert Beauty, Inc. v. Fox*, 568 F. Supp.2d 416,

---

[2] The incontestability of Sonate's registration is of no relevance. The law is clear: "Incontestability and secondary meaning are distinct from a mark's strength." *US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 351 (1st Cir. 2024). As the First Circuit has made clear, secondary meaning is a threshold issue for establishing trademark *validity*, not a measure of its strength. *Id.* at 351-52.

423 (S.D.N.Y. 2008) ("even if a party's conduct would otherwise constitute infringement of another's trademark, fair use provides an absolute defense to liability").

"Although trademark rights may be acquired in a word or image with descriptive qualities, the acquisition of such rights will not prevent others from using the word or image in good faith in its descriptive sense, and not as a trademark." *Car-Freshener Corp. v. S.C. Johnson & Co. Inc.*, 70 F.3d 267, 269 (2d Cir. 1995). To demonstrate fair use, a defendant must establish that its use of a term was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *EMI Catalogue P'Ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 64 (2d Cir. 2000). The undisputed facts in this case clearly establish each of these elements.

### 1.    Defendants' Use of Its Messaging Is Not-Trademark Use

#### a.    The Selection Process Denotes Non-Trademark Use.

On June 27, 2019, Jamie Grass, Beyond Meat's Brand Activation Manager, provided several suggestions to convey the key qualities of the Sandwich, including *inter alia* "Great Taste. Plant-Based." At that time, Defendants were unaware of Plaintiff's use or registration of its slogan. Following its selection, the parties brand managers and legal departments reviewed the marketing collateral and focused on the presentation of the various terms including the use of the ® and TM symbols. Notably, no one made any suggestions or expressed concern over usage of "great taste plant-based." This lack of concern for the "great taste plant-based" Product Messaging was because neither Beyond Meat nor Dunkin viewed the terms as a source identifying trademark – they merely described attributes of the sandwich.

#### b.    Defendants' Use of Housemark Reflects Non-Trademark Use

"Words on a product's packaging generally do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function." *Id.; Cosmetically Sealed Indus. V. Chesebrough-Pond's USA Co.*, 125 F.3d 38, 30-31 (2d Cir. 1997) (defendants' non-trademark use "evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks"). Here, the source of the goods

13

promoted are clearly identified by Beyond and Dunkin' own trademarks, which are prominently displayed on the marketing materials. (SUF ¶ 13; Docs. 203-8, 203-9; SUF, Appendix A).

### c.     Third Parties Use of Terms Reflects Non-Trademark Use

Numerous third parties, including McDonald's, Pepsi, Kellogs, Hershey's, Lipton, Reese's, Gatorade, Heinz, Walmart, Kroger, Trader Joe's, BJ's Wholeslae Club, Costco, Food Lion, and Whole Foods used the same generic/descriptive terms, in connection with their primary marks, to identify characteristics of their products, which further confirms the non-trademark use of "plant-based, great taste. (SUF, Appendix B (providing examples)).

### d.     The USPTO confirmed the Product Messaging does not Function as a Trademark

As discussed above, in response to Beyond Meat's trademark application, the USPTO confirmed that the tagline was in fact descriptive of its plant-based products and could not serve as a trademark. Beyond Meat did not contest the descriptiveness refusal, ending the application process.

As these examples make clear, the Product Messaging is not used in a source-identifying manner; that function is served by the house marks such as "Dunkin" and "Beyond Meat." Courts routinely find non-trademark use in similar situations.[3]  The same result is warranted here.

///

///

///

---

[3] *See, e.g.*, *KP Permanent Make-Up*, 543 U.S. at 124 (use of "microcolor" descriptively, not as a mark, and in good faith not infringement of incontestable MICRO COLOR registration); *Cosmetically Sealed Indus. Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31(2d Cir. 1997) ("Chesebrough's promotional display clearly and prominently connected the lipstick to the well-known 'CUTEX' brand name," despite presence of the phrase 'Seal it with a Kiss'"); *Kelly-Brown v. Winfrey,* 95 F. Supp.3d 350, 363 (S.D.N.Y. 2015) (use of OWN YOUR POWER not used as a mark); *Dessert Beauty,* 568 F. Supp. 2d at 424 (defendants' use of "Love Potion" not trademark use).

