UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| SONATE CORPORATION D/B/A Vegadelphia FOODS,<br>       Plaintiff,<br><br>vs.<br><br>BEYOND MEAT, INC., a Delaware corporation,<br>       Defendant. | Civil Action No. 1:23-cv-10690 |

# DEFENDANT BEYOND MEAT, INC.'S OPPOSITION TO PLAINTIFF SONATE CORPORATION'S MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS AND TESTIMONY OF JOHN G. PLUMPE

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ..................................................................................................... 1

II.  *DAUBERT* STANDARD .......................................................................................... 3

III. MR. PLUMPE'S OPINIONS ON DEDUCTIONS OF BEYOND'S OPERATING COSTS SHOULD NOT BE PRECLUDED. ................................................................ 4

    A.   Mr. Plumpe's Opinions Are Based on the Proper Use of the Full Absorption Method of Allocating Costs. ............................................................. 4

    B.   Mr. Plumpe Appropriately Used a Sales Ratio Formula to Allocate Costs Based Upon a Pro Rata Share of Defendant's Sales. .............................. 7

    C.   The Criticisms Leveled by Plaintiff of Mr. Plumpe's Opinions Do Not Warrant an Exclusion of his Opinions Under Daubert. ......................................... 8

    D.   The Amount of Defendant's Sales to Dunkin Does Not Preclude Defendant From Deducting Costs. .......................................................................... 9

IV.  PLAINTIFF'S CRITICISM OF MR. PLUMPE'S OPINIONS ON DMDM ARE UNFOUNDED ........................................................................................................ 10

V.   CONCLUSION ....................................................................................................... 13

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs.*,
   752 F.3d 82 (1st Cir. 2014)...................................................................................3

*Canon U.S.A. Inc. v. F&E Trading LLC*,
   2023 U.S. Dist. LEXIS 131334 (E.D.N.Y. July 2023) .......................................4, 8

*Cesari S.R.L. v. Peju Province Winery L.P.*,
   693 F. Supp. 3d 375 (S.D.N.Y. Sept. 23, 2023) ..................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ................2, 3, 4, 8, 9, 10

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   642 F. Supp. 2d 276 (S.D.N.Y. April 28, 2009) ................................................9, 10

*Gillette Co. v. Wilkinson Sword, Inc.*,
   1992 U.S. Dist. LEXIS 1265 (S.D.N.Y. Feb. 1992) ............................................7

*Kars 4 Kids Inc. v. Am Can!*,
   2020 U.S. Dist. LEXIS 56857 (D.N.J. April 1, 2020) ........................................4

*Levin v. Dalva Bros.*,
   459 F.3d 68 (1st Cir. 2006) ................................................................................12

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. June 15, 2007) .................................................8, 9

*Maker's Mark Distillery, PBC v. Spalding Grp., Inc.*,
   20245 U.S. Dist. LEXIS 38185 (W.D. Ken. March 2024)..................................8, 12

*Maltina Corp., v. Cawy Bottling Co.*,
   613 F.2d 582 (6th Cir. 1980)...............................................................................9

*Milward v. Acuity Specialty Prods. Grp.*,
   639 F.3d 11 (1st Cir. 2011)..................................................................................4

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ...............................................................................3

*Multiple Energy Techs, LLC v. Under Armour, Inc.*,
   2025 U.S. Dist. LEXIS 5858 .........................................................................4, 5, 8

BN 87837686v3

*Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*,
    405 F.3d 36 (1st Cir. 2005) ..................................................................................... 12

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*,
    161 F.3d 77 (1st Cir. 1998) ........................................................................................ 4

*Samaan v. St. Joseph Hosp.*,
    670 F.3d 21 (1st Cir. 2012) ........................................................................................ 3

*U.S. v. Chang*,
    207 F.3d 1169 (9th Cir. 2000) .................................................................................. 12

*United States v. Diaz*,
    300 F.3d 66 (1st Cir. 2002) ........................................................................................ 3

*United States v. Sampson*,
    No. 01-10384-LTS, 2016 U.S. Dist. LEXIS 200660, 2016 WL 11726919 (D.
    Mass. Jun. 17, 2016) .................................................................................................. 3

