UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SONATE CORPORATION, d/b/a VEGADELPHIA FOODS, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:23-cv-10690-IT |
| BEYOND MEAT, INC., a Delaware Corporation, | * * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

May 23, 2025

TALWANI, D.J.

Before the court is Defendant Beyond Meat, Inc.'s ("Beyond") Motion to Compel [Doc. No. 171] the production of pilot surveys conducted by an expert retained by Plaintiff Sonate Corporation, d/b/a Vegadelphia Foods ("Vegadelphia").

Vegadelphia contends in this action that Beyond, together with its partner Dunkin', adopted slogans infringing on Vegadelphia's registered trademark. Vegadelphia disclosed an Expert Report by Dr. Thomas Maronick, who stated that Vegadelphia had retained him "to design and conduct an online survey" assessing consumers' likelihood of confusion as to those slogans. Report of Thomas Maronick ("Maronick Rep.") at 1 [Doc. No. 172-3], attached as Ex. B to Decl. of Willmore F. Holbrow ISO Mot. to Compel ("Holbrow Decl.") [Doc. 172]. During his deposition, Dr. Maronick revealed that he had carried out two "pilot surveys." Maronick Dep.

Tr. 19:11–14 [Doc. No. 172-2], attached as Ex. A to Holbrow Decl. [Doc. No. 172].[1] Dr. Maronick testified that he discarded the first pilot survey, which consisted of video promotional materials, because "the[re] were just technological problems getting [the videos] mounted. So it wasn't working." Id. at 19:17–20:18. He explained that he then modified the survey to use parallel static images, one with a Beyond slogan outside a Dunkin' store and another with a Dunkin'/Beyond slogan on a floor with a meat display case behind it. Id. at 21:3–12.[2] He found that the image with a Beyond slogan outside a Dunkin' store produced "results that . . . didn't make any sense" because the presence of the Dunkin' brand in the images "was serving as a confounding variable, that people weren't really focusing in on the issue that [Dr. Maronick] was asked to address." Id. at 21:12–24. Ultimately, Dr. Maronick settled on a survey design using the meat display floor image. Id. at 22:3–6, 42:22–25. That final version of the survey was expanded to a full set of respondents and disclosed in his expert report. See Maronick Rep. at 1 [Doc. No. 172-3]. His expert report references only this likelihood-of-confusion survey and not the pilot surveys.

Beyond now moves to compel production of the pilot surveys and their results. For the reasons explained below, the Motion to Compel [Doc. No. 171] is GRANTED.

---

[1] Dr. Maronick explained that in a "pilot survey," one "conduct[s] the survey with a small sample . . . basically checking to make sure from a methodological perspective whether the algorithms . . . built into the survey are working and determine[s] whether, in fact, it's doing what [the person conducting the survey] want[s] it to do in terms of . . . gathering information you want." Id. at 18:17–23.

[2] Beyond refers to "three test surveys" throughout its memorandum, see Def.'s Mem. ISO Mot. to Compel at 1, 2, 4, 11 [Doc. No. 172], but Dr. Maronick clarified that he conducted two pilot surveys, and the second survey had two "parts" or "cells[,]" see Maronick Dep. Tr. 26:5–16 [Doc. No. 172-2].

I.    Discussion

    A.    **Expert Disclosures and Work Product Protection Under Federal Rule of Civil Procedure 26**

Federal Rule of Civil Procedure ("Rule") 26(a)(2)(B) requires parties to disclose witnesses they may use to present expert testimony, and for each such witness, to provide a written report containing, <u>inter alia</u>, the opinions the witness will express and the basis or reason for them. At the same time, the work product doctrine exempts from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial" (with certain exceptions[3]) and protects "the mental impressions, conclusions, opinions, or legal theories of a party's attorney[.]" Fed. R. Civ. P. 26(b)(3)(A), (B).

