**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SONATE CORPORATION d/b/a Vegadelphia FOODS,

*Plaintiff,*

vs.

BEYOND MEAT, INC.,

*Defendant.*

Civil Action No. 1:23-cv-10690 -IT

**MEMORANDUM IN SUPPORT OF DEFENDANT BEYOND MEAT, INC.'S RULE 52(B) MOTION TO AMEND THE COURT'S FINDINGS AND JUDGMENT AND RULE 59(A) AND RULE 59(E) MOTION FOR NEW TRIAL AND TO AMEND JUDGMENT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................1

II. BACKGROUND ....................3

III. LEGAL STANDARD ....................5

IV. ARGUMENT ....................6

A. This Court Should Amend The Judgment To Rescind Or Reduce The $15.4 Million Disgorgement Award ....................6

1. Whether And To What Extent To Award Disgorgement Is Exclusively For This Court, Not The Jury ....................6

2. The $15.4 Million Disgorgement Award Is Unsustainable ....................8

3. The Advisory Jury's Verdict Does Not Dictate Otherwise ....................11

B. At Minimum, This Court Should Vacate The Disgorgement Award And Grant A New Trial On The Factual Issues Forming The "Backdrop" For the Advisory Jury's Award ....................14

V. CONCLUSION ....................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*,
829 F. Supp. 458 (D. Mass. 1992) .......... 14

*Attrezzi, LLC v. Matyag Corp.*,
436 F.3d 32 (1st Cir. 2002) .......... 13

*Concordia Pharms., Inc. v. Method Pharms., LLC*,
240 F. Supp. 3d 449 (W.D. Va. 2017) .......... 13

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962) .......... 8

*Falto De Roman v. Mun. Gov't of Mayaguez*,
46 F.4th 51 (1st Cir. 2022) .......... 15

*Fishman Transducers v. Paul*,
2011 WL 1157529 (D. Mass. Mar. 29, 2011) .......... 16

*Fishman Transducers v. Paul*,
684 F.3d 187 (1st Cir. 2012) .......... 16

*Fishman Transducers, Inc. v. Paul*,
2011 WL 9828 (D. Mass. Jan. 4, 2011), *aff'd*, 684 F.3d 187 (1st Cir. 2012) .......... 12

*Heng Ren Invs. LP v. Sinovac Biotech Ltd.*,
609 F. Supp. 3d 17 (D. Mass. 2022) .......... 5

*Hipsaver Co. v. J.T. Posey Co.*,
497 F. Supp. 2d 96 (D. Mass. 2007) .......... 7

*Jennings v. Jones*,
587 F.3d 430 (1st Cir. 2009) .......... 6, 15

*Lama v. Borras*,
16 F.3d 473 (1st Cir. 1994) .......... 15

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
40 F.4th 454 (6th Cir. 2022) .......... 9, 19

*MGA Ent., Inc. v. Harris*,
2026 WL 2112031 (C.D. Cal. July 22, 2026) .......... 13

*Nat'l Metal Finishing Co. v. BarclaysAmerican/Com., Inc.*,
899 F.2d 119 (1st Cir. 1990) ........ 5

*OCI, Wyoming v. PacifiCorp*,
479 F.3d 1199 (10th Cir. 2007) ........ 7, 8

*Ragin v. Harry Macklowe Real Est. Co.*,
6 F.3d 898 (2d Cir. 1993) ........ 2

*Reyes v. Garland*,
26 F.4th 516 (1st Cir. 2022) ........ 2, 6, 7, 8

*Rodriguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc.*,
27 F.4th 14 (1st Cir. 2022) ........ 6

*Stanford v. AT&T Corp.*,
927 F. Supp. 524 (D. Mass. 1996) ........ 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ........ 10

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*,
908 F.3d 313 (8th Cir. 2018) ........ 11, 12

*U.S. ex rel. Solano v. Barton Assocs., Inc.*,
177 F.4th 315 (1st Cir. 2026) ........ 6

*United States v. Shelton*,
490 F.3d 74 (1st Cir. 2007) ........ 7

*United States v. Shields*,
649 F.3d 78 (1st Cir. 2011) ........ 7

*Visible Sys. Corp. v. Unisys Corp.*,
551 F.3d 65 (1st Cir. 2008) ........ passim

**STATUTES**

15 U.S.C. § 1117(a) ........ 5, 9, 10, 11

**RULES**

Fed. R. Civ. P. 52(b) ........ 11

Fed. R. Civ. P. 59(a)(1)(A) ........ 6

**OTHER AUTHORITIES**

Wright & Miller, *Federal Practice & Procedure* § 2537 (3d ed.) ........ 15

Wright & Miller, *Federal Practice and Procedure* § 2335 (3d ed.)..............................................7

## I. INTRODUCTION

In entering Judgment in this case, this Court found that Plaintiff Sonate Corporation ("Sonate") had presented "minimally sufficient evidence" to support an award of $37,500 in actual damages. *See* Sept. 18, 2026 Mem. & Order (Doc. No. 455) at 10. Although this Court's jury instructions correctly cautioned that any disgorgement award "must be proportional to Vegadelphia's actual harm attributable to the infringement and may only restore Vegadelphia to the position it would have been in had the infringement not occurred," Nov. 21, 2025 Trial Tr. 144:2-5, this Court adopted the advisory jury's recommendation to award $15.4 million in disgorgement—or *410 times actual damages*—to Sonate.

