**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | |
|---|---|
| SONATE CORPORATION D/B/A Vegadelphia Foods,<br>Plaintiff,<br><br>vs.<br><br>BEYOND MEAT, INC., a Delaware corporation,<br>Defendant. | Civil Action No. 1:23-cv-10690-IT |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 52(B) MOTION TO AMEND THE COURT'S FINDINGS AND JUDGMENT AND RULE 59(A) AND RULE 59(E) MOTION FOR NEW TRIAL AND TO AMEND JUDGMENT, DKT. NO. 470**

# TABLE OF CONTENTS


I. INTRODUCTION ....- 1 -

II. BEYOND'S MOTION TO REDUCE OR RESCIND THE $15.4M IN DISGORGED PROFITS SHOULD BE DENIED ....- 2 -
- A. Legal Standard ....- 2 -
- B. The Court Did Not Err by Considering the Advisory Verdict ....- 3 -
- C. The District Court Did Not Err in Relying on the Jury's Findings of Fact ....- 5 -
- D. The Award of Damages for Disgorgement is Not Unsustainable ....- 9 -

III. THIS COURT SHOULD NEITHER VACATE VEGADELPHIA'S $15.4 MILLION AWARD OF DISGORGED PROFITS NOR ORDER A NEW TRIAL ....- 13 -
- A. Legal Standard ....- 13 -
- B. The Jury and Court's Findings on Direct Competition are Supported. ....- 13 -
- C. The Jury's Finding on Attributable Profits Did Not Go Against the Demonstrable Weight of the Credible Evidence ....- 16 -
- D. The Jury's Findings on Willfulness Were Not a Stated Basis for the Court's Conclusions on Rough Measure of Harm ....- 19 -

IV. CONCLUSION ....- 19 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Herron*,
634 F.3d 1101 (9th Cir. 2011) ....................3

*Attrezzi, LLC v. Matyag Corp.*,
436 F.3d 32 (1st Cir. 2006) ....................6

*AWGI, LLV v. Atlas Trucking Co., LLC*,
998 F.3d 258 (6th Cir. 2021) ....................8

*Boston Duck Tours, LP v. Super Duck Tours, LLC*,
531 F.3d 1 (1st Cir. 2008) ....................8

*Breeden v. VK Krupa*,
752 F. Supp. 3d 274 (D. Mass. 2024) ....................19

*Concordia Pharms. Inc. v. Method Pharms., LLC*,
240 F. Supp. 3d 449 (W.D. Va. 2017) ....................6

*Echometer v. Lufkin Indus.*,
No. 7:00-CV-0101, 2004 U.S. Dist. LEXIS 30583 (N.D. Tex. Mar. 22, 2004) ....................4

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
762 F.3d 829 (9th Cir. 2014) ....................11

*Exxon Shipping v. Baker*,
554 U.S. 471 (2008) ....................3

*Fairest-Knight v. Marine World Distribs.*,
C. A. No. 07-1708 (CVR), 2010 WL 500409 (D.P.R. Feb. 3, 2010) ....................3

*Feliciano-Hernandez v. Pereira-Castillo*,
663 F.3d 527 (1st Cir. 2011) ....................3

*Felker v. Pepsi-Cola*,
899 F. Supp. 882 (D. Conn. 1995) ....................4

*Fishman Transducers, Inc. v. Paul*,
684 F.3d 187 (1st Cir. 2012) ....................14

*Fishman Transducers, Inc. v. Paul*,
No. 07-10071-GAO, 2011 WL 1157529 (D. Mass. Mar. 29, 2011) ....................7, 14

*Flores-Suarez v. Turabo Med. Ctr.*,
165 F. Supp. 2d 79 (D.P.R. 2001)....................19

*Freeman v. Package Mach.*,
865 F.2d 1331 (1st Cir. 1988)....................19

*Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony*,
897 F.2d 611 (1st Cir. 1990)....................3

*Hodge v. Mendonza*,
739 F.3d 34 (1st Cir. 2013)....................8

*Max Rack v. Core Health*,
40 F.4th 454 (6th Cir. 2022), Dkt. No. 470....................17

*MGA Ent., Inc. v. Harris*,
No. 2:20-cv-11548-JVS-CTS, 2026 WL 2112031 (C.D. Cal. July 22, 2026)....................6

*Momenta Pharms. v. Amphastar Pharms.*,
298 F. Supp. 3d 258 (D. Mass. 2018)....................4, 9

*Monahan Prods. LLC v. Sam's E., Inc.*,
463 F. Supp. 3d 128 (D. Mass. 2020)....................14

*Nat'l Metal Finishing, Co., Inc. v. BarclaysAm./Com., Inc.*,
899 F.2d 119 (1st Cir. 1990)....................3, 5, 12, 13

*Oriental Fin. Grp. v. Coop. de Ahorro y Credito Oriental*,
C.A. No. 10-1444 (ADC), 2022 WL 4935400 (D.P.R. Sept. 30, 2022)....................3

*Oxford Indus. v. Harmarx Corp.*,
15 U.S.P.Q.2d 1648 (N.D. Ill. 1990)....................12, 13

*Rearden LLC v. Rearden Com.*,
683 F.3d 1190 (9th Cir. 2012)....................8

*Reyes v. Garland*,
26 F.4th 516 (1st Cir. 2022)....................2, 4, 9

*Richard v. Reg'l Sch. Unit 57*,
901 F.3d 52 (1st Cir. 2018)....................5

*Rinsky v. Cushman & Wakefield, Inc.*,
918 F.3d 8 (1st Cir. 2019)....................13, 14

*Softketeers v. Regal West*,
No. 8:19-CV-00519, 2022 WL 17968835 (C.D. Cal. Dec. 22, 2022)....................4