14

2.    **Beyond Meat used the Product Messaging to fairly and accurately describe its products**

A use of a term is descriptive if "the words were used to describe the 'ingredients, quality or composition' of a product, not the source of the product." *Dessert Beauty,* 568 F. Supp. 2d at 425, *citing JA Apparel Corp. v. Abboud*, 591 F. Supp. 2d 306 (S.D.N.Y. 2008).

As the undisputed evidence demonstrates, Defendants and a myriad of third-party manufacturers and distributors in the food products industry use the terms "plant-based" and "great taste" (and combinations thereof) to describe food products that are derived from plants, such as Beyond Meat's plant-based products.

Specifically, Sonate cannot dispute that Beyond Meat's plant-based products including Defendants' collaborative Beyond Breakfast Sandwich are accurately described as "plant-based." Indeed, "plant-based" is a generic term utilized by retailers, food brands, and consumers for products made from vegetarian and vegan ingredients, including alternative meat and dairy products that is not associated with a single brand. In fact, Plaintiff repeatedly used the term "plant-based" in the First Amended Complaint to refer to an entire category of products: *e.g.*, "plant-based food options." Matt Shipon also conceded that Plant Based identifies a category of products: "I mean, plant-based products are everywhere now, so . . ." (SUF ¶ 63; Doc. 203-22).

As discussed above, the phrase "great taste" is a laudatory phrase that fails to act as a trademark.[4] Moreover, this phrase accurately describes the Defendants' products. (*See, e.g.*, (SUF ¶ 72; Doc. 203-43). (indicating that over 65% of consumers rated the Dunkin' Beyond Sausage Breakfast Sandwich as a 4 or 5 on a 5-point scale for flavor where 5 is the highest score, and only 11% of consumers rated the sandwich a 1 or 2 on the same scale)]. Further, use of the phrase "great

---

[4] *See Duopross Meditech Corp. v. Inviro Medical Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1759 (Fed. Cir. 2012) (finding SNAP SIMPLY SAFER merely descriptive; *In re Boston Beer Co. L.P.*, 198 F.3d 1370 (Fed. Cir. 1999) (finding THE BEST BEER IN AMERICA so highly laudatory and descriptive as applied to beer and ale that it is incapable of acquiring distinctiveness); *In re Dos Padres Inc.*, 49 USPQ2d 1860 (TTAB 1998) (QUESO QUESADILLA SUPREME merely descriptive of cheese).

taste" is ubiquitous within the food industry due to taste's paramount importance to consumers, and Mr. Matthew Shipon admitted that others in the industry use this term because of the positive association it conveys. (SUF ¶ 73; Docs. 203-22).

Finally, the dictionary definitions of these terms further confirm that Defendants' use of the terms identify product characteristics. Accordingly, the phrases "great taste" and "plant-based" are indisputably descriptive of Defendants' products. Nothing about the combination of "great taste" and "plant-based" changes this analysis. By adopting a mark including these descriptive and generic elements, Plaintiff knowingly took the risk that others could lawfully use it in a non-trademark manner. *See Cosmetically Sealed,* 125 F.3d at 30. This descriptive use is fair use, which serves as an absolute bar to Plaintiff's infringement claims.

### 3.    Defendants' Used "Great Taste Plant-Based" Fairly and in Good Faith

Finally, there is no evidence in the record that suggests, let alone shows, that the Defendants used the product messaging unfairly or in bad faith. First, Defendants had no actual notice of Plaintiff's mark until after they adopted the tagline; therefore, Plaintiff could not have selected the tagline to trade off Plaintiff's goodwill. Any subsequent awareness of Plaintiff's registration does not establish "bad faith."[5]

Second, the evidence shows that Plaintiff has no meaningful goodwill to trade on – of its four customers, none of Plaintiff's sales are customer facing, and Plaintiff spent less than $20, combined, over the past five years on marketing efforts. Accordingly, Plaintiff's mark is virtually unknown amongst Defendants' relevant consumers.