*Winterland Concessions Co. v. Fenton*,
    835 F. Supp. 529 (N.D. Cal. Oct. 19, 1993) ........................................................... 5, 7

*Zuzula v. ABB Power*,
    267 F. Supp. 2d 703 (E.D. Mich. 2003) ................................................................... 12

**Federal Statutes**

Fed. R. Evid. 702 .............................................................................................................. 3

Fed. R. Evid. 703 .............................................................................................................. 3

**Other Authorities**

4 McCarthy on Trademark § 30.66 (5th ed.) ................................................................... 1

4 McCarthy on Trademark § 30.68 (5th ed.) ................................................................... 4

James R. Hitchner, *Financial Valuation Applications and Models,* Fourth Edition,
    John Wiley & Sons, New Jersey, 2017, page 303 ................................................... 11

Defendant Beyond Meat, Inc. ("Defendant") opposes the motion by Plaintiff Sonate Corporation d/b/a Vegadelphia ("Plaintiff") to exclude certain expert opinions and testimony of Defendant's financial expert witness John G. Plumpe (the "Motion").

## I.   **INTRODUCTION**

At its root, the primary focus of Plaintiff's Motion to exclude a portion of the opinions and expert report of Defendant's Expert John Plumpe comes down to a dispute over the costs that can be deducted from Defendant's sales (also referred to as revenues) to determine its profits. As Plaintiff correctly notes, ordinarily --- and as required by law in the Lanham Act --- Defendant bears the burden of identifying and quantifying the costs which serve to reduce its revenues to its profits (which Plaintiff seeks to disgorge in this case).[1] Defendant (and Mr. Plumpe) have identified and quantified multiple categories of costs related to the production, marketing, sales, development and distribution of the products that may have been offered in connection with the messaging at issue in this case. In its Motion, Plaintiff does not take issue with the vast majority of the deductions claimed by Defendant, including deductions for costs of goods sold, sample and trade discounts, freight and marketing expenses. Rather, Plaintiff's Motion is focused on a single category of deductions, referred to as "Other Operating Expenses," pursuant to which Defendant seeks to deduct costs association with innovation, commercialization process engineering, other selling expenses and general and administrative expenses.[2] As set forth in the deposition testimony of Paul Sheppard, Defendant's Vice

---

[1] However, even when a defendant fails to offer evidence of costs, and to avoid a windfall to a mark owner, the court can make its own estimate of costs in connection with awarding damages to the mark owner. See 4 McCarthy on Trademark § 30.66 (5th ed.).

[2] As noted in the Motion, there are two separate disgorgement claims sought by Plaintiff in this action, the first relating to a disgorgement of Defendant's revenue related to the sales of the subject breakfast sausage to Dunkin', and the second being a disgorgement of Defendant's company-wide revenue for the entirety of 2019 and 2020 for all sales other than the Dunkin' sales. Plaintiff's

1

President of Financial Planning & Analysis and Investor Relations, these cost items all contributed to the production, sale and distribution of the product at issue and are therefore properly deductible expenses.

Irrespective of the foregoing, the merit of Defendant's claimed deductions should not be decided at this juncture. Criticisms as to an expert's use of one deduction model over another do not render the expert's opinions inadmissible, but rather go only to the weight ascribed to the opinions and are properly addressed at trial via cross-examination. Similarly, disputes over whether a defendant has sufficiently established that claimed deductions have a sufficient nexus to the claimed acts of infringement are questions of fact reserved for the trier of fact at trial, and are not suitable for adjudication in connection with a *Daubert* motion.

Plaintiff's second set of criticisms, relating to Mr. Plumpe's qualifications with the Direct Market Data Method ("DMDM") valuation technique, are similarly misplaced. As set forth in his report (Tab 1 and par. 4-7), for over 25 years Mr. Plumpe has valued businesses in connection with his work --- including testifying regarding business valuation --- often using a Market Approach (which is the cornerstone of the DMDM approach). Just because Mr. Plumpe does not recall referring to such valuation models by the same name or acronym as the one used by Plaintiff's expert does not render Mr. Plumpe unqualified or his opinions inadmissible. Surely Plaintiff can address Mr. Plumpe's experience with the valuation of businesses at trial during cross examination, and such critiques should not serve as a basis for exclusion at this stage. Mr.