The tension between these two provisions was addressed by the 2010 amendments to the Rules. The parties have identified no First Circuit authority on point, but courts in other jurisdictions reviewing the history of the 2010 amendments found that they "reflect a recognition that it is not uncommon for an expert retained to testify in a matter to have counsel or another consulting firm assist with the initial preparation and analysis that goes into an expert report and for counsel to discuss alternative theories and approaches with the expert before the expert formulates her final opinion." <u>In re Elysium Health-ChromaDex Litig.</u>, 2021 WL 1249223, at *2 (S.D.N.Y. Apr. 5, 2021). The 2010 amendments were designed to correct the "undesirable effects" of prior language that led courts to interpret the Rule as authorizing discovery "of all communications between counsel and expert witnesses and all draft reports." <u>Deangelis v. Corzine</u>, 2016 WL 93862, at *2 (S.D.N.Y. Jan. 7, 2016) (quoting and discussing at length 2010

---

[3] One exception allows the work product protection to be overcome by a showing of substantial need and undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii).

3

Advisory Committee Notes).

The 2010 amendments made this correction with two sets of changes that are relevant here. First, they added Fed. R. Civ. P. 26(b)(4)(B) and (C), which made clear that the work product doctrine extends to certain expert material. Rule 26(b)(4)(B) provides that "Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded" while Rule 26(b)(4)(C) make clear that communications between a party's attorney and expert witnesses are protected. "[D]rafts of any report or disclosure required under Rule 26(a)(2)" are protected "because . . . the drafting process ordinarily entails communications between the expert and counsel and usually involves feedback from counsel, a process which is likely to include revelation of attorney work product." Wenk v. O'Reilly, 2014 WL 1121920, at *4 (S.D. Ohio Mar. 20, 2014). In other words, Rule 26's protection of "drafts" is designed to protect attorney work product. See In re Application of Republic of Ecuador v. Douglas, 153 F. Supp. 3d 484, 491 (D. Mass. 2015) ("The rationale for protecting attorneys [through the work-product doctrine] does not extend to testifying expert witnesses, who play a fundamentally different role in litigation.").

Second, the requirement for the written report in Rule 26(a)(2)(B) "[was] amended to provide that disclosure include all 'facts or data considered by the witness in forming' the opinions to be offered, rather than the 'data or other information' disclosure prescribed [previously]." Advisory Comm. Notes, Subd. (a)(2)(b) (2010). The Advisory Committee Notes explain the reason for that change:

> The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those

4

<u>relied upon by the expert</u>.

Id. (emphasis added).

The Advisory Committee Notes further clarified that "Rules 26(b)(4)(B) and (C) do not impede discovery about[,] . . . [f]or example, the expert's testing of material involved in litigation, and notes of any such testing, . . . alternative analyses, testing methods, or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the opinions expressed." Fed. R. Civ. P. 26 Advisory Comm. Notes, Subd. (b)(4) (2010).

**B.    Required Disclosure of the Pilot Surveys in Dr. Maronick's Expert Report**

With that framework, the court considers first whether the pilot surveys and their results were "facts or data considered" by Dr. Maronick in forming his opinion that should have been included in his expert report under Rule 26(a)(2)(B)(ii).

Vegadelphia argues that the pilot surveys could not have been considered by Dr. Maronick because they were discontinued, and he "formulated his likelihood of confusion opinion solely on the basis of the final, full survey[.]" Pl.'s Opp. at 12 [Doc. No. 174]. But the abandonment of an initial survey does not preclude it from being considered by an expert for purposes of Rule 26. "A party must provide all materials that an expert creates, reviews, reads, or uses in connection with formulating an opinion, even if the expert does not utilize information from the materials." <u>Clark v. Edison</u>, 2010 WL 3245428, at *3 (D. Mass. Aug. 16, 2010) (citation omitted). Disclosure is not limited to materials "relied upon by the expert[,]" Fed. R. Civ. P. 26 Advisory Comm. Notes, Subd. (a)(2)(b) (2010); nor is it limited by information reviewed and then selectively omitted, see <u>Cima Labs, Inc. v. KV Pharm. Co.</u>, 2004 WL 5708291, at *3 (D. Minn. Nov. 22, 2004) (reiterating prior order that "Plaintiffs did not have the luxury of picking and choosing which tests of materials from Defendants' plant . . . would be revealed" in expert discovery).