This Court acknowledged that it "may have decided these awards differently in the first instance." Doc. No. 455 at 36. It nonetheless entered the advisory jury's disgorgement finding without change upon finding that the numbers reflected "a reasonable jury's assessment of the evidence produced at trial." *Id.* The operative question, however, is not whether a reasonable jury could have awarded $15.4 million in disgorgement—it could not have, as explained *infra*—but what award, if any, *this Court* believes was warranted as "a rough measure" of the harm sustained by Sonate, and which were not addressed by actual damages.

Because $15.4 million was wholly out of proportion to actual damages, and wildly exceeds any amount that would restore Sonate to the position it would have been in but for the infringement, Defendant Beyond Meat, Inc. ("Beyond Meat") respectfully requests that this Court amend the judgment by eliminating or reducing the $15.4 million in disgorgement awarded as a rough measure of Sonate's harm.

This Court appeared to recognize that the evidence did not justify awarding $15.4 million in disgorgement as a rough measure of Sonate's harm. It found that any "competition between Sonate and Beyond [Meat] was highly circumscribed," that Beyond Meat did not act willfully "to

take any of Sonate's four customers or to capitalize on Sonate's goodwill," that there was "little to no evidence that Sonate had meaningful goodwill or brand awareness on which Beyond [Meat] even could capitalize," and that the evidence did not "give rise to an inference that confusion was anything more than a possibility." Doc. No. 455 at 35-37. Having also determined that the advisory jury's award was "magnitudes larger than any measure of Sonate's existing business"—and thus even more incompatible with Sonate's actual *harm*—this Court's analysis inexorably leads to the conclusion that awarding 410 times actual damages to Sonate as disgorgement is grossly disproportionate to actual harm, and punitive rather than restorative in nature.

The advisory jury's contrary conclusion did not justify a different result. Rather, this Court was free to "totally disregard" the advisory jury's recommended damages award. *Ragin v. Harry Macklowe Real Est. Co.*, 6 F.3d 898, 907 (2d Cir. 1993); *see Reyes v. Garland*, 26 F.4th 516, 521 (1st Cir. 2022) (court "has the ultimate discretion to reject" an advisory award). And because it acknowledged that it "may have decided th[is] award[] differently," Doc. No. 455 at 36, it should have. The advisory jury's findings on direct competition, willfulness, and net profits do not counsel otherwise. Because those questions were posed to the jury solely in relation to its advisory disgorgement recommendation, resolution of those issues in this particular case was properly for the Court, rather than the jury. But even if binding on this Court, the jury's findings most certainly did not dictate—and could not justify—a punitive award grossly disproportionate to actual harm that affords Sonate a windfall rather than "restor[ing] it to the position it would have been in had the infringement not occurred." *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 80 (1st Cir. 2008) (emphasis omitted). Accordingly, this Court should amend the judgment to eliminate the disgorgement award altogether or at minimum, to sharply reduce it to a number that is not grossly disproportionate to actual harm.

In the alternative, this Court should grant a new trial on the questions of direct competition, willfulness, and the amount of Beyond Meat's net profits that were attributable to the infringement. If those questions were for the jury, then the jury's findings were sharply against the weight of evidence. Most importantly, there was no evidence whatsoever to support the conclusion that Sonate and Beyond Meat directly competed with another so as to make their products "such complete substitutes that a sale by the infringer under the infringed party's mark is almost automatically a lost sale by the plaintiff." Nov. 21, 2025 Trial Tr. 143:9-18. Nor is it remotely plausible that *all* of Beyond Meat's supposed profits during the period in question were attributable to a marketing slogan. Because the jury's findings were firmly against the weight of the evidence, a new trial is warranted on those issues.

For either reason, the $15.4 million disgorgement award entered against Beyond Meat should not stand.[1]

## II. BACKGROUND

The Court held a two week trial in this trademark infringement case in November 2025, which ended in a verdict against Beyond Meat for infringement. *See* Doc. No. 455 at 1. In addition to awarding actual damages, the jury recommended an additional disgorgement award of $15.4 million. *Id.*[2] After trial, both parties filed various motions regarding the jury's verdict. As relevant here, Beyond Meat filed a renewed motion for judgment as a matter of law on damages, as well as a supplemental brief arguing that the imposition of disgorgement damages was unwarranted. Dkts.

---

[1] Shortly before Beyond Meat filed this motion, Sonate filed a notice of appeal. This Court retains jurisdiction to address this timely filed motion under Rules 52 and 59. *See, e.g.*, *Bowers v. Andrew Weir Shipping*, 817 F. Supp. 4, 5 (S.D.N.Y. 1993) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982)).

[2] The Court submitted disgorgement to the jury for advisory findings, but noted that "the court would decide after trial the amount of profits, if any, that would go to Sonate." *See* Doc. No. 455 at 24-25.

433, 440. Sonate, by contrast, sought enhancement of damages and disgorgement, as well as prejudgment interest. Dkts. 430, 437.

The Court resolved all of the parties' motions in an opinion and order issued on September 18, 2026. Doc. No. 455. The Court agreed with Beyond Meat that the evidence did not support the awarding of damages based on "Sonate's lost business opportunities," because "there was no basis on which a reasonable jury could infer" that Sonate's hypothetical business venture or potential distribution deal would have come to fruition, and "no reasonable jury could find that Beyond Meat's trademark infringement was a non-speculative cause of Sonate's claimed damages" from that lost opportunity. *Id.* at 11-23. Accordingly, the Court reduced the actual damages award to $37,500—the number which Sonate's own expert calculated to be the total profits Sonate lost during the relevant period as a result of Beyond Meat's infringement. *Id.* at 9-10.