*Sterilite Corp. v. Olivet Int'l, Inc.*,
No. 1:22-cv-10327-JEK, 2025 WL 3459536 (D. Mass. Dec. 2, 2025) ................................4, 19

*Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*,
282 F.3d 23 (1st Cir. 2002) ................................................................................14, 16

*Visible Sys. Corp. v. Unisys Corp.*,
551 F.3d 65 (1st Cir. 2008) ................................................................................6, 9

*W.W.W. Pharm. Co. v. Gillette Co.*,
984 F.2d 567 (2d Cir. 1993) ................................................................................8

*Winthrop Res. v. Eaton Hydraulics*,
361 F.3d 465 (8th Cir. 2004) ................................................................................2, 10

*Zafiro v. United States*,
506 U.S. 534 (1993) ................................................................................10

**Statutes**

15 U.S.C. § 1117(a) ................................................................................10, 16, 19, 20

**Other Authorities**

U.S. CONST. amend. VII ................................................................................7

Fed. R. Civ. P. 39 ................................................................................2

Fed. R. Civ. P. 50 ................................................................................7

Fed. R. Civ. P. 52 ................................................................................ *passim*

Fed. R. Civ. P. 59 ................................................................................ *passim*

## I. INTRODUCTION

Beyond Meat, Inc.'s ("Beyond") Motion is a procedurally-improper, last-ditch attempt to throw out the entirety of the jury's verdict and Court's judgment against them. Following a nearly three-week trial, the jury entered a verdict against Beyond on all counts. This Court then entered Judgment for Plaintiff Sonate Corporation d/b/a Vegadelphia ("Vegadelphia") against Beyond "in the amount of $15,437,500, comprised of $37,500 of actual damages and $15,400,000 of disgorged profits as a rough measure to fairly compensate for harm proximately caused by Defendant Beyond's infringing use of 'PLANT BASED GREAT TASTE' that was not included in actual damages." Dkt. No. 456 at 1–2. In reaching that figure, the Court reduced the amount originally awarded by the jury, declined Vegadelphia's request for more disgorgement, for on an award equal to roughly 14% of the profits the jury found attributable to the infringement. Dkt. No. 455 at 11, 29, 36–37. Beyond's Motion under Rules 52(b) and 59(a) and (e) gives no reason to disturb it.

***First***, the Court's adoption of the jury's advisory verdict on the $15.4 million equitable award is unproblematic under Rules 52 and 59; district courts enjoy wide discretion to accept or reject an advisory jury's opinion, in whole or in part.

***Second***, the Court correctly held itself bound by the jury's findings that (1) Beyond's profits are attributable to its infringement and (2) the parties directly competed.

***Third***, $15.4 million is neither excessive—it is less than 14% of the profits the jury attributed to the infringement—nor a double recovery, because the Judgment awards it expressly for harm "not included in actual damages." Dkt. No. 456 at 1–2. Beyond's argument that the disgorgement award is multiplies higher than the damages award misses the point. It pits a narrow category of awarded harm (lost existing sales) against the far broader harm that proxy disgorgement measures, and contradicts this Court's summary judgment ruling and First Circuit law, which permit

"rough measure" disgorgement even where "a trademark owner cannot prove actual damages" at all—an infinite multiple. Dkt. No. 455 at 29–30 (citing *Venture Tape v. McGills Glass Warehouse*, 540 F.3d 56, 63 (1st Cir. 2008)). And any true double recovery is remedied by awarding the "*greater* of the two." *Winthrop Res. v. Eaton Hydraulics*, 361 F.3d 465, 473 (8th Cir. 2004).

***Finally***, no new trial is warranted under Rule 59(a): ample evidence supports the jury's findings on attributable profits and direct competition, and denying the Motion requires the Court only to stand by the reasoning it has already articulated.[1]

## II. BEYOND'S MOTION TO REDUCE OR RESCIND THE $15.4M IN DISGORGED PROFITS SHOULD BE DENIED

### A. Legal Standard

A court may try any issue with an advisory jury. Fed. R. Civ. P. 39(c)(1). "The responsibility for the decision-rendering process remains with the trial judge and it is in its discretion whether to accept or reject, in whole or in part, the verdict or findings of the advisory jury." *Reyes v. Garland*, 26 F.4th 516, 521 (1st Cir. 2022) (quotations omitted). Rule 52(a) requires the court to "find the facts specially and state its conclusions of law separately."

As Beyond concedes, a judgment may be altered under Rule 52(b) or 59(e) only for "manifest error" of law or fact. Dkt. No. 470 at 10 (citing *Nat'l Metal Finishing, Co., Inc. v. BarclaysAm./Com., Inc.*, 899 F.2d 119, 122–23 (1st Cir. 1990); *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 609 F. Supp. 3d 17, 19 (D. Mass. 2022)).

Rule 59(e) "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping v. Baker*, 554

[1] Vegadelphia has separately appealed including the Court's rejection of the binding jury verdict on actual damages. Dkt. No. 468. Nothing Vegadelphia argues here in defense of the existing Judgment concedes any issue it will raise on appeal.

U.S. 471, 485 n.5 (2008) (quoting 11 Wright & A. Miller, *Fed. Practice and Procedure* § 2810.1, pp. 127–128 (2d ed. 1995)). Nor is it "an avenue for litigants to reassert arguments and theories that were previously rejected by the Court." *Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony*, 897 F.2d 611, 616 (1st Cir. 1990).