Third, "the display of defendant's own name or trademark in conjunction with the mark it allegedly infringes" is an indication of *good faith*. *EMI Catalogue,* 228 F.3d at 67. Here, it is clear that each of the Defendants prominently feature their own respective brand or logo on the packaging and point of sale solicitations. (SUF, Appendix A).

---

[5] Defendants' mere knowledge of Plaintiff's use does not establish bad faith under fair use analysis because use of the terms in their descriptive sense is still permitted. *Wonder Labs, Inc. v. Procter & Gamble Co*., 728 F. Supp. 1058, 14 U.S.P.Q.2d 1645, 1649 (S.D.N.Y. 1990).

For at least these reasons, no reasonable juror could conclude that any of the Defendants acted in bad faith or use the product messaging unfairly.

## IV.    SEVERAL OF PLAINTIFF'S DAMAGE THEORIES FAIL AS A MATTER OF LAW

Plaintiff's expert, Sidney Blum, offers five damage theories in his expert report: (1) unjust enrichment; (2) reasonable royalty damages; (3) corrective advertising damages; (4) lost profits; and (5) lost value. (SUF ¶ 74; Docs. 205-10, at 25). Although all of these theories lack meaningful support, Defendant is entitled to summary adjudication in its favor as to Plaintiff's second, third and fifth damage theories. *See Aktiebolaget Electrolux v. Armatron Int'l, Inc*., 999 F.2d 1, 5 (1st Cir. 1993) (affirming trial court's grant of summary judgment against trademark owner of damage claims sought against alleged infringer).

### A.    Plaintiff's Lost Value Claim is Baseless

To support Plaintiff's fifth damage theory, Mr. Blum opines that but-for the alleged infringement, Plaintiff would currently be valued at ███████ . The genesis of Plaintiff's ██████████ is the unsubstantiated opinion of non-expert witness, Erik Oberholzer, offered in connection with discussions he had with Plaintiff in connection with a possible joint venture that never materialized. (SUF ¶ 75; Docs. 206-11, at 35, 206-12, at 35-36). In connection with those discussions, which took place in 2021, well after Plaintiff was aware of the alleged infringement (SUF ¶ 76; Doc. 204-9, at 17-24),  Mr. Oberholzer indicated that he thought Plaintiff's business had the potential to grow into a ████████ company. (SUF ¶ 76; Doc. 206-11, at 35).



██████████████████████████████████████████████ (SUF ¶ 77; Doc. 205-1, at 16-17).

███████████████████████████████████████████████

Defendant is entitled to summary adjudication in its favor on this damage claim because the proffered valuation is wholly speculative and not supported by facts. *Barrette Outdoor Living, Inc. v. Integrity Composites*, 666 F. Supp. 3d. 18, 33 (D. Me. 2023), *quoting King v. King*, 507 A.2d 1057, 1059 (Me. 1986) (A party's estimate of damages "must not be uncertain or speculative but must be grounded on facts in evidence.").

**B.      Sonate is not Entitled to Royalty Damages.**

No court in the First Circuit has ever awarded a plaintiff in a trademark case reasonable royalty damages, especially in the absence of a prior licensing relationship between the parties. One of the reasons is because such an award cannot be established with the requisite "reasonable certainty." *See National Fire Prot. Ass'n. v. Int'l Code Council, Inc.,* 2006 U.S. Dist. LEXIS 14360, *92 (D. Mass. 2006). Here, it is undisputed that there is no licensing history between the parties. Nor is there any indication that the parties had previously discussed or demonstrated a willingness to license the mark at issue. As a result, Plaintiff is not entitled to recover under a theory of a reasonable royalty.