---

Motion seeks to exclude the deduction of the "Other Operating Expenses" category of expenses from the Dunkin' only disgorgement claim and does not seek a similar exclusion related to Defendant's company-wide disgorgement claim, an implicit admission that such expenses are necessary for the production, marketing, sales, development and distribution of the product at issue – or at the very least relevant to the trier of facts determination at of these issue at trial. See Motion, pg. 12, lines 12-15.

2

Plumpe is more than qualified and has significant experience valuing businesses, including using market data, which Plaintiff may explore at trial.

For these reasons, Plaintiff's Motion to exclude portions of Mr. Plumpe's expert report and opinions should be denied.

## II. *DAUBERT* STANDARD

The admissibility of expert testimony is governed by Fed. R. Evid. 702 and 703, which codify the standard articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002). Under Rule 702, the Court "determine[s] at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert, supra,* 509 U.S. at 592-93. The Court must ensure that an expert's proffered testimony "both rests on a reliable foundation and is relevant to the task at hand." *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012) (quoting *Daubert*, 509 U.S. at 597).

While the party proffering the expert testimony has the burden to prove, by a preponderance of the evidence, that the expert reached their conclusions in a scientifically sound and methodologically reliable way, they need not show that the expert's conclusions are correct. *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs.*, 752 F.3d 82, 96 (1st Cir. 2014) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The trial court thus makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *United States v. Sampson*, No. 01-10384-LTS, 2016 U.S. Dist. LEXIS 200660, 2016 WL 11726919, at *4 (D. Mass. Jun. 17, 2016) (quoting *Daubert*, 509 U.S.

3

at 592-93). This follows because "*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998). "So long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversarial process." *Milward v. Acuity Specialty Prods. Grp.*, 639 F.3d 11, 15 (1st Cir. 2011) (quoting *Daubert*, 509 U.S. at 590). As Mr. Plumpe applied scientifically sound methodologies to the proper facts, Plaintiff's Motion must be denied.

### III. MR. PLUMPE'S OPINIONS ON DEDUCTIONS OF BEYOND'S OPERATING COSTS SHOULD NOT BE PRECLUDED.

#### A. Mr. Plumpe's Opinions Are Based on the Proper Use of the Full Absorption Method of Allocating Costs.

There are at least two principle methods used to deduct costs from revenue in connection with a trademark damage analysis, the incremental approach, and the full absorption approach. *Canon U.S.A. Inc. v. F&E Trading LLC*, 2023 U.S. Dist. LEXIS 131334, *30 (E.D.N.Y. July 2023); See 4 McCarthy on Trademark § 30.68 (5th ed.). Under the full absorption model, any costs that "assist in the production, distribution or sale of the products at issue, irrespective of whether or not such costs are considered fixed or variable" are properly deducted from a defendant's revenue. *Multiple Energy Techs, LLC v. Under Armour, Inc.,* 2025 U.S. Dist. LEXIS 5858, * 12. Under the incremental model, only direct costs of production are deducted. *Kars 4 Kids Inc. v. Am Can!*, 2020 U.S. Dist. LEXIS 56857, *18 (D.N.J. April 1, 2020) (reversed and remanded on other grounds). The assertion in footnote 1 of the Motion that Mr. Plumpe that

4

appropriate deductions is "only" on specific costs related to the production of the product at issue is also wrong. Mr. Plumpe's report addresses three alternative approaches, not two as the Motion contends. Plumpe Report, Doc. No. 222-1 at 40-41.