5

Robocast, Inc. v. Apple, Inc. is instructive. There, the District of Delaware found it "difficult if not impossible to believe that an expert whose opinions are predicated upon the creation of a statistically-meaningful effort could have, in the statistical sense, completely ignored the data that had been previously collected by him[,]" even where the data from prior surveys had been deleted and the expert attested that he could no longer remember them at the time he drafted his reports. 2013 WL 12155813 at *1–2 (D. Del. Sept. 18, 2013), report and recommendation adopted, 2013 WL 12156411 (D. Del. Oct. 17, 2013). When an initial survey is fine-tuned by adjustments, "although the statistician may eventually ignore or forget what happened with the initial survey, he has by definition relied upon the first survey to formulate the subsequent survey; the former is effectively a stepping stone. . . . That is, the expert is as informed by what answers the questions provoke as by any perception that sample size may be insufficient or that the questions themselves must be altered in some respect." Id. at *2.

Dr. Maronick designed the final survey by moving from a video to still images and modifying stimuli to avoid the deficiencies he encountered in the pilot surveys. He remembered the pilot surveys and his modifications when testifying about them at his deposition. The court finds that he did consider those pilot surveys and their results in formulating his final survey. Accordingly, the court finds the pilot surveys and their results are "facts or data considered" by Dr. Maronick that should have been disclosed in his expert report.

### C. Work Product Protection

Vegadelphia cites two cases holding pilot surveys were protected "drafts" under Rule 26, but those decisions are not helpful in resolving the issue here. In SiteLock, LLC v. GoDaddy.com, on review of objections to a magistrate judge's ruling on a discovery motion, the district judge was "not left with a definite and firm conviction that the magistrate judge erred" in

6

making the "factual finding that the requested documents constitute a 'draft survey[.]'" 2022 WL 16577869, at *1, 2 (N.D. Tex. Oct. 31, 2022), aff'd, 2023 WL 4015117 (5th Cir. 2023). In reaching this conclusion, the district judge noted that whatever the 2010 amendments' "purpose may be, Rule 26(b)(4)(B)'s text does not confine itself to drafts containing identifiable attorney edits—it provides blanket protection of drafts." Id. at *2. But other than identifying the text in Rule 26(a)(2)(b) as providing for disclosure of "facts or data considered" by the witness in forming the opinions to be offered, the court did not consider that text at all in resolving the dispute. Id.

In Nike, Inc. v. By Kiy LLC, the court collapsed its analysis of two separate issues: whether the pilot surveys there were "facts or data considered" by the expert and whether the pilot surveys were "drafts" protected by the work product doctrine. 2023 WL 8520486, at *3 (S.D.N.Y. Dec. 8, 2023). Based on the expert report (which mentioned the pilot surveys) and the expert's testimony, the court made the principal finding that the expert did not rely on the pilot surveys to form her opinion. Id. The court then described the pilot survey documents as "the type of 'draft report[ ] or disclosure [ ]'" protected by Rule 26(b)(4)(B), quoting Elysium Health for that court's denial of a "request to compel disclosure of expert's 'draft and unreported calculations that he prepared in the drafting process[.]'" Id. Importantly, however, that quoted sentence from Elysium Health continues: "and that reflect his communications with counsel." Elysium Health, 2021 WL 1249223, at *3. In sum, although SiteLock and Nike both concerned pilot surveys, this court finds their analyses of the relationship between "facts or data considered" and the work product doctrine unpersuasive.

Here, nothing in Dr. Maronick's testimony or Vegadelphia's briefing indicates that the pilot surveys or their results reflected communications with or feedback from counsel. Indeed,

7

when asked about the first pilot survey, Dr. Maronick testified that he could not recall whether he provided any of the results to counsel for Vegadelphia. Maronick Dep. Tr. 103:18–104:10 [Doc. No. 172-2].

Accordingly, the court finds that the pilot surveys are not "drafts" protected by the work product doctrine as codified in Rule 26(b)(4)(B).[4]

## II.  Conclusion

For the foregoing reasons, Beyond's Motion to Compel [Doc. No. 171] is GRANTED. Within 14 days of entry of this order, Vegadelphia shall produce to Beyond the two pilot surveys conducted by Dr. Maronick and any results from those surveys.

IT IS SO ORDERED.

May 23, 2025                                       /s/ Indira Talwani
                                                   United States District Judge

---

[4] Because the court finds the pilot surveys are not protected by the work product doctrine, the court need not address Beyond's arguments about a substantial need to overcome work product protections. See Fed. R. Civ. P. 26(b)(3)(A)(ii).