This Court next proceeded to address disgorgement. The Court first agreed that the jury's $15.4 million disgorgement award was only "advisory." *Id.* at 29. It believed, however, that the jury was responsible for making certain factual findings that set the outer limit of what disgorgement "could be awarded to Sonate." *Id.* at 24. Accordingly, the Court proceeded to treat the jury's findings on willfulness, direct competition, and the upper limit of profits potentially available for disgorgement as binding. Considering those findings as a "backdrop," the Court awarded the jury's suggested $15.4 million in disgorgement, concluding that "these figures reflect a reasonable jury's assessment of the evidence produced at trial"—although this Court reiterated that "the court may have decided these awards differently in the first instance." *Id.* at 36.

This Court finally rejected Sonate's request for further disgorgement. The Court recognized that it was necessary to "contextualize" the jury's findings of willfulness, direct

competition, and profits in the context of the full trial record. *Id.* at 34. In so doing, the Court noted that (i) "the evidence shows at most that Beyond [Meat] acted willfully in using a catchy, trademarked phrase, but not that Beyond [Meat] did so in an effort to take any of Sonate's four customers or to capitalize on Sonate's goodwill;" (ii) "there is little to no evidence that Sonate had meaningful goodwill or brand awareness on which Beyond [Meat] even <u>could</u> capitalize;" (iii) "Sonate also did not point the jury to any instances of actual consumer confusion between Beyond [Meat]'s products and Sonate's products;" (iv) "the direct competition between Sonate and Beyond [Meat] was highly circumscribed;" and (v) the disgorgement award was already "magnitudes larger than any measure of Sonate's existing business." Doc. No. 455 at 35-37. Accordingly, this Court held that awarding "any additional disgorgement would, in the court's view, constitute an impermissible windfall to Sonate and contravene the Lanham Act's statutory prohibition on awarding damages to penalize an infringer." *Id.* at 36 (citing 15 U.S.C. § 1117(a)); *see also* Doc. No. 455 at 37 ("Additional profit disgorgement would … function as an impermissible punishment for Beyond [Meat].").

## III. LEGAL STANDARD

Rule 52(b) and Rule 59(e), which govern motions for a new trial and motions to amend a judgment, have a "close relationship." *Nat'l Metal Finishing Co. v. BarclaysAmerican/Com., Inc.*, 899 F.2d 119, 122 (1st Cir. 1990). Rule 52(b) "permit[s] the correction of any manifest errors of law or fact that are discovered, upon reconsideration, by the trial court." *Nat'l Metal Finishing Co.*, 899 F.2d at 122-23. Likewise, Rule 59(e) permits reconsideration of a judgment where, *inter alia*, there is a "manifest error of law." *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 609 F. Supp. 3d 17, 19 (D. Mass. 2022). Ultimately, "under either Rule 52(b) or Rule 59(e), [a] district court . . . ha[s] the power to amend its findings of fact and conclusions of law even when doing so result[s] in the reversal of its initial judgment." *Nat'l Metal Finishing Co.*, 899 F.2d at 124. District courts

have "substantial discretion and broad authority" to grant a motion to amend the judgment. *U.S. ex rel. Solano v. Barton Assocs., Inc.*, 177 F.4th 315, 321 (1st Cir. 2026) (citation omitted).

"A trial judge may grant a new trial if the jury's verdict is 'against the weight of the evidence' or if 'action is required in order to prevent injustice.'" *Rodriguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14, 21 (1st Cir. 2022) (citation omitted); *see* Fed. R. Civ. P. 59(a)(1)(A). "A district court's power to grant a motion for a new trial is much broader than its power to grant a JMOL." *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). In making its new-trial determination, the Court may "independently weigh the evidence." *Id.* (citation omitted).

## IV. ARGUMENT

### A. This Court Should Amend The Judgment To Rescind Or Reduce The $15.4 Million Disgorgement Award

#### 1. <u>Whether And To What Extent To Award Disgorgement Is Exclusively For This Court, Not The Jury</u>

This Court properly recognized at trial that because disgorgement is "'an equitable issue,'" it was "'the one who has to make the decision on the dollars'" awarded to Sonate, if any. Doc. No. 455 at 24-25 (quoting Nov. 19, 2025 Trial Tr. 244:12-25). And it reiterated in its recent decision that disgorgement is "'an equitable claim for the judge.'" *Id.* at 27 (quoting *Visible Sys.*, 551 F.3d at 78 n.8). But even though it acknowledged that it "may have decided the[] award[] differently in the first instance," it adopted the advisory jury's recommendation to award $15.4 million in disgorgement as a rough measure of the harm suffered by Sonate—a company with roughly $100,000 in annual sales at best. *See* Doc. No. 446-17.