Rule 52(b) likewise does not permit parties to rehash arguments already considered and rejected. *National Metal*, 899 F.2d at 123; *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 537 (1st Cir. 2011); *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111–12 (9th Cir. 2011). The movant bears the burden of showing that the findings are unsupported by the record. *Oriental Fin. Grp. v. Coop. de Ahorro y Credito Oriental*, C. A. No. 10-1444 (ADC), 2022 WL 4935400, at *7 (D.P.R. Sept. 30, 2022); *Fairest-Knight v. Marine World Distribs.*, C.A. No. 07-1708, 2010 WL 500409, at *1 (D.P.R. Feb. 3, 2010). Beyond's brief is largely such relitigation.

### B. The Court Did Not Err by Considering the Advisory Verdict[2]

Beyond argues that the Court erred in adopting the advisory verdict after noting that it "may have decided the[] award[] differently *in the first instance*." Dkt. No. 470 at 6 (quoting Dkt. No. 455 at 36) (emphasis added). The quotation defeats the argument: the Court was not deciding the equitable issues "in the first instance," but with the benefit of the jury's findings, including its advisory verdict—exactly what the Rules contemplate. *See* Fed. R. Civ. P. 52(b), 59(e). Candidly acknowledging that a different number might have been reached on a blank slate is a mark of careful judgment, not error. Indeed, "[w]hile the Court must make its own findings of fact and conclusions of law, the findings of the jury made in an advisory capacity are entitled to some deference." *Momenta Pharms. v. Amphastar Pharms.*, 298 F. Supp. 3d 258, 264 (D. Mass. 2018)

---

[2] Response to Beyond's Memorandum at § IV.A.1.

(citing *Felker v. Pepsi-Cola*, 899 F. Supp. 882, 888–89 (D. Conn. 1995)). It would be "purposeless to have an advisory jury unless some degree of deference was shown to its opinions." *Id.*; *Sterilite Corp. v. Olivet Int'l, Inc.*, C.A. No. 1:22-cv-10327, 2025 WL 3459536, at *5 (D. Mass. Dec. 2, 2025) (same).-

The independent view of twelve jurors, in the Court's words "from all different views of the world," with insights that help "make sense of the evidence," is valuable. Dkt. No. 406 at 49:17-18; Dkt. 414 at 145:13. Beyond's own authorities agree that the Court may rely on it. Wright & Miller recognizes the trial judge's "complete freedom . . . *in using* or disregarding" an advisory verdict. Dkt. No. 470 at 12 (quoting Wright & Miller, *Federal Practice and Procedure* § 2335 (3d ed.)) (emphasis added). *Reyes*, cited throughout Beyond's brief, holds that "[t]he district court's decision either *to accept* or reject [an] advisory verdict 'must not be set aside unless clearly erroneous.'" 26 F.4th at 521. And *OCI Wyoming v. PacifiCorp*, which Beyond quotes for the proposition that the court must make findings "without giving deference to the advisory jury's verdict," confirms that "the district court may exercise its discretion *to accept* or reject the advisory jury's verdict . . . ." 479 F.3d 1199, 1201, 1206 (10th Cir. 2007) (emphasis added).[3]

Courts nationwide likewise give weight to advisory verdicts. *E.g.*, *Softketeers v. Regal West*, No. 8:19-CV-00519, 2022 WL 17968835, at *10 (C.D. Cal. Dec. 22, 2022) (affording "considerable weight to the independent perspective of the jury"); *Echometer v. Lufkin Indus.*, No. 7:00-CV-0101, 2004 U.S. Dist. LEXIS 30583, at *4 (N.D. Tex. Mar. 22, 2004) (giving "substantial weight" to advisory verdict and adopting it "as its own"). Under Beyond's contrary logic, an advisory jury would serve no purpose at all. *Felker*, 899 F. Supp. at 888–89.

---

[3] Indeed, the error the Tenth Circuit reversed in *OCI* was the court's conclusory findings, which did not satisfy Rule 52(a). *Id.* at 1203–04. The Court's findings here are far more robust.

Nothing supports Beyond's claim that considering an advisory verdict is "manifest error" merely because the court, absent a jury, might have ruled otherwise. Dkt. No. 470 at 11. Rule 52(a) requires only that the Court "find the facts specially and state its conclusions of law separately," which "may appear in an" order. Fed. R. Civ. P. 52(a). Rule 52(a) does not require courts to "respond like a debate champion to every evidentiary or factual contention made by the losing side." *Richard v. Reg'l Sch. Unit 57*, 901 F.3d 52, 59 (1st Cir. 2018) (citing *Nevor v. Moneypenny Holdings, LLC*, 842 F.3d 113, 119 (1st Cir. 2016)); *OCI Wyo.*, 479 F.3d at 1204 (with an advisory jury, "Rule 52(a) does not require the district court to set out its findings and conclusions in excruciating detail"). "[T]he judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." *Richard*, 901 F.3d at 59 (quotation omitted). The Court's analysis here spans more than ten pages addressing the legal bases for disgorgement, the jury's findings, and each side's damages expert. Dkt. No. 455 at 23–37. Beyond's proposed requirement—findings entirely divorced from the advisory verdict—has no basis in the Rules or case law.

### C. The District Court Did Not Err in Relying on the Jury's Findings of Fact[4]

Beyond further argues the Court erred in holding itself bound by the jury's findings on attributable profits, direct competition, and willfulness. Dkt. No. 470 at 16–19. That issue was briefed, argued, and decided. Rules 52 and 59 offer no second bite at the apple. *National Metal*, 899 F.2d at 123. It was also correctly decided under binding precedent.