In a desperate attempt to conjure up a "license agreement," Plaintiff and Blum mistakenly rely on the unexecuted joint venture agreement, referenced above, with Mr. Oberholzer. (SUF ¶ 79; Doc. 206-13, at 2-21). Other than these discussions relating to a possible agreement, Plaintiff confirms that it never discussed the possibility of licensing the slogan at issue with any other company. (SUF ¶ 80; Docs. 204-9, at 26-27, 205-1, at 19). This was not a license negotiation between Vegadelphia and Defendants to use the slogan ████████████████████████████████ ███████████████████████████████████████████. (SUF ¶ 81; Doc. 206-11, at 36-37, Doc. 206-13). ████████████████████████ ███████████████████████████████████████████

(SUF ¶ 82; Doc. 206-11, at 36-37). In other words, if the right to use the slogan was completely

excised from the license, there would no resulting change to the royalty rate. If anything, this demonstrates not only that Plaintiff has never licensed the slogan, but that in the lone negotiation Plaintiff engaged in, the slogan was <u>not</u> part of the contemplated royalty rate.

**C.    <u>Sonate is not entitled to corrective advertising damages</u>**

Sonate seeks an award of prospective corrective advertising costs, which it contends are necessary to correct the harm done by Beyond Meat's alleged infringement. Sonate's expert opines that it is entitled to an award of ████████ (SUF ¶ 83; Doc. 205-10, at 25). Corrective advertising damages can only be awarded when they are necessary to repair damage to a plaintiff's business reputation. *Monahan Prods. LLC v. Sam's East, Inc.*, 463 F. Supp. 3d 128, 146 (D. Mass. 2020).

Given the inherent difficulties with these types of damages, courts in this district have awarded prospective corrective advertising damages[6] "only if it compensates the injured party for identifiable harm to its reputation." *First Act,* supra, 429 F. Supp. 2d at 438-9*; see also National Fire Prot. Ass'n. v. Int'l Code Council, Inc.,* 2006 U.S. Dist. LEXIS 14360, *29 (D. Mass. 2006). By Sonate's own admission, it spends next to nothing on marketing or advertising its brand. Moreover, during the time of the alleged infringement, and continuing at least until October of 2022, Plaintiff only sold its products to four customers, whose sales remained essentially the same, despite the alleged infringement. Moreover, Seth Shipon acknowledged that Plaintiff has no evidence of harm to its brand that would even require corrective advertising other than his awareness of the allegedly infringing usage by Defendants. (SUF ¶ 84; Doc. 204-9, at 25). Plaintiff's damage expert fails to offer any factual support for the notion that Plaintiff's brand or mark has actually been harmed as a result of Defendants' conduct. *See generally* Doc. 205-10, 206-12,  The inability to raise a triable issue of fact as to the existence of actual harm to Plaintiff's

---

[6] Plaintiff concedes that it has not undertaken any corrective advertising since it became aware of Defendant's alleged acts of infringement over five years ago. (Doc. 203-22).

BN 87650646v1

brand or slogan is fatal to its corrective advertising damage theory. *Monahan Prods, supra*, 463 F. Supp. 3d at 146.

**V.    <u>CONCLUSION</u>**

As one court succinctly summarized the principal aims of trademark law, it is "to encourage honest business competition and to recognize and reward commercial creativity, investment, diligence, initiative and good faith, weighed against certain interests of the public, when making purchasing choices, to be protected from confusion, mistake and deception." *BigStar Entm't, Inc. v. Next Big Star, Inc*., 105 F. Supp. 2d 185, 193 (S.D.N.Y. 2000). Sonate's lawsuit serves none of these purposes. This is a case with zero potential for real-world confusion, initiated long after use of the relevant terms has ceased, concerning an extraordinarily weak mark used descriptively, with no damages. This case has no merit and should be dismissed.

Respectfully Submitted,

Dated: March 12, 2025                BUCHALTER
                                     A Professional Corporation


By:  */s/Willmore F. Holbrow*
     WILLMORE F. HOLBROW III *(Pro Hac Vice)*
     BUCHALTER
     A Professional Corporation
     1000 Wilshire Boulevard, Suite 1500
     Los Angeles, CA  90017-1730
     Telephone: 213.891.0700
     Fax: 213.896.0400
     Email:  wholbrow@buchalter.com

     *Attorneys for Defendant Beyond Meat, Inc.*

20