The full absorption method has been endorsed by courts in the Second, Third, and Ninth circuits. See *Cesari S.R.L. v. Peju Province Winery L.P.*, 693 F.Supp. 3d 375, 388 (S.D.N.Y. Sept. 23, 2023) (The Circuits vary on what costs can be deducted, but this Circuit applies the 'full absorption' approach. This approach permits the deduction of direct costs to produce the infringing goods, as well as certain fixed costs, like overhead." (Citation omitted);" *Multiple Energy, supra,* 2025 U.S. Dist. LEXIS 5858at *12-13; *Winterland Concessions Co. v. Fenton*, 835 F.Supp. 529, 533 (N.D. Cal. Oct. 19, 1993).  The use of the full absorption model to deduct fixed costs is appropriate where the defendant establishes that the item of costs contributed to the allegedly infringing product. *Winterland Concessions, supra,* 835 F. Supp. at 533.

In his expert report, Plaintiff's expert (Sidney P. Blum) employs the incremental model and based thereon deducts only Defendant's costs of goods sold and trade discounts from Defendant's gross revenues, ignoring other costs. Blum Report, ¶ 114. Doc. No. 197-6 at 39.[3] In his rebuttal report, Mr. Plumpe disagrees with the use of the incremental approach and opines, based on his vast (and unchallenged) experience serving as an expert witness in connection with monetary relief calculations in trademark infringement litigation, that the facts of this case merit use of the full absorption method of calculating costs. See Plumpe Report, ¶¶ 88, 99-110, Doc. No. 222-1 at 45, 49-53. Using the full absorption model, and in rebuttal to Mr. Blum's opinions, Mr. Plumpe reduced Defendant's revenues by its costs of goods sold, freight, variable selling

---

[3] Interestingly, while Mr. Blum does not deduct Defendant's variable selling expenses and marketing expenses in his analysis, Plaintiff takes no issue with Mr. Plumpe's deduction of these costs in the Motion.

5

expenses and variable marketing costs, all of which Plaintiff takes no issue with in its Motion. *Id.* at ¶¶ 74-87, Doc. No. 222-1 at 39-45. In addition, Mr. Plumpe made a further deduction of those portions of Defendant's Other Operating Expenses that contributed to the production, sale or distribution of the subject breakfast sausage patties. *Id.* at ¶¶ 88, 109-110, Doc. No. 222-1 at 45, 52-53. After making the appropriate deduction for these costs using the full absorption model, Mr. Plumpe opined that Defendant's operating "profits" with respect to its sales to Dunkin was ▇▇▇▇▇▇▇▇.[4] *Id.* at ¶ 88, Doc. No. 222-1 at 45.

With respect to the Other Operating Expenses that are the subject of Plaintiff's Motion, Mr. Plumpe undertook an analysis to determine what portion of Defendant's Other Operating Expenses contributed to the sale of the product. *Id.* at ¶¶ 88, 109-110, Doc. No. 222-1 at 45, 52-53.[5] Based on his analysis and experience, Mr. Plumpe determined that with the exception of Defendant's Restructuring Expense,[6] Defendant's Other Operating Expenses contributed to the sale, production and distribution of the product at issue and therefore those costs were properly deducted from Defendant's gross profits to determine Defendant's operating profits. *Id.,* Doc. No. 222-1 at 45, 52-53. In reaching his conclusions, Mr. Plumpe relied upon Defendant's financial records, the sworn deposition testimony of Defendant's Vice President of Financial Planning & Analysis and Investor Relations (Paul Sheppard) and separate conversations with Mr. Sheppard. *Id.,* Doc. No. 222-1 at 45, 52-53. In the deposition testimony relied upon by Mr.

---

[4] This finding is also consistent with Defendant's public SEC filings.

[5] These paragraphs detail why portions of Defendant's Other Operating Expenses were necessary in order to generate the sales of the product at issue both to Dunkin and Defendant's other customers.

[6] "Restructuring Expense" is a category of expenses included within the Other Operating Expenses bucket, but based on Mr. Sheppard's statement that those costs would have had nothing to do with Defendant's sales to Dunkin, Mr. Plumpe excluded these costs from deduction in his analysis. See Tab 3c to Plumpe Report. Doc. No. 222-1 at 152.