To the extent that this Court deferred to the advisory jury's recommendation because it "reflect[ed] a reasonable jury's assessment of the evidence," Doc. No. 455 at 36, that was error. Because an advisory jury's role "'is, as the name would suggest, purely advisory in nature[,]' '[t]he responsibility for the decision-rendering process remains with the trial judge.'" *Reyes*, 26 F.4th at



US-DOCS\176522500.9

521 (quoting *United States v. Shields*, 649 F.3d 78, 84 n.5 (1st Cir. 2011)). The Court must "make[] an independent review of the law and facts presented at trial." *Reyes*, 26 F.4th at 521. In so doing, the court acts like any factfinder: it must "'decide among reasonable interpretations of the evidence' and 'determine the weight accorded to expert witnesses.'" *Shields*, 649 F.3d at 89 (quoting *United States v. Shelton*, 490 F.3d 74, 79 (1st Cir. 2007)). And it must "set[] forth sufficient findings of fact and conclusions of law without giving deference to the advisory jury's verdict." *OCI, Wyoming v. PacifiCorp*, 479 F.3d 1199, 1201 (10th Cir. 2007).

Here, the Court's Order strongly suggests that it did not believe that $15.4 million was the most appropriate measure of harm that Sonate sustained. For instance, "a plaintiff seeking disgorgement must ordinarily prove 'both actual harm and direct competition.'" *Hipsaver Co. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 106 (D. Mass. 2007) (citation omitted). But this Court acknowledged that Beyond Meat "may very well be correct" that there was either no—or negligible—direct competition. Doc. No. 455 at 28. Even if the jury's finding of direct competition was binding, *but see infra* at 12-14, this Court retained both the power and the mandate to evaluate whether the level of direct competition indicated by the record supported a "not … conservative" disgorgement award over 400 times actual damages and "magnitudes larger than any measure of Sonate's existing business." Doc. No. 455 at 35-37.

The Court stated that it adopted the jury's verdict because it "reasonably arises from the evidence offered at trial." *Id.* at 32. Even were that true, "suggestions that an advisory jury's findings should be accepted if they are sustained by the evidence . . . misconceive an advisory jury's function and status and seem to overlook the complete freedom the trial judge has in using or disregarding its finding." Wright & Miller, *Federal Practice and Procedure* § 2335 (3d ed.). To the contrary, a court must reach its own factual and legal conclusions "without giving deference

to the advisory jury's verdict." *OCI, Wyoming v. PacifiCorp*, 479 F.3d at 1201; *see Reyes*, 26 F.4th at 521 ("'[T]he responsibility for the decision-rendering process remains with the trial judge." (citation omitted)).

If the Court would have "decided the[] [disgorgement] award[] differently in the first instance," Doc. No. 455 at 36, it was obligated to do so. And for the reasons set forth below, it should have done so. A decision to award no disgorgement or an amount substantially lower than $15.4 million follows inexorably from the record and the Court's findings thereupon.

2. The $15.4 Million Disgorgement Award Is Unsustainable

This Court adopted the jury's recommendation to award $15.4 million as a "rough measure" of the harm that Sonate experienced, and that was not addressed by the jury's award of actual damages. Doc. No. 455 at 36-37. That award is manifestly unsustainable as a matter of law, and should be vacated or at minimum amended.

To begin with, the jury's verdict did not support *any* disgorgement award as a "proxy for legal damages." *Visible Sys.*, 551 F.3d at 80. "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). As the First Circuit has explained, therefore, "[t]he proxy rationale" for awarding disgorgement as "a rough measure of harm to the plaintiff" is inapplicable as a matter of law where "[t]he harm to plaintiff was in fact measured and damages were awarded." *Visible Sys.*, 551 F.3d at 80. Thus, in *Visible Systems*, where the jury had already awarded $250,000 in actual damages to the plaintiff as recompense for the harm it suffered, the Court found that the proxy rationale for awarding damages as a rough measure of harm "has no place." *Id.*

As it is, the actual damages awarded by this Court's Judgment already encompasses "the highest amount of actual damages supported by the evidence at trial"—$37,500—by crediting

Sonate's own expert's testimony concerning the extent of "Sonate's lost profits between 2018 and 2020" as a result of "Beyond [Meat]'s trademark infringement." Doc. No. 455 at 8-9; *see also* Nov. 21, 2025 Trial Tr. 141:14-17 ("'Damages' means the amount of money which will reasonably and fairly compensate Vegadelphia for the injury caused by Beyond Meat's infringement of the Vegadelphia trademark."). There is thus no need to award additional disgorgement as a rough measure of harm when the Judgment already encompasses actual damages for that harm. That is particularly so given that, as the Court found, there was no harm to Sonate's reputation or goodwill (to the extent it had any) that might be difficult to quantify. Doc. No. 455 at 35. Indeed, awarding disgorgement as a proxy for actual damages in such a case would risk an improper double recovery. *See, e.g.*, *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 476 (6th Cir. 2022) ("[I]f a plaintiff has obtained an award of the defendant's profits (which is a proxy for what the plaintiff would have earned on the sales), the plaintiff must tie separate damages to a distinct harm and cannot seek a double recovery"); *see also* Nov. 21, 2025 Trial Tr. 68:10-18 (Sonate itself cautioning jury in closing that it could not "count dollars twice").

Even if it was appropriate to award disgorgement as a "rough measure of harm" in this case, the $15.4 million award was manifestly excessive. This Court instructed the jury that in awarding "disgorgement of profits as a rough measure of harm to [Sonate] … [t]he amount of disgorgement must be proportional to [Sonate]'s actual harm attributable to the infringement and may only restore [Sonate] to the position it would have been in had the infringement not occurred." Nov. 21, 2025 Trial Tr. 143:22-144:5; *see* Doc. No. 402 at 27. That accords with the Lanham Act's admonition that a disgorgement award must "constitute compensation and not a penalty." 15 U.S.C. § 1117(a); *see also Visible Sys.*, 551 F.3d at 80 (finding proxy rationale had "no place"

where jury already awarded damages to "restore [the plaintiff] to the position it would have been in had the infringement not occurred" (emphasis omitted)).