***First,*** the Court held the jury's attributable-profits and direct-competition findings non-advisory, quoting *Visible Systems*: "even if the accounting is viewed as an equitable claim for the

[4] Response to Beyond's Memorandum at § IV.A.3.

judge, the judge is bound by the jury's determination of issues ... which affect the disposition of the accompanying equitable claim." Dkt. No. 455 at 27 (quoting *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 78 n.8 (1st Cir. 2008)) (additional citations omitted); *see also id.* (citing *Attrezzi, LLC v. Matyag Corp.*, 436 F.3d 32, 43 n.5 (1st Cir. 2006); *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009) ("[T]rial judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree.")). Beyond contends that neither *Visible Systems* nor *Attrezzi* "squarely held that the jury's findings on factual questions that were posed to the jury solely as part of an equitable claim would be binding." Dkt. No. 470 at 18. But both cases do, in fact, treat the jury's factual findings as binding on the court, and Beyond makes no attempt to distinguish them—hardly the "manifest error" Rules 52 and 59 require.

*Visible Systems* further undermines Beyond's position. Beyond recognizes that the Court awarded disgorgement as a "'rough measure' of the harm that [Vegadelphia] experienced." Dkt. No. 470 at 13. Likewise, the jury instructions that Beyond helped draft, permitted the jury to "award disgorgements of profit as a rough measure of harm to Vegadelphia." Dkt. No. 455 at 29, Dkt. No. 402 at 27. That is precisely "the proxy rationale" *Visible Systems* describes. 551 F.3d at 80 ("The first rationale for an accounting is as a proxy for legal damages, that is, a rough measure of harm to the plaintiff."). As the First Circuit explained, that rationale, "[i]n our view, . . . may well present the strongest argument under the Seventh Amendment" for a jury trial. *Id.* at 80 n.11. Whether or not *Visible Systems* decided the question directly, its reasoning supports the Court's treatment of the jury's factual findings as binding or, at minimum, a "backdrop." Dkt. No. 455 at 27, 29.

Beyond's contrary authorities are out-of-circuit and inapposite. *MGA Ent., Inc. v. Harris*, No. 2:20-cv-11548-JVS-CTS, 2026 WL 2112031, at *2 (C.D. Cal. July 22, 2026); *Concordia Pharms. Inc. v. Method Pharms., LLC,* 240 F. Supp. 3d 449, 455 (W.D. Va. 2017). As an initial

matter, the Court identified only the jury's findings on direct competition and profits attributable to "PLANT BASED GREAT TASTE" as "binding" and as a "backdrop" to its disgorgement analysis. Dkt. No. 455 at 29. The cases Beyond relies on hold only that a willfulness verdict is advisory—a question irrelevant to the proxy rationale—and neither addresses whether attributable-profits or direct-competition findings bind the court. *See* Dkt. No. 455 at 29. Regardless, whether the Court treated willfulness as binding is immaterial, because courts in this District have held a willfulness verdict binding. *See, e.g.*, *Fishman Transducers, Inc. v. Paul*, No. 07-10071-GAO, 2011 WL 1157529, at *2 (D. Mass. Mar. 29, 2011), *aff'd*, 684 F.3d 187 (1st Cir. 2012). Beyond thus identifies no authority showing that the Court's ruling was "manifest error."

***Second,*** the Court also found that Beyond waived any sufficiency challenge to these findings by failing to object to the jury instructions and verdict form or to move under Rule 50(a) or (b): Beyond "cannot now ask the court to jettison the jury's decision through a supplemental brief and an opposition to [Vegadelphia's] motion." Dkt. No. 455 at 28.

Beyond responds in a footnote that it had no reason to invoke Rule 50 because the Court did not resolve what was advisory until its post-trial Order. Dkt. No. 470 at n.6. This works only if the findings are advisory.[5] Because they are binding, Dkt. No. 455 at 29, the argument is simply another attempt to escape Beyond's failure to move under Rule 50.

***Third***, the direct-competition and attributable-profits findings are "common to," "involved in," or "affect[ing]" the jury's likelihood-of-confusion finding on *liability*. Dkt. No. 470 at 17–18.

[5] Furthermore, Beyond's argument to sidestep its Rule 50 failure lacks merit as the Court already held that, prior to the Jury being charged, it already firmly established what portion was advisory and what portion was not. *See* Dkt. No. 455 at 24–25 (explaining that prior to charge "the issues of willfulness, direct competition, and the upper limit of profits potentially available for disgorgement were 'pieces along the way' committed solely to the jury discretion" and citing Nov. 17, 2025 Trial Tr. 22:17–23, Dkt. No. 410)).

Thus, even under the standards Beyond seeks to apply, "the judge is of course bound" by them. *Id.* Beyond's arguments that deference depends on "where" these common issues are on the jury form, *id.* at 17–18, incorrectly elevates "form over substance." *Hodge v. Mendonza*, 739 F.3d 34, 41 (1st Cir. 2013). The First Circuit rejects such formalistic arguments where a "holding squarely addressed the merits of overlapping [] claims." *Id.*

For example, a finding of direct competition is strong proof of likely confusion (*Pignon* Factors 2, 3, and 4). Dkt. No. 402 at 20–21. In the First Circuit, "the similarity of the marks takes on great prominence" where "companies are direct competitors because their products, potential customers, channels of trade, and advertising all significantly overlap." *Boston Duck Tours v. Super Duck Tours*, 531 F.3d 1, 26–27 (1st Cir. 2008).[6] The direct-competition finding thus bore on both the jury issue of likely confusion and the equitable issue of proxy disgorgement, and is binding.

Likewise, whether Beyond's "use of PLANT-BASED GREAT TASTE . . . was enough to overcome the trademark owner's mark" was an express factor in the likelihood-of-confusion jury instruction. Dkt. No. 402 at 23. The jury heard substantial evidence of such flooding, including billions of ubiquitous consumer impressions of the infringing slogan. Dkt. No. 446-6. The $109 million attributable-profits finding is the clearest metric by which the jury verdict measured Beyond's level of flooding. It was the jury's measurement, finding that the flooding of marketing was so extensive that "nearly all of Beyond Meat's profits from outside Dunkin' were attributable to" the at-issue slogan. Dkt. No. 470 at 24. The jury's findings are binding for this reason as well.