6

Plumpe, Mr. Sheppard testified at length regarding the components of the Other Operating Expenses and how each relates to the development, production, sale and distribution of the subject sausage patties sold to Dunkin. Specially, Mr. Sheppard testified that Other Operating Expenses included some advertising costs, research and development, scale up costs, general selling and administrative expenses and non-manufacturing lease expenses. See Sheppard Depo. Transcript , Doc. No. 222-2 at 9-27; Doc. No. 222-3 and 222-4. In other words, these expenses are for necessary activities, without which Defendants would not have been able to sell the products.

      B.      <u>Mr. Plumpe Appropriately Used a Sales Ratio Formula to Allocate Costs Based Upon a Pro Rata Share of Defendant's Sales.</u>

In addition to criticizing Mr. Plumpe's use of the full absorption model of cost deductions, Plaintiff's Motion also takes issue with Mr. Plumpe's use of a sales ratio formula to calculate that portion of Defendant's Other Operating Expenses to deduct from the revenue resulting from the sales to Dunkin.[7] Plaintiff's criticism is misplaced. The use of a sales ratio formula is an acceptable method of allocating costs so long as there is evidence that the fixed costs contributed to the product alleged to infringe. *Id*., Doc. No. 222-2 at 9-12; *Winterland Concessions, supra,* 835 F.Supp. at 533; *Gillette Co. v. Wilkinson Sword, Inc*., 1992 U.S. Dist. LEXIS 1265, *25 (S.D.N.Y. Feb. 1992 (allocation of marketing expenses based on a percentage of sales)). Not surprisingly, even Plaintiff's own damages expert acknowledged that the use of a sales-ratio formula is appropriate and he has used it on several occasions. See Blum Depo.

---

[7] In determining what portion of Defendant's Other Operating Expenses to deduct from Defendant's revenue, Mr. Plumpe determined the percentage of Defendant's total revenues which the Dunkin' sales represent, and applied that percentage to the total Other Operating Expenses to determine the appropriate deduction.

Transcript, Doc. No. 222-5 at 7-8. In any event, questions regarding Mr. Plumpe's use of the sales ratio formula to deduct Defendant's costs can be addressed by Plaintiff in its cross-examination of Mr. Plumpe at trial and do not warrant an exclusion of his testimony at this stage. *Canon U.S.A., supra,* 2023 U.S. Dist. LEXIS 131334, * 33 (Expert's use of pro rata allocation of costs based on gross sales insufficient to warrant exclusion under *Daubert*).

      C.      <u>The Criticisms Leveled by Plaintiff of Mr. Plumpe's Opinions Do Not Warrant an Exclusion of his Opinions Under *Daubert*.</u>

Mr. Plumpe's use of the full absorption model in calculating deductible costs, and Plaintiff's objections to Mr. Plumpe's use of that model, do not warrant the exclusion of his opinions and testimony under *Daubert*. Such a determination is a question for the trier of fact to determine at trial, and is therefore not appropriate for adjudication on a *Daubert* motion. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp. 2d 558, 655 (S.D.N.Y. June 15, 2007) ("The dispute over whether the 'incremental approach' or the 'full absorption' method should be used to determine costs is not a question of the reliability of expert methodology"); *Canon U.S.A., supra,* 2023 U.S. Dist. LEXIS 131334, *27-35 (Cross *Daubert* motions challenged opposing experts use of incremental and full absorption methods denied, finding that such challenges can be address at trial through cross-examination); *Maker's Mark Distillery, PBC v. Spalding Grp., Inc*., 20245 U.S. Dist. LEXIS 38185, *21-22 (W.D. Ken. March 2024) (Expert testimony not excluded based on use of incremental approach, finding that any objection to the approach employed by expert can be addressed through cross-examination); *Multiple Energy, supra,* 2025 U.S. Dist. LEXIS 5858 at *14-15 (denying *Daubert* motion and holding that criticism as to the methodology used by expert to deduct costs go to the weight of the testimony, not its admissibility and are more appropriately addressed through cross-examination).