Here, $15.4 million was grossly disproportionate to Sonate's actual harm from the infringement, and far exceeded the amount necessary to "restore Vegadelphia to the position it would have been in had the infringement not occurred." Nov. 21, 2025 Trial Tr. 144:1-5. As this Court itself explained, the $15.4 million award was "magnitudes larger than any measure of Sonate's existing business," Doc. No. 455 at 37—indeed, Sonate only generated roughly $100,000 in relevant annual sales during the period in question and its own expert calculated its lost profits from the infringement at $37,500. *See* Doc. No. 449-9 at 2; Doc. No. 455 at 9-10. *$15.4 million is over 410 times that number*.[3] By any measure, that is grossly disproportionate and far beyond any amount necessary to *compensate* Sonate for any loss attributable to infringement. *See* 15 U.S.C. § 1117(a); *cf. State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425-26 (2003) (noting courts must ensure that punitive damages are "proportionate" to plaintiff's actual harm, rejecting 145-1 ratio between punitive and actual damages, and reiterating that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree" will be proper).[4]

---

[3] To be sure, the jury also awarded an additional $23.5 million in damages on the theory that Sonate lost lucrative business opportunities. But this Court rightly found "no basis on which a reasonable jury could infer, without speculating," that the proposed business opportunity "would have resulted in a binding contract and real future sales," let alone that "Beyond's trademark infringement was a non-speculative cause of Sonate's claimed damages for the loss of [that purported lost business opportunity]." Doc. No. 455 at 20. The relevant question, therefore, is whether it is appropriate to award $15.4 million in disgorgement as a "rough measure of harm" when the highest actual cognizable harm sustained by Sonate amounted to $37,500 in lost profits.

[4] Similarly, it is difficult to conceive of a disgorgement award more than 10 times actual damages that would amount to a "rough measure of harm" proportionate to actual damages rather than an impermissible punishment to the defendant and a windfall to the plaintiff.

Because $15.4 million is not proportional to actual damages, and punishes Beyond Meat rather than compensates Sonate for actual harm sustained, such an award is categorically not a "rough measure of harm." Because it is legally invalid, this Court should vacate it entirely, or at minimum, reduce it to an amount proportionate to actual damages.[5]

3. The Advisory Jury's Verdict Does Not Dictate Otherwise

As the foregoing makes clear, it is unsustainable to award $15.4 million in disgorgement as a rough measure of the harm sustained by Sonate in this case. Nothing about the advisory jury's decision dictates or counsels otherwise.

This Court treated the jury's findings regarding direct competition and the profits attributable to Beyond Meat's infringement as a "backdrop" to the advisory jury's award. Doc. No. 455 at 29. And it justified its adoption of the advisory jury's $15.4 million award in part by stating that "the court is bound by the jury's factual findings as to direct competition and Beyond Meat's total profits attributable to its infring[ement]." *Id.* at 32-33. But in the context of the jury charge and verdict in this case, this Court was *not* bound by the jury's conclusions on those issues—which were expressly and solely posed to the jury as part of an *equitable* issue: disgorgement. *See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 343 (8th Cir. 2018). Regardless, even if those findings bound this Court, they do not compel or justify adherence to the advisory jury's ultimate recommendation.

[5] Such a result also accords with this Court's responsibility, upon "find[ing] that the amount of the recovery based on profits is either inadequate or excessive … in its discretion [to] enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a).

First, the jury's factual findings did not bind this Court. A plaintiff is entitled to a jury trial on legal claims, not equitable ones.[6] *See, e.g.*, *Stanford v. AT&T Corp.*, 927 F. Supp. 524, 527 (D. Mass. 1996). In some cases, a jury will be tasked to decide a fact that is common to a legal and equitable issue in the same case. "[W]hen a party has a right to a jury trial on an issue *involved in a legal claim*, the judge is of course bound by the jury's determination *of that issue* as it affects his disposition of an accompanying equitable claim." *Perdoni Bros., Inc. v. Concrete Sys., Inc.*, 35 F.3d 1, 5 (1st Cir. 1994) (emphasis added) (citation omitted); *see also Fishman Transducers, Inc. v. Paul*, 2011 WL 9828, at *1 (D. Mass. Jan. 4, 2011) (Plaintiff is entitled to "determinations of fact the plaintiff's legal and equitable claims may have in common."), *aff'd*, 684 F.3d 187 (1st Cir. 2012). But "[t]o bind the district court's equitable powers, a jury's findings must be on an issue 'common' to the action's legal and equitable claims; otherwise, the court is free to treat the jury's findings as 'merely advisory.'" *Sturgis Motorcycle Rally, Inc.*, 908 F.3d at 343.