---

[6] *See also AWGI, LLV v. Atlas Trucking Co., LLC,* 998 F.3d 258, 266 (6th Cir. 2021) ("[I]f the parties compete directly, confusion is likely if the marks are sufficiently similar," affirming likely confusion); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573–74 (2d Cir. 1993) (same); *Rearden LLC v. Rearden Com.*, 683 F.3d 1190, 1212–13 (9th Cir. 2012) ("direct competitors" is strongest form of "proximity or relatedness" of goods).

Finally, even if the findings were advisory—notwithstanding the unobjected-to commentary at the charge conference, the Court's Rule 52 reaffirmance, and the overlap with jury issues on liability—the Court was free to rely on them, as shown in § II.B. *Momenta Pharms.*, 298 F. Supp. 3d at 264. After a lengthy trial in which the jury found against Beyond on every issue, Beyond's request that those findings be ignored and receive no weight is wasteful and contrary to the law vesting that discretion in the trial court. *Reyes*, 26 F.4th at 521.

**D. The Award of Damages for Disgorgement is Not Unsustainable (Dkt. 470 §IV(A)(2))**

Beyond raises two arguments against the $15.4 million award. Dkt. No. 470 at 13–16.

***First***, relying on *Visible Systems*, Beyond argues that disgorgement "has no place" because actual damages were awarded, and that disgorgement "as a proxy for actual damages in such a case would risk an improper double recovery." Dkt. No. 470 at 13–14.

But the *Visible Systems* jury was asked for "the dollar amount of damages which you have determined defendant [] should pay to plaintiff [] *to restore it to the position it would have been in had the infringement not occurred*"—the total needed to make the plaintiff whole. 551 F.3d at 80 (emphasis original). Here, by contrast, the jury was asked what disgorged profits should be awarded "as a rough measure to fairly compensate Vegadelphia for harm proximately caused by Beyond Meat's use of 'PLANT BASED GREAT TASTE' *that was not included in actual damages*." Dkt. No. 419 at 4 (emphasis added). Beyond helped draft that question and did not object to the language separating disgorgement from actual damages. Dkt. No. 446-34 (Nov. 20, 2025 Trial Tr. at 114). The $15.4 million was, in this manner, deliberately kept separate from and cumulative to the actual damages awarded, and Beyond's flawed argument about *Visible Systems* fails.

Beyond's "double recovery" arguments fail for the same reasons. Dkt. No. 470 at 14. The jury was instructed not to double count, expressly found that actual damages did not encompass the

disgorgement amount, and confirmed its verdict represented the same. "Jurors are presumed to follow their instructions." *Zafiro v. U.S.*, 506 U.S. 534, 540-41 (1993). And by reducing actual damages from $23.5 million to $37,500, the Court ensured that virtually none of the $15.4 million could be a double-counted dollar. Dkt. No. 455 at 36. In any event, the $15.4 million award, as the "*greater* of the two," would stand in the event of a true double recovery. *Winthrop*, 361 F.3d at 473.

***Second***, Beyond argues the award was "manifestly excessive," Dkt. No. 470 at 14, because it is hundreds of times $37,500 and "magnitudes larger than any measure of Sonate's existing business." Dkt. No. 470 at 15 (quoting Dkt. No. 455 at 37).

That argument rests almost entirely on observations the Court made while explaining why it would *not* increase the award: that direct competition was "highly circumscribed," that Beyond's willfulness did not extend to targeting Sonate's customers or goodwill, and that the award was already "magnitudes larger than any measure of Sonate's existing business." Dkt. No. 470 at 6–7, 10 (quoting Dkt. No. 455 at 35–37). The Court made those observations precisely to "contextualize" the jury's findings within the trial record and to avoid a "windfall," Dkt. No. 455 at 34, and on that basis it rejected Vegadelphia's request for additional disgorgement as an impermissible penalty under 15 U.S.C. § 1117(a). *Id.* at 36–37. Every consideration Beyond invokes, in other words, has already been weighed and it is what holds the award at $15.4 million rather than higher. Section 1117(a) authorizes the Court to enter "such sum as the court shall find to be just, according to the circumstances of the case," and the Court has done exactly that. Beyond identifies no new fact or law suggesting that the balance the Court struck was manifestly erroneous.

Beyond also asserts the inaccurately truncated phrase that "there was no harm to Sonate's reputation or goodwill." Dkt. No. 470 at 14. The Court made no such finding. To the contrary, at a minimum, it found that "the evidence included a statement of Sonate's profits and losses during the

period in which Beyond employed the accused mark, showing a decline in sales and profits during the relevant time," and that it offered "sufficient evidence at trial to allow a reasonable juror to conclude that Sonate's lost profits between 2018 and 2020 were attributable to Beyond's trademark infringement." Dkt. No. 455 at 7, 8.

As *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 845 (9th Cir. 2014), and similar cases recognize, harm to goodwill and reputation is often shown through exactly such declines in revenue, opportunities, or licensing during the infringement period. Comparing one specific form of awarded harm (lost existing sales) to the full breadth of proxy harm captured by disgorgement is a non sequitur.

Nor does Beyond account for the most telling datapoint for approximating that harm: Beyond's own growth. Before its infringing campaigns began in 2019, 55% of Americans had never heard of Beyond. Dkt. No. 424-1 at 138 (Turenne Designations). During those campaigns, Beyond's sales grew $210 million in the first year of infringement in 2019 and another $100 million in its next year. Dkt. No. 446-27 (T.E. 606-43.002); Dkt. No. 446-30 (Nov. 14, 2025 Trial Tr. (Sheppard)) at 39:8–14. Its incremental profits on those were $109,867,167 for Q2 2019 through 2020 of the infringement period. Dkt. No. 446-19 (T.E. 124). Beyond never mentions this $109.9 million while calling $15.4 million "manifestly excessive." Dkt. No. 470 at 14.