8

Plaintiff's contention that Defendant has failed to meet its burden of proof with respect to any claimed category of deduction, or whether any claimed deduction had a sufficient nexus to the production, distribution or sale of the product at issue, is premature. The determination of what expenses are appropriate for deduction is a question for the trier of fact to resolve at trial, and not at the *Daubert* phase.[8] Said another way, the time for Defendant to meet its burden with respect to establishing the right to deduct certain costs is at trial, not at the *Daubert* stage. *Louis Vuitton, supra,* 525 F.Supp. 2d at 655 (With respect to a defendant's burden to connect expenses to the allegedly infringing sales, defendant must meet its burden at trial, "not in a motion in limine challenging an expert's methodology.").

### D. The Amount of Defendant's Sales to Dunkin Does Not Preclude Defendant From Deducting Costs.

Plaintiff argues in its Motion that because Defendant's sales to Dunkin amounted to a small percentage if its company-wide sales, Defendant is precluded as a matter of law from deducting its Other Operating Expenses from its gross profits. In support of this proposition, Plaintiff principally relies on *Maltina Corp., v. Cawy Bottling Co.*, 613 F.2d 582 (6th Cir. 1980). Aside from not being binding on this Court, the *Maltina* opinion has been widely criticized. In rejecting the position Plaintiff now advocates, the District Court for the Southern District of New York found, "The problem with [plaintiff's] theory is that the cited ruling in Maltina is not based on any articulated and persuasive reasoning, has not been adopted in this (or any other) circuit, has been explicitly rejected by the Ninth Circuit and has been at least implicitly rejected (or disregarded) by the Second Circuit."). *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse*

---

[8] In this case Plaintiff's damage claims will be tried to the Court, not to a jury, and therefore the Court will be in a far better position to determine the merit of any claimed deduction, or any challenge thereto, at trial on a full record.

9

*Corp.*, 642 F.Supp. 2d 276, 287-8 (S.D.N.Y. April 28, 2009).[9] In rejecting plaintiff's proposed *per se* rule of precluding the deduction of costs when the allegedly infringing sales represented only a small portion of defendant's sales, the *Fendi* court essentially re-affirmed the use of the full absorption model which permits the deduction of costs so long as the defendant can establish a nexus between the costs and the allegedly infringing activity. *Id.* at 288-9. Here, as discussed above, the nexus has been established rendering the full absorption model applicable. Regardless, this is an issue for the trier of fact to assess and make a determination about at trial, not in connection with a *Daubert* motion.

## IV. PLAINTIFF'S CRITICISM OF MR. PLUMPE'S OPINIONS ON DMDM ARE UNFOUNDED

Plaintiff's Motion also seeks to exclude those portions of Mr. Plumpe's report and opinions wherein he criticizes Plaintiff's expert use of the Direct Market Data Method, as a valuation technique. See Motion, pg. 17. Plaintiff incorrectly contends that Mr. Plumpe has no experience with the Direct Market Data Method approach to valuation and therefore is not qualified to critique Mr. Blum's use of this technique. *Id.* at 17-19.

Plaintiff's argument is non-sensical, and borders on absurd. Plaintiff does not contend that Mr. Plumpe is not a qualified expert, nor that he has the requisite training, knowledge and expertise to offer opinions on the valuation of companies. Rather, Plaintiff makes the very narrow argument that because Plaintiff incorrectly believes that Mr. Plumpe has not offered opinions before using the very specific name of the technique that Mr. Blum adopted, Mr. Plumpe is unable to offer his rebuttal opinions to Mr. Blum.

---

[9] Interestingly, in its Motion, Plaintiff actually relies on *Fendi Adele, supra*, for the proposition that a defendant can deduct costs "implicated by the production of the infringing product." See Motion, pg. 6, lns. 17-20.