Here, as the jury verdict makes clear, the issues of direct competition, net profits, and willfulness were presented to the jury solely and exclusively for the purpose of determining disgorgement: an equitable remedy. Importantly, the jury was not even directed to decide those questions before entering its determination of actual damages in Question 3. *See* Doc. No. 419 at 1-3. Instead, all three issues were posed to the jury under the "Disgorgement" sections of the verdict form (Sections 4 and 5), where the jury was asked to provide an advisory award of disgorged profits "for harm . . . that was not included in actual damages." *See* Doc. No. 419 at 3-

---

[6] This Court did not finally resolve what jury findings it considered advisory versus binding until its recent post-trial order. *See, e.g.*, Doc. No. 455 at 27. That determination is properly challenged here. If Beyond Meat is correct that direct competition, net profits, and willfulness are properly for the judge, they are subject to Rule 52, not Rule 50. *See* Fed. R. Civ. P. 52(b) (allowing court to "amend its findings" "[o]n a party's motion filed no later than 28 days after the entry of judgment"); *but see* Doc. No. 455 at 28-29 (treating these questions as controlled by Rule 50).

5. "Damages"—the legal remedy—is a completely separate section of the form. *See id.* at 3. The jury instructions likewise directed the jury to consider these issues only in the context of "disgorgement"; indeed, for direct competition, the jury was specifically instructed that finding competition was a prerequisite to disgorgement. *See* Nov. 21, 2025 Trial Tr. 149:21-150:21; Doc. No. 402 at 26-27.

The Court's recent order on the parties' post-trial motions further confirms this understanding. The Court addressed net profits, willfulness, and direct competition when addressing Sonate's motion for disgorgement. *See* Doc. No. 455 at 26-44. By contrast, Sonate's actual damages case turned on its allegations of lost profits from diminished sales and a supposed lost business opportunity. *Id.* at 6-23. Had the jury's findings gone to an issue common to a legal damages claim and an equitable disgorgement claim, its findings might have been binding. *See Perdoni Bros.*, 35 F.3d at 5. But that was not the case here. Neither of the cases the Court cited in its order squarely held that the jury's findings on factual questions that were posed to the jury solely as part of an equitable claim would be binding. *See Visible Sys.*, 551 F.3d at 78; *Attrezzi, LLC v. Matyag Corp.*, 436 F.3d 32, 43 (1st Cir. 2002).[7] By contrast other courts have recognized that the findings at issue here are for the court when they are components of an equitable issue. *See, e.g.*, *MGA Ent., Inc. v. Harris*, 2026 WL 2112031, at *2 (C.D. Cal. July 22, 2026) ("The Court determined that willfulness was an equitable issue and reviewed it de novo."); *Concordia Pharms., Inc. v. Method Pharms., LLC*, 240 F. Supp. 3d 449, 455 (W.D. Va. 2017) (finding "the jury's verdict on the issue of willfulness is only advisory" where "it is the court that ultimately decides" questions to which willfulness was relevant).

[7] *Attrezzi* only "assume[d]" that a jury finding of willfulness would be binding; it did not decide the point. 436 F.3d at 43. *Visible* did not address the question of whether a finding relevant only to an equitable claim would be properly for the judge. 551 F.3d at 78 n.8

Because the jury's findings on direct competition, profits, and willfulness were asked and answered solely as part of the equitable claim left for this Court's decision, the advisory jury's findings do not bind this Court. Even if they were binding, however, they could not compel this Court to enter a disgorgement award that is wildly disproportionate to Sonate's actual harm, and "magnitudes larger than any measure of Sonate's existing business." Doc. No. 455 at 37. Indeed, this Court elsewhere recognized that in determining the amount of disgorgement that was appropriate, it was essential to "contextualize" the jury's findings "within the trial record" and to "avoid providing Sonate with an unintended 'windfall.'" *Id.* at 34 (quoting *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 829 F. Supp. 458, 464 (D. Mass. 1992)). Those same considerations, however, also compel eliminating or sharply reducing the existing $15.4 million disgorgement award. As explained *supra*, this Court recognized that evidence of direct competition was "highly circumscribed," that Beyond Meat did not act willfully to capitalize on Sonate's goodwill or steal its customers, and that the advisory jury's recommended award dwarfed Sonate's business. Accordingly, nothing in the jury's findings prevents this Court from fulfilling its responsibility to enter an award that was "proportional to Vegadelphia's actual harm attributable to the infringement" and only "restore[d] Vegadelphia to the position it would have been in had the infringement not occurred," Nov. 11, 2025 Trial Tr. 144:2-5.

For all the foregoing reasons, Beyond Meat respectfully requests that this Court amend the judgment to eliminate the disgorgement award or reduce that award so as to render it proportionate to actual harm and compensatory rather than punitive.

### B. At Minimum, This Court Should Vacate The Disgorgement Award And Grant A New Trial On The Factual Issues Forming The "Backdrop" For the Advisory Jury's Award

Even if direct competition, net profits, and willfulness were questions for the jury to decide, those findings were against the weight of the evidence. At minimum, therefore, this court should order a new trial.