Put in perspective, the jury awarded Vegadelphia more than $39 million; Beyond asks to pay $0. *Id.* at 11. The Court did not decide facts "in the first instance" divorced from the jury's determinations, but weighed the verdict, Beyond's waiver, the case law, and the trial evidence to find that "the jury's advisory award reasonably arises from the evidence offered at trial." Dkt. No. 455 at 25–33. The resulting award—well below both the jury's total award and the profits attributable to the infringement—is the hallmark of restraint in a reasoned equitable judgment.

Rules 52 and 59 do not let a losing party re-raise an issue after judgment, *see National Metal*, 899 F.2d at 123, yet Beyond offers only the claim that the award is disproportionate to the existing lost sales proven at trial—an issue the Court already decided against Beyond. Dkt. No. 455 at 29–30. Beyond's citation of inapt punitive damages "multiples" does not change this. Instead, this Court at summary judgment explained the First Circuit's role of proxy damages:

> When a trademark owner cannot prove actual damages attributable to the infringement, such as evidence of lost sales, the trademark owner may recover "an equitable share of the infringer's profits [which] serves, inter alia, as a 'rough measure' of the likely harm that the mark owner incurred because of the infringement, while also preventing the infringer's unjust enrichment and deterring further infringement." *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 63 (1st Cir. 2008).

*Id.; Oxford Indus. v. Harmarx Corp.*, 15 U.S.P.Q.2d 1648 *6 (N.D. Ill. 1990) (proxy rationale reflects the "practical matter" that trademark owners are "hard pressed" to "prove damages," with direct measures "difficult" or "virtually impossible to quantify").[7] Actual harm includes harm that cannot be fully quantified.

After trial, the Court likewise explained that the $15.4 million is "approximately 14% of the $109 million of Beyond's profits" attributable to infringement, *id.* at 29, a finding on which "Beyond did not formally object, ultimately contributed to the crafting of the final special verdict form question and jury instructions on the issue," *id.*; that Beyond bore, and failed to carry, the burden to show that only a portion of those profits was attributable to infringement, *id.* at 30–31; that "[j]urors were free to weigh" Beyond's evidence on "the significant differences in Beyond and [Vegadelphia's] business models, scope, and sales," *id.* at 30; and that the $93.6 million gap

---

[7] And while not themselves sufficiently certain in the Court's analysis to sustain a separate award of actual damages, the Litton and Oberholtzer opportunities demonstrate an order of magnitude far above existing sales that *can* be factored into proxy harm. Beyond ignores this entirely.

between attributable profits and the award showed they did so, *id.* at 32. Having considered and rejected these arguments, the Court has nothing further to do. *National Metal*, 899 F.2d at 123.

## III. THIS COURT SHOULD NEITHER VACATE VEGADELPHIA'S $15.4 MILLION AWARD OF DISGORGED PROFITS NOR ORDER A NEW TRIAL

Unhappy with the result, Beyond seeks a new trial on direct competition, net profits, and willfulness. Beyond had a full and fair opportunity over a two-week trial to present its best evidence on these issues; the jury, and then the Court, found for Vegadelphia. Beyond's rhetorical appeals to "common sense" discredit the jury's work,[8] and its disagreement with how the evidence was weighed does not meet the standard for a new trial.

### A. Legal Standard

Under Rule 59(a)(1)(A), "a district court may set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice." *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 27 (1st Cir. 2019) (quoting *Sanchez v. P.R. Oil Co.*, 37 F.3d 712, 717 (1st Cir. 1994)). The decision rests in the court's sound discretion and will not be reversed absent an abuse of that discretion, which "occurs 'when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.'" *Id.* (citation omitted).

### B. The Jury and Court's Findings on Direct Competition are Supported.

Beyond first argues that, to find direct competition, the jury had to find that the parties' "products may be such complete substitutes that a sale by the infringer under the infringed party's

[8] The Court itself frequently remarked on the jury's diligence and hard work throughout the trial. *E.g.*, Dkt. No. 413 (Nov. 20, 2025 Trial Tr.) at 127: 12–23; Dkt. No. 415 (Nov. 24, 2025 Trial Tr.) at 5:22.

mark is almost automatically a lost sale by the plaintiff." Dkt. No. 470 at 21 (citing *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 196 (1st Cir. 2012)).

***First,*** that misstates the law. The language Beyond quoted to the Court on November 21, 2025, and repeats now, is not *Fishman Transducers*' holding but the First Circuit's restatement of one party's position, which the court went on to qualify. 684 F.3d at 196. *Fishman Transducers* in fact held that "a showing of direct competition requires a substantial degree of equivalence and substitutability"—the standard Vegadelphia urged at trial and the Court adopted. Nov. 21, 2025 Trial Tr. at 11; *see also Monahan Prods. LLC v. Sam's E., Inc.*, 463 F. Supp. 3d 128, 150 (D. Mass. 2020) (agreeing that *Fishman Transducers* stands for "direct competition requires 'a substantial degree of equivalence and substitutability.'").

*Tamko Roofing*, on which the Court relied, is in accord. *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 36 (1st Cir. 2002) (rejecting defendant's argument that "it did not directly compete against Tamko in all the markets in which it profited from use of the mark, and so all of its profits should not go to Tamko"); *see also* Nov. 20, 2025 Trial Tr. at 131 (Vegadelphia's counsel explaining interplay of *Fishman Transducers*, *Tamko*, and related cases). *Tamko* places on the defendant the burden of showing direct competition in less than all the same markets, as part of demonstrating that "not all profits should be awarded." *Id.* at 36.