10

Mr. Plumpe has offered expert opinions in the area of intellectual property litigation, valuation, and damage calculations hundreds of times, including sworn testimony more than 35 times in the past four years alone. See Plumpe Report, Appendix, Tab 1, Doc. No. 222-1 at 128-136. A great many of his engagements have involved valuations undertaken by Mr. Plumpe where market data (such as data used in the DMDM approach) was used and considered by Mr. Plumpe in connection with his analysis and opinions. Plumpe Depo. Transcript, Doc. 222-6 at 13-15. As a result, Mr. Plumpe is more than qualified to offer opinions and critiques of Mr. Blum's reliance on the DMDM for valuation. As set forth in this Report, Mr. Plumpe considered the DMDM technique, and noted that Mr. Blum had violated many of the significant warnings regarding use of DMDM that were given in the literature that Mr. Blum relied upon for his application of the technique: James R. Hitchner, *Financial Valuation Applications and Models,* Fourth Edition, John Wiley & Sons, New Jersey, 2017, page 303. Based on Mr. Plumpe's expertise and experience, he found the DMDM approach to be an inappropriate metric for use in this case. Plumpe Report, ¶ 268-273, Doc. 222-1 at 119-124.

Tellingly, Plaintiff does not contend that Mr. Plumpe is not qualified to offer any of his other opinions, or even that he is unqualified to offer opinions on business valuations generally. Rather, Plaintiff narrows the focus to the specific valuation technique employed by Mr. Blum and argues that because Mr. Plumpe has not used "as an initial method" the specific techniques employed by Mr. Blum under the specific abbreviation Mr. Blum used, Mr. Plumpe cannot offer his opinions here. Plumpe Depo. Transcript, Doc. No. 222-6 at 14-15. First of all, this is misleading because Mr. Plumpe testified that he considered the DMDM technique employed by Mr. Blum but decided to not use it, due to its numerous flaws. Plumpe Depo. Transcript., Doc. 222-6 at 12-14. Moreover, Mr. Plumpe testified at his deposition (as confirmed in his Report),

11

that he has used a market based approach, analyzing direct market transaction data and employing the DMDM methodology, in connection with the valuation of companies and businesses, on numerous occasions. Plumpe Depo. Transcript, Doc. No. 222-6 at 7-15. Regardless, Plaintiff remains free to further explore Mr. Plumpe's related experience during cross-examination.

There is no authority that determines an expert's competency through such a narrow focus, and Plaintiff certainly doesn't cite to any. The authority actually supports the opposite position, and holds that an expert's competency is evaluated more broadly. *Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*, 405 F.3d 36, 40 (1st Cir. 2005) (The law requires experts to have a "meaningful threshold of expertise."); *Maker's Mark, supra,*, 2024 U.S. Dist. LEXIS 38185 at *21-22 , quoting *Zuzula v. ABB Power*, 267 F.Supp. 2d 703, 713 (E.D. Mich. 2003) ("[t]he court' investigation of qualifications should not be onerous or inordinately exacting, but rather must look to underlying competence, not labels").

The authorities cited by Plaintiff on this point are distinguishable and do not support Plaintiff's position. In *Levin v. Dalva Bros.,* 459 F.3d 68 (1st Cir. 2006), the court did not permit an appraisal expert to offer opinions about the historical age of an antique clock when he admitted having no experience in determining the era from which a specific item originated. Similarly, in *U.S. v. Chang*, the court refused to allow an expert in international finance to offer expert opinions as to whether a particular document was genuine or counterfeit. *U.S. v. Chang*, 207 F.3d 1169, 1172-3 (9th Cir. 2000).

Here, Mr. Plumpe has offered expert testimony in intellectual property and/or valuation cases on over 60 occasions. He has never been found unqualified by a court to render his opinions. Plumpe Depo. Transcript, Doc. No. 222-6 at 15-16. As a result, there is no basis for

12

excluding Mr. Plumpe's opinions related to his criticism of Mr. Blum's use of the Direct Market Data Method. Plaintiff's proffered critique of Mr. Plumpe's experience does not affect the admissibility of Mr. Plumpe's testimony and any questions regarding the weight to afford his opinions based on his expertise can be addressed by Plaintiff at trial through cross-examination.

## V. CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that Plaintiff Motion to exclude certain portions of the expert report and opinions of John Plumpe be denied.

Respectfully Submitted,

Dated: March 25, 2025

BUCHALTER
A Professional Corporation

By: */s/Willmore F. Holbrow*
WILLMORE F. HOLBROW III *(Pro Hac Vice)*
BUCHALTER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400
Email:  wholbrow@buchalter.com

*Attorneys for Defendant Beyond Meat, Inc.*