A new trial is warranted where the verdict is against the weight of the evidence. This standard is more forgiving than the Rule 50 standard: a "court may order a new trial even where the verdict is supported by substantial evidence." *Lama v. Borras*, 16 F.3d 473, 477 (1st Cir. 1994). In determining whether to order a new trial, the court need not view the evidence in the light most favorable to the verdict. *Jennings*, 587 F.3d at 438. Moreover, a court may grant a new trial even where a Rule 50 challenge was not preserved. *See Falto De Roman v. Mun. Gov't of Mayaguez*, 46 F.4th 51, 56 (1st Cir. 2022) (concluding that plaintiff's "motion for a new trial is [] preserved" even though Rule 50(b) motion had been waived); Wright & Miller, *Federal Practice & Procedure* § 2537 (3d ed.) ("If the verdict winner's evidence was insufficient as a matter of law but no motion for judgment as a matter of law was made under Rule 50(a), even though the district court cannot grant judgment as a matter of law under Rule 50(b) for the party against whom the verdict is rendered, it can set aside the verdict and order a new trial"). Accordingly, even though this Court found that Beyond Meat "did not seek judgment as a matter of law on direct competition at trial or in its posttrial Rule 50(b) motion," Doc. No. 455 at 28, the Court may still order a new trial. *See Jennings*, 587 F.3d at 436 ("A district court's power to grant a motion for a new trial is much broader than its power to grant a JMOL").

Here, on the three questions the Court said formed a "backdrop" for the disgorgement award, the Court should grant a new trial because the jury's findings went firmly against the weight of the evidence.

***Direct competition.*** The Court acknowledged that "Beyond [Meat] may very well be correct" that the evidence at trial was insufficient to show direct competition. Doc. No. 455 at 28. At minimum, the jury's direct competition finding went against the weight of that evidence.

As the jury instructions explained, "direct competition" has a specialized meaning in the context of a trademark proxy-harm theory. It requires that two companies "operate at the same level of the market" and that the parties' "products may be such complete substitutes that a sale by the infringer under the infringed party's mark is almost automatically a lost sale by the plaintiff." Nov. 21, 2025 Trial Tr. 143:9-18; Doc. No. 402 at 26-27; *see Fishman Transducers v. Paul*, 684 F.3d 187, 196 (1st Cir. 2012) ("a showing of direct competition requires a substantial degree of equivalence and substitutability"). Absent a finding of direct competition, "there is no basis for concluding that any small windfall to the defendants resulted in diversion of sales from the plaintiff or other actual harm." *Fishman Transducers v. Paul*, 2011 WL 1157529, at *2 (D. Mass. Mar. 29, 2011); *see Fishman Transducers*, 684 F.3d at 196 (affirming no-competition finding where "no plausible one-to-one equivalent exists" between plaintiff's and defendant's products).

The Court observed that Sonate offered limited products: its "sales centered on a plant-based chicken product and a plant-based steak product." Doc. No. 455 at 37 n.11; *see* Nov. 13, 2025 Trial Tr. 38:5-21 (noting that Sonate's "Veggie Lean" product "substitutes in" for "Philly steak," a "molded, frozen, thinly sliced piece of beef or chicken"). The Court also recognized that Sonate sold its two products to only four customers, Doc. No. 455 at 37 n.1: El Meson, a "fast casual chain" in Puerto Rico" with "locations in Florida," Nov. 13, 2025 Trial Tr. 59:4-18; Norma's, a "Mediterranean middle eastern restaurant in New Jersey," Nov. 19, 2025 Trial Tr. 51:25-52:2; Vienna Sausage, a "hot dog company based in Chicago," *id.* 51:20-24; and C.W. Dunnet, a product "redistributor" that sold product to unknown distributors, Nov. 13, 2025 Trial

Tr. 58:17-59:3. This "limited customer base" reflected a "relatively small" "geographic presence" for Sonate's plant-based chicken and steak products. Doc. No. 455 at 37 n.11.

Beyond Meat's products and sales were "vastly different." *Id.* Beyond Meat sold a "broad portfolio" of plant-based meat products, including "plant-based burgers, sausages, ground beef, crumbled beef, and meatballs," along with "plant-based chicken and steak products." *Id.* And Beyond Meat sold those products to "grocery store chain[s]" nationwide, along with buyers who distributed to "club retailers" like "Costco or BJs," "food services" like restaurants," and even "college[s] and "school[s]." Nov. 18, 2025 Trial Tr. 27:8-28:16; Nov. 19, 2025 Trial Tr. 43:7-19; Doc. No. 455 at 37 n.1. In other words, Beyond Meat offered a far broader range of products to distributors and customers that Sonate did not reach.

Given that backdrop, there was no basis to conclude that any sale by Beyond Meat under the infringing mark was almost automatically a lost sale by Sonate. Beyond Meat and Sonate offered largely different products to different market segments, and Beyond Meat offered its products on a far broader scale. Given the vastly different infrastructure available to each company, and the dramatically different geographic and customer base served by each entity, there was no plausible basis to conclude that Sonate had the employees, distributors, warehouses, transportation, products, marketing, or customer relationships necessary to conclude that Beyond Meat and Sonate's very different products were such substitutes that "a sale by [Beyond Meat] under the infringed party's mark is almost automatically a lost sale by the [Sonate]." Nov. 21, 2025 Trial Tr. 143:9-18.

It is hardly surprising, therefore, that Plaintiff failed to provide evidence of a single restaurant or other chain for which both parties' products at issue competed for business in any state—let alone everywhere Beyond Meat did business. Moreover, as Sonate's own witness Matt

Shipon admitted, multiple companies compete in the broader market for plant-based meat substitutes. *See* Nov. 14, 2025 Trial Tr. 16:9-11 (identifying "Impossible Foods, Tofurky, [and] Morningstar" as competitors of Sonate). It was particularly dubious, therefore, to conclude but for the infringement, every sale made by Beyond Meat would have been a Sonate sale but for the infringement.[8] The jury's finding that Sonate and Beyond Meat directly competed was sharply against the weight of the evidence. As such, the Court should award a new trial on this finding.