Beyond's misreading of the law permeates its three-page argument. *See* Dkt. No. 470 at 22 ("Given that backdrop, there was no basis to conclude that any sale by Beyond Meat under the infringing mark *was almost automatically a lost sale by [Vegadelphia].*" (emphasis added)). Because Beyond mischaracterizes the evidence, its argument fails even under that heightened standard—and is weaker still under the correct one.

***Second,*** and regardless, the jury was instructed on direct competition in terms that already account for the arguments Beyond now makes:

> Vegadelphia must establish by a preponderance of the evidence that Vegadelphia and Beyond Meat are direct competitors. A direct competitor must operate at the same level of the market, and there must be a substantial degree of equivalence and substitutability between the parties' products such that plaintiff and defendant products *may* be such complete substitutes that a sale by the infringer under the infringed party's mark is almost automatically a lost sale by the plaintiff.

Dkt. No. 402 at 26–27 (emphasis added). Applying that instruction, the jury found that Vegadelphia and Beyond were direct competitors, at least during the relevant period.

***Third***, as the Court noted, Beyond presented evidence that "qualitatively spoke to the significant differences in Beyond and [Vegadelphia's] business models, scope, and sales"—the same evidence it recycles now—but "[j]urors were free to weigh this evidence as they saw fit . . . when arriving at their direct competition finding[.]" Dkt. No. 455 at 30; *cf.* Dkt. No. 470 at 21–22. As discussed in § II, the Court has already ruled these findings binding. Dkt. 455 at 29. Even if they were advisory, whatever the Court's view of Beyond's reading of the evidence, Dkt. No. 470 at 21, nothing is improper about relying on the findings of a jury that—as Beyond does not dispute—was properly instructed on the law.

As detailed in prior posttrial briefing incorporated by reference, ample evidence supports direct competition: both parties' trademark filings cover the same Class 29 meat substitutes; both sold through the same distributors, including Sysco, US Foods, and Restaurant Depot, to the same targeted chains, restaurants, and fast-casual outlets, with Vegadelphia's distribution spanning a 35-state trade area; both competed head to head during the infringement period for accounts such as WaWa, which Beyond won; and Subway and El Meson sold competing sandwiches made with the parties' competing meat substitutes next door to each other—all while Vegadelphia's sales fell 20%

and then 45% as Beyond's infringing campaigns saturated the market. *See* Dkt. No. 453 at 7–8, 11–13, 16–18; Dkt. No. 393 at 6–8; Dkt. No. 432 at 9–10; Dkt. No. 450 at 8. The parties thus directly competed at every level of the market, though only one is required: distributors, food establishments, and end consumers of meat substitutes.

***Finally***, Beyond ignores its own burden. The Lanham Act "places the burden on the infringer to show the limits of the direct competition." *Tamko Roofing*, 282 F.3d at 37. Vegadelphia need not show that "every sale made by" Beyond in any market would otherwise have been its own. Dkt. No. 470 at 23. Rather, the Act "designat[es] . . . an accounting of the defendant's profits as an equitable remedy" by default, and the infringer must chip away at that accounting with evidence that any direct competition was only partial. *See Tamko Roofing*, 282 F.3d at 36 ("The burden of showing that not all profits should be awarded is more akin to the burden of showing the amount of costs to be deducted from profits, which the Act places on defendant.").

Because Beyond overstates the legal standard and otherwise simply disagrees with the jury's and the Court's findings, there is no basis for a new trial on direct competition.

### C. The Jury's Finding on Attributable Profits Did Not Go Against the Demonstrable Weight of the Credible Evidence

Beyond fares no better on attributable profits under the weight of credible evidence. Its premise is flawed: It concedes the jury adopted the view of Vegadelphia's expert on this issue:

> Q. And based on your analysis, after deducting all allowable expenses under the AICPA's incremental approach, what is your opinion of the profits Beyond made for 2019 to 2020 for all sales, excluding sales to Dunkin'?
>
> A: It's my opinion that the incremental profit that's eligible for disgorgement is $109,868,167.

Dkt. No. 446-34 & Dkt. No. 413 (Nov. 20, 2025 Trial Tr.) at 25:12–17 (testimony of Sidney Blum); *see also id.* at 28, 30. Mr. Blum explained his calculation at length. *Id.* at 19–45.

Beyond's red herring is that "the jury determined that the sole reason that consumers purchased Beyond Meat's products was because of a marketing slogan which Beyond Meat temporarily employed . . . . That is self-evidently not credible" or "common sense." Dkt. No. 470 at 23. But "sole reason" was never the question; the jury was properly instructed that attributable sales were those "attributable to its infringing use," while apportionment went to "non-infringing uses." Dkt. No. 402 at 28. Even Beyond's cted case of *Max Rack v. Core Health*, 40 F.4th 454 (6th Cir. 2022) rejects a but-for standard and asks only for a "reasonable relationship" between sales and infringement. *Id.* at 472.

In any event, the infringing slogan drove Beyond's market expansion by a host of metrics, as marketing expert Dr. McDonald and the evidence showed and as Vegadelphia's post-trial briefing leading to the $15.4 million Judgment explained, incorporated herein by reference. *See* Dkt. No. 453 at 7-9 & Dkt. No. 446-6 (slogan was extremely important, sticky and memorable, and permeated channels of trade, every medium, often larger than Beyond's logo, making vast numbers of consumer impressions). Beyond's "common sense" attack on the link to its U.S. sales rests on a factually-inapposite *Max Rack*, 40 F.4th at 472, Dkt. No. 470 at 24, case that found it "dubious" to implicate "company-wide sales" where only a single "stray" website use occurred, contrasting it with situations where (as here) the "gross revenue number" has a "reasonable relationship to the infringing activity." *Id.* at 472.