***Net profits.*** At trial, Plaintiff's expert Sidney Blum testified that $109,868,167 of Beyond Meat's profits was "eligible for disgorgement." Nov. 20, 2025 Trial Tr. 55:16-17. The jury adopted this figure and its verdict opined that Beyond Meat's net profits attributable to infringement were $109 million. *See* Verdict Form. But that profit figure was unsupported by the evidence.

The jury was asked to find net profits "attributable to [the] infringing use of 'PLANT BASED GREAT TASTE'.'" *See* Doc. No. 402 at 25-26. The jury adopted Sonate's proposed figure of $109 million—the purported "incremental profits" on Beyond Meat Meat's *total* US sales, excluding sales to Dunkin (which concerned a different mark). *See* Doc. No. 438-1. In effect, therefore, the jury determined that the sole reason that consumers purchased Beyond Meat's products was because of a marketing slogan which Beyond Meat temporarily employed—notwithstanding that most of the same consumers bought the products before and after the period in which the tagline was used. That is self-evidently not credible.

---

[8] Indeed, another company that Mr. Shipon listed as a Sonate competitor—Impossible Foods—used the same PLANT BASED GREAT TASTE tagline during the same time period. Nov. 18, 2025 Trial Tr. 36:8-37:5. That further erodes any suggestion that every Beyond Meat sale was a lost sale for Sonate due to the infringement.

It is common sense that the entirety of a company's profits (less marketing expenses and Plaintiff's handpicked deductions) are not "attributable to" its use of one particular slogan. Doc. No. 402 at 25-26; *see Max Rack*, 40 F.4th at 472 ("It would seem dubious to claim that [plaintiff] could satisfy its initial burden merely by introducing [defendant]'s total companywide sales data and thereby shift to [defendant] the burden to disprove that its infringement affected every dollar of revenue."). This assumption is particularly inapt where Beyond Meat adduced evidence that it did not earn any profit at all during the relevant time period, as reflected in its public filings. Nov. 19, 2025 Trial Tr. 86:16-87:21. Even if all of Beyond Meat's costs could not be deducted from its profits, as Plaintiff's expert contended, common sense dictates that "some" of Beyond Meat's operating costs, like those of research and innovation of new products, were necessary for its products' success. Doc. No. 455 at 31-32; *see* Nov. 19, 2025 Trial Tr. 83:16-84:6. Accordingly, the jury's finding that nearly all of Beyond Meat's profits from outside Dunkin' were attributable to the infringement is against the evidence, as well as common sense.

***Willfulness.*** The evidence at trial also does not support the conclusion that Beyond Meat willfully infringed Sonate's trademark. The jury was instructed that willful conduct would require "that Beyond Meat infringed Vegadelphia's mark with a conscious awareness of its wrongdoing or that such an infringement was objectively reckless as measured against standards of reasonable behavior." Nov. 21, 2025 Trial Tr. 144:6-13; Doc. No. 402 at 27. Under that standard, the weight of the evidence does not suggest that Beyond Meat acted willfully. Trial testimony indicated that Beyond Meat thought the taglines it used were descriptive, and sufficiently different than Sonate's mark. *See* Doc. No. 455 at 40-41. Notably, the Patent and Trademark Office ("PTO") itself denied Beyond Meat's trademark application for its tagline in part on the basis that the tagline was

descriptive. *Id.* at 41-42. This falls short of "awareness of [] wrongdoing" or recklessness, Nov. 19, 2025 Trial Tr. 144:6-13; Doc. No. 402 at 27.

Moreover, as the Court explained, there was no evidence at trial that Beyond Meat used the taglines at issue "in an effort to take any of Sonate's four customers or to capitalize on Sonate's goodwill." Doc. No. 455 at 35. While Beyond Meat was aware of Sonate's mark, the evidence supports that Beyond Meat did not believe its use of the taglines would violate a valid trademark.

Because the jury's findings go against the weight of the evidence, this Court should—at minimum—order a new trial on those issues before adopting an advisory jury's award premised on findings that are sharply at odds with the evidence in this case.

## V. CONCLUSION

For the foregoing reasons, Beyond Meat respectfully requests that the Court alter its judgment pursuant to Rule 52 and/or Rule 59, and/or grant Beyond Meat a new trial on the issues specified pursuant to Rule 59.

Dated: October 16, 2026

Respectfully Submitted,

By: /s/ *Andrew T. O'Connor*

Andrew T. O'Connor (BBO # 664811)
Kiman Kaur (BBO # 709943)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 482-1776
Facsimile: (617) 574-4112
E-mails: aoconnor@goulstonstorrs.com
kkaur@goulstonstorrs.com

Laura R. Washington (*Pro Hac Vice*)
Latham & Watkins LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Telephone: 424.653.5500
E-mail: laura.washington@lw.com

Michael E. Bern (*Pro Hac Vice*)
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: 202.637.2200
Email: Michael.bern@lw.com

Melanie J. Grindle (*Pro Hac Vice*)
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, California 92130
Telephone: 858.523.5400
Email: melanie.grindle@lw.com

*Attorneys for Defendant Beyond Meat, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent on October 16, 2026 to those identified as non-registered participants.

/s/ *Andrew T. O'Connor*
Andrew T. O'Connor