And Beyond fully cross-examined Mr. Blum, Nov. 20, 2025 Trial Tr. at 31–42; presented competing expert testimony, Nov. 19, 2025 Trial Tr. at 83–84; and even partially limited his testimony by motion, Dkt. No. 344 at 13–15, 32–41. What Beyond failed to do—the real source of its grievance—was carry its own burden to apportion profits.

As the Court explained at summary judgment:

> The award of damages for a violation of trademark rights is governed by 15 U.S.C. § 1117. Section 1117 "provides . . . that when a trademark violation occurs, the victim shall be entitled, 'subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.'" *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 5 (1st Cir. 1993) (quoting 15 U.S.C. § 1117)...."In assessing profits[,] the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Dkt. No. 358 at 2 (granting in part Vegadelphia's summary judgment motion). The Court further explained that the further step—apportioning between infringing and non-infringing revenue—is Beyond's burden:

> [T]he defendant bears the burden of providing evidence sufficient to apportion profits between those resulting from the defendant's purported infringement and those unaffected by the purported infringement. *See Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 64 (1st Cir. 2008); *Tamko Roofing Prods. v. Ideal Roofing Co.*, 282 F.3d 23, 32-33 (1st Cir. 2003).

Dkt. No. 386 ¶ 6.

At trial, Beyond failed to carry that burden. *See* Dkt. No. 405 at 1–9 (explaining Beyond's apportionment failure). Vegadelphia proved Beyond's sales with Beyond's own figures, which Beyond's expert accepted. Dkt. No. 453 at 15. Beyond's witnesses conceded they could not separate sales made without the slogans; nor could Beyond rely on public filings showing company-wide losses that reflected deductions trademark law does not permit (e.g., fixed costs and costs invested in future products). Dkt. No. 405 at 4–5; Dkt. No. 453 at 9–10. And Beyond offered only an error-riddled spreadsheet for tens of millions of dollars in deductions. Dkt. No. 405 at 4–9; Dkt. No. 453 at 9–10, 15–16. The jury and the Court properly accounted for these failures in awarding Vegadelphia roughly 14% of the $109 million the jury found attributable to the infringement—a conservative result that, if anything, favored Beyond.

Had Beyond carried its burden, its argument that the jury should have apportioned further is still no basis for Rule 59 relief. "The mere fact that a contrary verdict may have been equally—or

even more easily—supportable furnishes no cognizable ground for granting a new trial." *Freeman v. Package Mach.*, 865 F.2d 1331, 1333–34 (1st Cir. 1988). Courts applying this standard thus decline to order a new trial when the jury chooses between competing evidence. *E.g.*, *Breeden v. VK Krupa*, 752 F. Supp. 3d 274, 280 (D. Mass. 2024) (denying new trial despite movant's argument that expert witness lied on the stand); *Flores-Suarez v. Turabo Med. Ctr.*, 165 F. Supp. 2d 79, 88 (D.P.R. 2001) ("it is the province of the jury to determine how much weight should be given to a witness and the credibility of each witness"). Mr. Blum's extensive testimony readily satisfies this standard, and no new trial is warranted on attributable profits.

### D. The Jury's Findings on Willfulness Were Not a Stated Basis for the Court's Conclusions on Rough Measure of Harm

Beyond also attacks the jury's willfulness finding. Dkt. No. 470 at 24–25. But the Court's rough-measure-of-harm award rested only on the direct-competition and attributable-profits findings. Dkt. No. 455 at 27–29. Accordingly, willfulness—relevant instead to deterrence-based disgorgement—cannot support a new trial and is irrelevant to the present Motion. Regardless, "[t]his Court, in turn, 'is bound by ... the jury's finding of willfulness, which affect[s]' its determination of the appropriate 'equitable remedy' under 15 U.S.C. § 1117(a)." *Sterilite Corp. v. Olivet Int'l*, Inc., 2025 WL 3460553, at *5 (*quoting Visible Sys.*, 551 F.3d at 78 & n.8).

## IV. CONCLUSION

Beyond's motion repeats arguments already briefed, argued, and rejected, and shows no manifest error. The Court properly considered the advisory verdict; it was bound by the jury's findings on attributable profits and direct competition; and the $15.4 million award—about 14% of Beyond's attributable profits, expressly separate from actual damages, and already tempered by the Court's own contextual review of the record—is neither excessive nor a double recovery. Ample evidence supports the jury's and the Court's proxy disgorgement findings, and the Judgment

reflects a careful, well-supported exercise of the Court's equitable discretion under 15 U.S.C. § 1117(a). No amended judgment or new trial is warranted.

The Court should deny Beyond's Motion in its entirety.

Dated: November 4, 2026

Respectfully Submitted,

*/s/ Ben L. Wagner*

L. Andrew Tseng
Mass. Bar No. 689192
TROUTMAN PEPPER LOCKE LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
Tel.: (617) 204-5100
Email: andrew.tseng@troutman.com

Ben L. Wagner (*Lead Counsel)
Cal. Bar No. 243594 (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
Tel.: (858) 509-6010
Email: ben.wagner@troutman.com

*Attorneys for Plaintiff Sonate Corporation, d/b/a Vegadelphia Foods*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2026, PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 52(B) MOTION TO AMEND THE COURT'S FINDINGS AND JUDGMENT AND RULE 59(A) AND RULE 59(E) MOTION FOR NEW TRIAL AND TO AMEND JUDGMENT, DKT. NO. 470 was served by electronic mail on counsel of record using the email addresses registered on the CM/ECF system.

s/ *Ben L. Wagner*
Ben L. Wagner